# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VALENCIA M. MCCLATCHEY, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 05-145J |
| v. | ) |
| THE ASSOCIATED PRESS, | ) **JURY TRIAL DEMANDED** |
| Defendant. | ) |

## PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

1. On the morning of September 11, 2001, Valencia McClatchey looked out her front window in Shanksville, Pennsylvania and saw United Flight 93 crashing into a field near her house. (Hall Decl., Exh. 1, ¶ 7).

2. She stepped outside her house as a white mushroom cloud was rising from the crash and took a compelling photograph of the mushroom cloud against a blue sky, with a red barn and the rolling hills of Pennsylvania in the foreground. (Hall Decl., Exh. 7).

3. In January 29, 2002, Ms. McClatchey received federal copyright registration for her photograph taken on 09-11-01, which she titled "End of Serenity." (Def's SMF ¶ 22; Hall Decl., Exh. 1, Exhibit A).

4. The End of Serenity photograph has garnered widespread acclaim and has been used at exhibits and memorials throughout the world, including the Flight 93 Memorial, the Library of Congress, and the Smithsonian Institution. (Hall Decl, Exh. 2, McClatchey Dep., p. 8; ll. 7-10; p. 13, ll. 13-21; p. 48, ll. 8-14).

5. After taking the photograph, Ms. McClatchey was approached by various news organizations and magazines, including ABC News, Fox News, U.S. News and World Report,

the Pittsburgh Post-Gazette, Newsweek, and the Washington Post, who wanted to license the use of her photograph. (Hall Decl., Exh. 2, McClatchey Dep. p. 16, ll. 18-25; p. 17, ll. 1-16; p. 36, ll. 7-13; p. 67, ll. 6-17; p. 75, ll. 6-14; p. 76, ll. 1-11).

6.  Ms. McClatchey generally agreed to license the photo for a one time use, charging a fee of approximately $250 to $350. McClatchey later learned that she was undercharging for use of her photograph (Hall Decl., Exh. 2, McClatchey Dep. p. 12, ll. 9-17; p. 17, ll. 6-7; p. 22, ll. 18-25; p. 23, ll. 1-7).

7.  Ms. McClatchey was not a professional photographer and did not know how much freelance photographers generally charged for such use. (Hall Decl., Exh. 2, McClatchey Dep., p. 22, ll. 18-25; p. 23, ll. 1-7).

8.  Ms. McClatchey also sold non-commercial, personal use hard copies locally and through the mail for $20, $18 of which she donated to the Todd Beamer Foundation. (Penchina Decl., Exh. F).

9.  Ms. McClatchey used $2 of the $20 charge for hard copies of the photograph for paper and printing costs. (Def's SMF ¶ 37; Penchina Decl. Exhibit F).

10. Every hard copy of the End of Serenity photograph that Ms. McClatchey sold or gave out included her name, the word "copyright," and the year in the lower right hand corner, and the words "End of Serenity" and "September 11, 2001" in the top left of the photo across the blue sky. (Hall Decl., Exh. 2, McClatchey Dep., p. 19, ll. 7-15; p. 20, ll. 15-25; p. 21, ll. 1-7).

11. Any news entity that Ms. McClatchey agreed to license the work to, she e-mailed a digital file of the photograph so that it would be the best possible depiction. (Hall Decl., Exh. 2, McClatchey Dep., p. 20, ll. 21-25; p. 21, ll. 1-7; p. 109, ll. 6-12). The digital copy did not bear a copyright notice. (Hall Decl, Exh. 2, McClatchey Dep., p. 109, ll. 6-12).

12. The only entities which received a digital copy of the End of Serenity (with no copyright notice) were those entities which paid for and/or had <u>written</u> permission for a limited use. (Hall Decl., Exh. 2, McClatchey Dep., p. 20, ll. 21-25; p. 21, ll. 1-7; p. 109, ll. 6-12).

13. Ms. McClatchey retains one framed copy of the End of Serenity in her home office. (Hall Decl., Exh. 2, McClatchey Dep., p. 21, ll. 20-25; p. 22, ll. 1-9).

14. All hard copies of the End of Serenity bear her copyright information. (Hall Decl., Exh. 2, McClatchey Dep., p. 20, ll. 15-20).

15. Mr. Sheehan interviewed Ms. McClatchey on 09-11-02 and wrote a story about her for the AP, which was "a feature story about this lady who took this picture a year before." (Hall Decl., Exh. 2, McClatchey Dep., pp. 26-28; Hall Decl., Exh. 4, Puskar Dep., p. 60, ll. 20-22; Hall Decl., Exh. 14).

16. Gene Puskar, an employee and photographer for the Associated Press, went to Ms. McClatchey's home and informed her that he was there "to photograph her for the Charles Sheehan story[.]" (Hall Decl., Exh. 4, Puskar Dep., p. 11, ll. 8-14; p. 14, ll. 6-12; p. 35, ll. 11-19).

