## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VALENCIA M. MCCLATCHEY, | ) |
| | ) |
| Plaintiff, | )     05 - 145 J |
| | ) |
| v. | ) |
| | ) |
| THE ASSOCIATED PRESS, | )    **JURY TRIAL DEMANDED** |
| | ) |
| Defendant. | ) |

_____ )

### COMPLAINT FOR COPYRIGHT INFRINGEMENT

Plaintiff Valencia M. McClatchey ("Plaintiff" or "Ms. McClatchey") complains of defendant The Associated Press ("AP" or "Defendant") as follows:

### NATURE OF THE ACTION

1. This Complaint states claims for violations of the Copyright Act, 17 U.S.C. §§ 101, et. seq.

### JURISDICTION AND VENUE

2. Jurisdiction exists under 28 U.S.C. § 1338(a) because the Defendant is charged with copyright infringement under the Copyright Act, 17 U.S.C. § 101, et. seq.

3. AP resides in and/or does business in this State and District by intentionally engaging in acts targeted at this District, purporting to enter into agreements with residents of this State and District, and purposefully availing themselves of the privilege of conducting activities in this State and District.

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(a) because this is a judicial District in which a substantial part of the events giving rise to the claims occurred, and this is a judicial District in which the AP resides or may be found.

### PARTIES

5. Plaintiff Valencia McClatchey is an individual and resident of Pennsylvania, with



**EXHIBIT**

1

a principal address at 107 Osage Path, Stoystown, Pennsylvania, 15563. Ms. McClatchey is the registered copyright owner of a photograph entitled "End of Serenity", and bearing copyright registration number VA 1-128-462. A copy of the copyright registration is attached as Exhibit A. In addition, a copyrighted photocopy of the photograph is attached as Exhibit B.

6.    Defendant The Associated Press is a not-for-profit corporation incorporated under the laws of New York with 242 bureaus worldwide and headquarters at 40 W. 33rd Street, New York, New York 10001. AP is registered to do business in Pennsylvania and has a registered office at the Telegraph Building, Harrisburg, Pennsylvania, 17105. In addition, AP has an office located at 6 Gateway Center, Suite 222, Pittsburgh, Pennsylvania, 15222. AP is in the business of producing and archiving news information and related media, including videos and photographs, for third party news provider use. More than a billion people a day read, hear, or see AP's news. In the United States, AP serves 1,700 newspapers and 5,000 radio and television stations. The AP also has more than 8,500 International subscribers in newspaper, radio and television in 121 countries. As such, the AP has obtained significant prestige as a national news media provider.

## BACKGROUND

7.    In the aftermath of the September 11, 2001 terrorist attacks, the media was flooded with articles, photographic and video footage related to the attacks.

8.    AP has published a significant number of articles, photographs, and similar materials on and related to the September 11, 2001 terrorist attacks.

9.    AP has made their publications, both print and online, available throughout the United States and the world.

10.    Despite the flood of media attention related to the attacks, Plaintiff took what turned out to be the only existing photograph of the immediate aftermath of the crash of Flight 93 in Somerset County, Pennsylvania. Plaintiff entitled her photograph "End of Serenity." The

photograph has been used across the nation, internationally, and is in the Smithsonian Institution's exhibit on the September 11 attacks.  The original digital image is in custody of the FBI.

11.    At all relevant times, copyright in the photograph has been filed and registered in Plaintiff's name with the United States Copyright Office.  The effective date of registration of the photograph is January 29, 2002.

12.    Plaintiff donates the photograph free of charge for use by non-commercial organizations and entities.  Further, a substantial portion of any proceeds that Plaintiff has received from commercial sale and use of the photograph is donated to the Todd M. Beamer Foundation, which aids children affected by the 9/11/01 attacks.

13.    On or about September, 2002, Charles Sheehan, a writer for the Associated Press, interviewed the Plaintiff about the photograph for a news article entitled "Photo Brought Fame, Not Fortune For Woman."  The article, which published on September 13, 2002, is attached as Exhibit C.  In the article, Mr. Sheehan describes the unique nature of the photograph, "[t]he picture is one of the few images of the crash, and within two weeks it had been purchased by major U.S. magazines including U.S. News & World Report, Newsweek, Time, and several major magazines in Europe."

14.    Plaintiff  provided to the AP a courtesy copy of the photograph to use in connection with the proposed article.  The courtesy copy included and incorporated a copyright notice line identifying Plaintiff as the rights holder to the work.

15.    At no time did Plaintiff, either orally or in writing, provide to AP any express or implied authority to license or re-sell the "End of Serenity" photograph.