17. His assignment was to "take pictures of a woman with a picture." (Hall Decl, Exh. 4, Puskar Dep., p. 29, ll. 22-25; p. 30, l. 31).

18. Ms. McClatchey stood on the side of her home, holding a hard copy of the End of Serenity photograph which bore her copyright information, and instead of taking a picture of Ms. McClatchey with her photograph, Mr. Puskar took a picture of the End of Serenity photograph. (Hall Decl., Exh. 4, Puskar Dep., p. 12, ll. 18-25; p. 27, ll. 2-4; p. 30, ll. 2-4; Hall Decl., Exh. 5, McClatchey Decl. ¶¶ 1, 2).

19. Ms. McClatchey never gave Mr. Puskar or the AP consent to take a photograph of her photograph. Ms. McClatchey never gave Mr. Puskar or the AP consent to use her photograph in any manner. (Hall Decl., Exh. 2, McClatchey Dep., p. 41, ll. 9-17; p. 110, ll. 12-20; Hall Decl., Exh. 5, McClatchey Decl. ¶¶ 1, 2, 3, 5 and 6).

20. Neither Mr. Puskar nor anyone from the AP asked Ms. McClatchey's permission to use her photograph to accompany the Sheehan article, nor did Mr. Puskar or the AP tell her the AP was also going to transmit her photograph to all its members and subscribers. (Hall Decl., Exh. 4, Puskar Dep., p. 32, ll. 20-25; p. 33, ll. 1-3; Hall Decl., Exh. 5, McClatchey Dec. ¶¶ 5, 6).

21. Mr. Puskar and Mr. Sheehan were the only persons from the AP to speak with Ms. McClatchey. Mr. Sheehan did not seek permission to use her photograph. Likewise, "[T]here [was] no rights talk at all" between Mr. Puskar and Ms. McClatchey. (Hall Decl., Exh. 4, Puskar Dep., p. 37, ll. 18-23; Hall Decl., Exh. 5, McClatchey Dec. ¶¶ 5, 6).

22. Instead of asking Ms. McClatchey for a digital copy of the photograph, Mr. Puskar elected to take a photograph of her End of Serenity photograph. (Hall Decl., Exh. 4, Puskar Dep., p. 28, ll. 15-20; p. 29, ll. 7-10).

23. Ms. McClatchey did not realize what Mr. Puskar was doing -- she thought he was taking pictures of her for the article, and not just focusing on the End of Serenity photograph. (Hall Decl., Exh. 5, McClatchey Decl. ¶ 1 ).

24. Mr. Puskar then cropped the edges off the End of Serenity photograph, which included the title and copyright information, and submitted it to the AP. (Def's SMF ¶¶ 55, 57; Hall Decl., Exh. 3, ¶¶19-22; Hall Decl., Exh. 6).

25. The AP's procedures were that the editor who received the photograph cleared all copyright issues. (Hall Decl., Exh. 8, Ake Dep., p. 46, ll. 15-24; p. 47, ll. 1-13).

26. As the editor, it was Mr. Puskar's responsibility to clear the copyright issues, but he failed to do so, and no one double checked him. (Hall Decl., Exh. 9, Gerberich Dep., p. 47; ll. 11-18; Hall Decl., Exh. 8, Ake Dep., p. 46, ll. 15-24; p. 47, ll. 1-13; Hall Decl., Exh. 4, Puskar Dep. p. 57, ll. 13-19).

27. In fact, Mr. Puskar "[didn't] know" what rights the AP had in her End of Serenity photograph. (Hall Decl., Exh. 4, Puskar Dep., p. 57, ll. 13-19).

28. Mr. Sheehan's article, and Mr. Puskar's copy of the End of Serenity photograph were then distributed as separate items, at different times, to the AP's 1,147 US and 800 foreign PhotoStream members and subscribers, which included AOL, the Chicago Tribune, and the Washington Post. (Hall Decl., Exh. 8, Ake Dep., p. 36, ll. 9-13; p. 40, ll. 21-24; p. 41, ll. 1-10; Ake Decl. ¶ 4; Hall Decl., Exh. 10).

29. Although the Sheehan article references the End of Serenity photograph, there is no requirement that the photograph be used solely with the article. (Exhibit of the screen shot.) (Hall Decl., Exh. 8, Ake Dep., p. 39, ll. 18-23; p. 42, ll. 17-22; p. 45, ll. 5-7; Hall Decl., Exh. 6).

30. The "meta data" on the End of Serenity indicated that Ms. McClatchey was a "stringer," which is another word for a freelancer. (Hall Decl., Exh. 8, Ake Dep. p. 32, ll. 8-12; p. 33, ll. 9-14; Hall Decl., Exh. 6).

31. Freelance photographers for the AP have contracts with the AP which provides that the AP owns the copyright for any photographs taken for the AP. (Hall Decl., Exh. 8, Ake Dep. p. 23, ll. 6-13).

32. Therefore, the AP's members and subscribers received the photograph thinking the AP owned the copyright. The AP admits that this was "incorrect." (Hall Decl., Exh. 8, Ake Dep., p. 32, ll. 20-24).