16.    As a gesture of goodwill, Plaintiff gave Gene Puskar, an AP photographer, an 8X10 of the photograph for his personal use, which included and incorporated a copyright notice line identifying Plaintiff as rights holder to the work.  Plaintiff further reminded Mr. Puskar that

the photograph was copyrighted.

17.    At no time did Plaintiff, either orally or in writing, authorize Mr. Puskar to provide to AP any express or implied authority to license or re-sell the "End of Serenity" photograph.

18.    Upon information and belief, either Mr. Puskar provided the photograph to the AP, or the AP made use of the courtesy copy of the photograph they had been given for use in the article.  The AP then removed the Plaintiff's name and copyright notice from the photograph, and placed the photograph in a downloadable database on their Internet web site.

19.    AP collects licensing revenue from customers and licensees, such as America Online ("AOL"), in connection with providing access to AP's downloadable database and archived materials.

20.    Upon information and belief, on or about August 2003, AOL downloaded Plaintiff's copyrighted photograph from AP's database.  The downloaded photograph did not contain a copyright notice identifying Plaintiff as the copyright owner of the work.  On August 8, 2003, the "End of Serenity" appeared on AOL's home page.  See the August 8, 2003 AOL homepage screen shot attached as Exhibit D.

21.    At no time prior to or following providing AOL or any other customer's access to the photograph did AP obtain permission from Plaintiff to alter, license to the public, or authorize use of Plaintiff's copyrighted work.

<u>COUNT I</u>
**(Direct Copyright Infringement)**

22.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 21 as if fully set forth herein.

23.    Plaintiff has complied in all respects with the Copyright Act of 1976, 17 U.S.C. § 101 <u>et. seq.</u>, as amended, and all other laws and regulations governing copyrights, and has secured the exclusive rights and privileges in and to the copyright of the photograph "End of

Serenity."

24.    AP engaged in direct infringement of Plaintiff's copyright by (a) reproducing, distributing, and displaying the photograph without Plaintiff's permission, license, or consent; and (b) preparing derivative works based upon the photograph without Plaintiff's permission, license or consent. AP's conduct constitutes direct infringement under 17 U.S.C. §§ 106 and 501 et seq.

25.    The foregoing acts of infringement by AP have been willful, intentional, and purposeful, in disregard of, and indifferent to the rights of the Plaintiff.

26.    As a direct and proximate result of the direct infringements by AP of Plaintiff's copyright and exclusive rights under copyright, Plaintiff is entitled to damages and AP's profits pursuant to 17 U.S.C. § 504(b) for each act of infringement.

27.    Alternatively, Plaintiff is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000, or such other amounts as may be proper under 17 U.S.C. § 504(c) for each infringement.

28.    Plaintiff is further entitled to attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

29.    AP's conduct threatens to cause, and is causing, and unless enjoined and restrained by this Court, will continue to cause, Plaintiff great and irreparable injury that cannot be fully compensated for or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to preliminary and permanent injunctions prohibiting further infringements of her copyright and exclusive rights under copyright.

## COUNT II
### (Contributory Copyright Infringement)

30.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 21 as if fully set forth herein.

31.    As a result of AP's conduct, copyright infringements occur whenever AP's customers or licensees, without authorization of the Plaintiff, download the photograph from the AP database to their own computer. This action creates an unauthorized distribution and results in an unauthorized copy. Each of these infringements is facilitated, encouraged, and made possible by the AP. Upon information and belief, the photograph has been widely downloaded and obtained from the AP by at least The Washington Post, The Chicago Tribune, and America Online ("AOL").

32.    Through its conduct, AP has engaged and continues to engage in the business of knowingly and systematically inducing, causing, and materially contributing to the above described unauthorized reproductions and/or distributions of the Plaintiff's work.

33.    The foregoing acts of infringement by AP have been willful, intentional, and purposeful, in disregard of, and indifferent to the rights of the Plaintiff.

34.    AP's conduct constitutes contributory infringement of Plaintiff's copyright and Plaintiff's exclusive rights under copyright in violation of 17 U.S.C. §§ 106 and 501.

35.    As a direct and proximate result of the contributory infringements by AP of Plaintiff's copyright and exclusive rights under copyright, Plaintiff is entitled to damages and AP's profits pursuant to 17 U.S.C. § 504(b) for each act of contributory infringement.

36.    Alternatively, Plaintiff is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000, or such other amounts as may be proper under 17 U.S.C. § 504(c) for each contributory infringement.