33.     All of the AP's 1,147 US and 800 foreign PhotoStream members and subscribers received a digital copy of Ms. McClatchey's End of Serenity photograph via the AP's distribution on approximately September 11, 2002. (Hall Decl., Exh. 8, Ake Dep., p. 36, ll. 9-13; p. 40, ll. 21-24; p. 41, ll. 1-10; Hall Decl., Exh. 9, Gerberich Dep., p. 77, ll. 10-21; Hall Decl., Exh. 10).

34.     After the initial distribution, and once the photograph was made available to all members and subscribers with access to the PhotoArchive, at least three entities downloaded the photograph again. (Hall Decl., Exh. 11; Hall Decl., Exh. 9, Gerberich Dep., p. 133, ll. 11-18).

35.     In approximately August 2003, Ms. McClatchey was informed that her photograph being used on AOL's home page, in connection with a conspiracy story on Flight 93. (Hall Decl., Exh. 2, McClatchey Dep., p. 35, ll. 6-20; p. 36, ll. 14-25; p. 37, ll. 1-5; Hall Decl., Exh. 1, Exhibit D; Hall Decl., Exh. 12).

36.     Ms. McClatchey had never given AOL permission to use the photograph. (Hall Decl., Exh. 2, McClatchey Dep., p. 36, ll. 14-25).

37.     Ms. McClatchey contacted AOL, found out they had gotten the image through the AP, and requested that the AP remove her photograph from their database. (Hall Decl., Exh. 2, McClatchey Dep., p. 37, ll. 1-5; p. 42, ll. 11-19; Hall Decl., Exh. 12).

38.     Ms. McClatchey later found additional unauthorized uses in newspapers, such as the Washington Post and Philadelphia Daily News, magazines, and in connection with various Flight 93 conspiracy web sites. (Hall Decl., Exh. 2, McClatchey Dep., p. 35, ll. 6-20; p. 36, ll. 14-25; p. 37, ll. 1-5; p. 42, ll. 3-7; p. 69, ll. 2-10; p. 71, ll. 24-25; p. 72, ll. 1-25; 79, ll. 18-25; p, 80, ll. 1-9; Hall Decl., Exh. 20, Sheehan Dep., p. 35, ll. 21-24; 36, ll. 1-18).

39. Ms. McClatchey initially licensed the Washington Post for a limited use of her photograph. (Hall Decl., Exh. 2, McClatchey Dep., p. 26, ll. 7-13). After receiving a copy from the AP, the Washington Post again used her photograph, but failed to pay a license fee. (Hall Decl., Exh. 2, McClatchey Dep., p. 35, ll. 9-25; p. 71, ll. 16-25; p. 72, ll. 1-4).

40. After Ms. McClatchey notified the AP of its unauthorized use, the AP did not inform its members and subscribers that it had no rights to the End of Serenity photograph and that they should destroy any copies of it. (Hall Decl., Exh. 9, Gerberich Dep., p. 24; ll. 16-23).

41. To this day the AP has not informed its members and subscribers that they should destroy any copies of the End of Serenity photograph. (Hall Decl., Exh. 8, Ake Dep., p. 35, ll. 10-22).

42. In fact, the AP did nothing but restrict access to the photograph in the PhotoArchive on approximately November 3, 2004. (Hall Decl., Exh. 9, Gerberich Dep., p. 22, l. 24; p. 23, ll. 1-8; p. 26, ll. 20-23, p. 123, ll. 11-19; Hall Decl., Exh. 13).

43. At his deposition, Mr. Puskar stated that he "did not recall" whether the picture he photographed had a copyright notice on it. (Hall Decl., Exh. 4, Puskar Dep., p. 18, ll. 9-25; p. 19, ll. 1-3; p. 37, ll. 10-13).

Respectfully submitted,

s/Douglas M. Hall
Douglas M. Hall
Kara L. Szpondowski
Niro, Scavone, Haller & Niro
181 West Madison, Suite 4600
Chicago, Illinois  60602-4515
Phone: 312-236-0733
Fax: 312-236-3137
*Attorneys for Valencia M. McClatchey*

John E. Hall
Eckert Seamans Cherin & Mellott, LLC
USX Tower
600 Grant Street, 44th Floor
Pittsburgh, Pennsylvania 15219

Phone: (412) 566-6000
Fax: (412) 566-6099

## **CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a true copy of the foregoing **PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS** was served upon the below listed parties on this 19th day of June 2006.

**By ECF:**    Gayle C. Sproul
Levine Sullivan Koch & Schultz, LLP
2112 Walnut St., 3rd Floor
Philadelphia, PA 19013
Phone: (215) 988-9778

**By ECF:**    Robert Penchina
Levine Sullivan Koch & Schultz, LLP
230 Park Avenue
Suite 1160
New York, NY 10169
Phone: (212) 850-6100
Fax: (212) 850-6299

    s/Douglas M. Hall