37.    Plaintiff is further entitled to attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

38.    The conduct of AP threatens to cause, and is causing, and unless enjoined and restrained by this Court, will continue to cause, Plaintiff great and irreparable injury that cannot be fully compensated for or measured in money. Plaintiff has no adequate remedy at law.

Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to preliminary and permanent injunctions prohibiting further infringements of her copyright and exclusive rights under copyright.

### COUNT III
**(Vicarious Copyright Infringement)**

39.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 21 as if fully set forth herein.

40.    At all relevant times, AP had the right and ability to supervise and/or control the infringing conduct of its customers/licensees by, without limitation, removing the photograph from its archives and/or removing the photograph from its downloadable database, but has failed to exercise such supervision and/or control.  As a direct and proximate result of such failure, AP's customers and licensees have infringed Plaintiff's copyright.

41.    At all relevant times, AP derived substantial financial benefit from infringement of Plaintiff's copyright by its customers and licensees in that, among other things, it had the only existing photograph taken of the immediate aftermath of Flight 93, and it receives payment from its customers and licensees for access to the downloadable database of photographs.

42.    The foregoing acts of infringement by AP have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiff.

43.    AP's conduct constitutes vicarious infringement of Plaintiff's copyright and Plaintiff's exclusive rights under copyright in violation of 17 U.S.C. §§ 106 and 501.

44.    As a direct and proximate result of the contributory infringements by AP of Plaintiff's copyright and exclusive rights under copyright, Plaintiff is entitled to damages and AP's profits pursuant to 17 U.S.C. § 504(b) for each act of vicarious infringement.

45.    Alternatively, Plaintiff is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000, or such other amounts as may be proper under 17 U.S.C. § 504(c) for each vicarious infringement.

46.     Plaintiff is further entitled to attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

## COUNT IV
### (Distributing False Copyright Management Information in Violation of the Digital Millennium Copyright Act)

47.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 21 as if fully set forth herein.

48.     After receiving Plaintiff's photograph, AP intentionally, and without Plaintiff's consent, removed Plaintiff's copyright notice and identifying information from the border of the photograph and placed the photograph in its downloadable database.     49.     AP knowingly distributed Plaintiff's photograph, without Plaintiff's identifying information and copyright notice to AOL and other customers and licensees with the intent to induce, enable, facilitate, or conceal infringement.

50.     AP's conduct constitutes providing false copyright management information in violation of 17 U.S.C. §§ 1202(a).

51.     As a direct and proximate result of AP's violations, Plaintiff is entitled to damages and AP's profits pursuant to 17 U.S.C. § 1203(c)(2) for each violation.

52.     Alternatively, Plaintiff is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 1203(c)(3)(B), in the amount of $25,000 for each violation.

53.     Plaintiff is further entitled to attorneys' fees and full costs pursuant to 17 U.S.C. § 1203(b).

## COUNT V
### (Removal of Copyright Management Information in Violation of the Digital Millennium Copyright Act)

54.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 21 as if fully set forth herein.

55.    After receiving Plaintiff's photograph, AP intentionally, and without Plaintiff's consent, removed Plaintiff's copyright notice and identifying information from the border of the photograph and placed the photograph on its web site.

56.    AP's conduct constitutes removing and altering copyright management information, in violation of 17 U.S.C. §§ 1202(b).

57.    As a direct and proximate result of AP's violations, Plaintiff is entitled to damages and AP's profits pursuant to 17 U.S.C. § 1203(c)(2) for each violation.

58.    Alternatively, Plaintiff is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 1203(c)(3)(B), in the amount of $25,000 for each violation.

59.    Plaintiff is further entitled to attorneys' fees and full costs pursuant to 17 U.S.C. § 1203(b).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against AP as follows:

A.    For AP's profits and for damages in such an amount as may be found, or alternatively, for maximum statutory damages of not less than $150,000 with respect to each copyrighted work infringed, or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

B.    For a preliminary and a permanent injunction enjoining AP and AP's agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any of them, from (i) directly or indirectly infringing in any manner any of Plaintiff's copyright or other exclusive rights (whether now in existence or hereafter created); (ii) causing, contributing to, enabling, facilitating, or participating in the infringement of any of Plaintiff's respective copyrights; and (iii) causing, contributing to enabling, facilitating, or participating in the reproduction or distribution of any of Plaintiff's copyrights.

C.     For AP's profits and for damages in such an amount as may be found, or alternatively, for maximum statutory damages of not less than $25,000 per violation or for such other amount as may be proper pursuant to U.S.C. § 1203(c)(3)(B).

D.     For AP's profits and for damages in such an amount as may be found, or alternatively, for maximum statutory damages of not less than $25,000 per violation or for such other amount as may be proper pursuant to U.S.C. § 1203(c)(3)(B).

E.     For prejudgment interest according to law.

F.     For Plaintiff's attorneys' fees, costs, and disbursements in this action.

G.     For such other and further relief as the Court my deem just and proper.

### JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Ms. McClatchey requests a trial by jury on all issues presented that can properly be tried to a jury.

Respectfully submitted,

John E. Hall
Eckert Seamans Cherin & Mellott, LLC
USX Tower
600 Grant Street, 44th Floor
Pittsburgh, Pennsylvania 15219
Phone:  (412) 566-6000
Fax: (412) 566-6099

Douglas M. Hall
Kara L. Szpondowski
Niro, Scavone, Haller & Niro
181 West Madison, Suite 4600
Chicago, Illinois  60602-4515
Phone: 312-236-0733
Fax: 312-236-3137
*Attorneys for Valencia M. McClatchey*

# EXHIBIT A



# CERTIFICATE OF REGISTRATION

SHORT FORM VA
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

Registration Number

**VA 1-128-462**

*Marybeth Peters*

REGISTER OF COPYRIGHTS
United States of America

OFFICIAL SEAL

Examined By

Correspondence

Effective Date of Registration
1-29-2002

Application Received
Jan 29 02

Deposit Received
One          Two   Jan 29

Fee Received

TYPE OR PRINT IN BLACK INK. DO NOT WRITE ABOVE THIS LINE.

| | | |
|---|---|---|
| Title of This Work: | **1** | END of SERENITY |
| Alternative title or title of larger work in which this work was published: | | |
| Name and Address of Author and Owner of the Copyright: | **2** | VALENCIA M. McCLATCHEY 107 OSAGE PATH STOYSTOWN. PA. 15563 |
| Nationality or domicile: Phone, fax, and email: | | Phone ( 814 ) 754-4746   Fax ( ) Email Stooge @ shol.com |
| Year of Creation: | **3** | 2001 |
| If work has been published, Date and Nation of Publication: | **4** | a. Date  OCTOBER  1  2001  (Month, day, and year all required) Month   Day   Year b. Nation  USA |
| Type of Authorship in This Work: Check all that this author created. | **5** | ☐ 3-Dimensional sculpture  ☒ Photograph.  ☐ Map ☐ 2-Dimensional artwork  ☐ Jewelry design  ☐ Text ☐ Technical drawing |
| Signature: Registration cannot be completed without a signature. | **6** | I certify that the statements made by me in this application are correct to the best of my knowledge.* Check or ☒ Author  ☐ Authorized agent X _Valencia M. McClatchey_ |
| **OPTIONAL** Name and Address of Person to Contact for Rights and Permissions: Phone, fax, and email: | **7** | ☒ Check here if same as #2 above. Phone ( )   Fax ( ) Email |

EXHIBIT
A

| | | | |
|---|---|---|---|
| **8** Certificate will be mailed in window envelope to this address: | Name ▼ VALENCIA M McCLATCHEY Number/Street/Apt ▼ 107 OSAGE PATH City/State/ZIP ▼ STOYSTOWN, PA. 15563 | Complete this space only if you currently hold a Deposit Account in the Copyright Office. | **9** Deposit Account # Name |

DO NOT WRITE HERE          Page 1 of ___ p

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.     ☆U.S. GOVERNMENT PRINTING OFFICE: 1999-454-879

# EXHIBIT B



**EXHIBIT**

B

# EXHIBIT C

# WORLD IN TURMOIL

# Photo brought fame, not fortune for woman

## Shanksville resident captured horror

**By CHARLES SHEEHAN**
THE ASSOCIATED PRESS

SHANKSVILLE — The horror unfolding on Val McClatchey's television the morning of Sept. 11 was just beginning to sink in when a violent blast outside cut the power to her home and blackened the screen.

Running outside, McClatchey, 46, captured with a digital camera the moment that the terrorist attacks, once hundreds of miles away, came to this Western Pennsylvania community of 245 people.

The time and date recorded on the image marked the beginning of a tumultuous year for McClatchey. She came to the crash site, about a mile from her home where she took the picture, to mark the anniversary with thousands of others Wednesday.

"I just felt that this was one of the only places I could kind of blend in and find some anonymity," she said. "It's been chaos since that day."

In the image, which has brought news co[...] to the front door and a limited amount of fame to McClatchey, a sinister black, mushroom-shaped cloud rises from an otherwise peaceful view of a farm with a painted red barn.

United Airlines Flight 93 crashed just outside Shanksville shortly after 10 a.m. Sept. 11. Investigators say passengers aboard the Boeing 757 fought hijackers for control before the airliner crashed upside down in an open field, killing all 40 passengers and crew.

The picture is one of the few images of the crash, and within two weeks it had been purchased by major U.S. magazines including U.S. News & World Report, Newsweek, Time and several major magazines in Europe.

But ripples from the terrorist attacks had an almost immediate effect on McClatchey and her husband, John.

JCM Industries, a sawmill owned and operated by John McClatchey with 46 employees, was forced to file for bankruptcy protection on Sept. 20.

"After the attacks insurance com- panies just didn't want to cover companies that did work that's considered risky," Mr. McClatchey said. "We had always been able to get insurance, but things changed."

He said the attacks may not have been the sole reason for the collapse of his business, but they played a direct role.

In the year after the attacks, with the sawmill gone, Mrs. McClatchey's health would take a turn for the worse. She would need gallbladder surgery and tumors removed from her kidneys and liver.

"We're struggling," she said. "My husband got a job brokering pallets. I took real estate classes and got my license, but it's been hard."

The images McClatchey said she sold for $250 to $350 have not done much to help the couple financially.

Some residents of the region who wanted copies of the image have insisted on paying cash to cover costs of printing, and McClatchey said she has donated almost all of that money to the Todd M. Beamer Foundation, [...]d named after one



of the passengers aboard Flight 93 that aids children affected by the terrorist attacks.

But the McClatcheys say they are stronger people now than they were a year ago, she said. "This w[...] town is, but I think we're ready [...] break."

**Val McClatchey of Shanksville holds the photograph she snap outside her home shortly after the crash of United Airlines Flight**

"It depends on how things go [...] the bankruptcy, but I know we [...] living, and they remain optimistic.

EXHIBIT

C

# EXHIBIT D



EXHIBIT

D

**LAW OFFICES OF**
**NIRO, SCAVONE, HALLER & NIRO**

25770

Clerk of the US District Court for the

2/17/200
5  CHECK NO:

25770

| REF. NO. | YOUR INVOICE NUMBER | INVOICE DATE | INVOICE AMOUNT | AMOUNT PAID | DISCOUNT TAKEN |
|----------|---------------------|--------------|----------------|-------------|----------------|
|          | 02172005 mcclatchey | 02/17/05 | $250.00 | $250.00 | |

$250.00

# EXHIBIT E

# LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

SETH D. BERLIN
JAY WARD BROWN
JAMES E. GROSSBERG*
ASHLEY I. KISSINGER*
ELIZABETH C. KOCH*
LEE LEVINE*
ROBERT PENCHINA
CELESTE PHILLIPS*
DAVID A. SCHULZ
NATHAN SIEGEL
GAYLE C. SPROUL
MICHAEL D. SULLIVAN*

230 PARK AVENUE, SUITE 1160
NEW YORK, NEW YORK 10169

(212) 850-6100
FACSIMILE (212) 850-6299

1050 17TH STREET, N.W., SUITE 800, WASHINGTON, D.C. 20036-5514
(202) 508-1100   FACSIMILE (202) 861-9888

2112 WALNUT STREET, THIRD FLOOR, PHILADELPHIA, PA 19103
(215) 988-9778   FACSIMILE (215) 988-9750

NICOLE A. AUERBACH
JEANETTE MELENDEZ BEAD*
MICHAEL BERRY*
CHAD R. BOWMAN*
AUDREY CRITCHLEY*
THOMAS CURLEY*
ADAM J. RAPPAPORT*
ALIA L. SMITH
*NOT ADMITTED IN NEW YORK

WRITER'S DIRECT DIAL
212-850-6109

March 10, 2006

**VIA FACSIMILE AND FIRST CLASS MAIL**

Kara L. Szpondowski, Esq.
Niro, Scavone, Haller & Niro
181 West Madison Street, Suite 4600
Chicago, IL 60602-4515

   Re: **Valencia M. McClatchey v. The Associated Press**

Dear Ms. Szpondowski:

   Following up on your recent inquiry, in September 2002, there were 1,128 newspaper members and subscribers, and 19 broadcast members and subscribers to AP's PhotoStream service. Those numbers were the same in January 2003. In January 2004, there were 1,143 newspaper members and subscribers, and 21 broadcast members and subscribers, to AP's PhotoStream service.

       Very truly yours,

       LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

   By _____
     Robert Penchina