41 of 74 DOCUMENTS

JOE BARABAN and LOUISE IHLENFELDT, Plaintiffs, v. TIME WARNER, INC. d/b/a WARNER BOOKS and GERALD CELENTE, Defendants.

99 Civ. 1569 (JSM)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2000 U.S. Dist. LEXIS 4447; 54 U.S.P.Q.2D (BNA) 1759; 28 Media L. Rep. 2013

April 6, 2000, Decided
April 6, 2000, Filed

**DISPOSITION:** [*1] Defendants' motion for summary judgment granted but motion for fees and costs denied.

**COUNSEL:** For Plaintiff: Stephen A. Weingrad, Weingrad & Weingrad, LLP, New York, NY.

For Defendants: Steven J. Hyman, Leavy Rosensweig & Hyman, New York, NY.

**JUDGES:** JOHN S. MARTIN, JR., U.S.D.J.

**OPINIONBY:** JOHN S. MARTIN, JR.

**OPINION:**

### OPINION and ORDER

JOHN S. MARTIN, Jr., District Judge:

The remaining plaintiff in this case, Joe Baraban, brought this action against author Gerald Celente and Warner Books, claiming the defendants infringed his copyright in a photograph by including it in their book. The defendants have moved for summary judgment based on a fair use defense. The motion is granted.

The only material facts in dispute in this case are related to the validity of Mr. Baraban's copyright. For the purposes of this motion, however, the defendants have conceded that the copyright is valid in order to get a ruling on their fair use defense. The following facts are not in dispute.

In 1993 an organization called the United States Council for Energy Awareness ("USCEA") placed an ad in the Washington Post, the New York Times, and National Geographic. The ad includes a dramatic photograph [*2] of a woman and a cow standing framed against a blue sky with fluffy clouds in a field of yellow clover. Large print text above the photo reads, "Dairy Farmer, Louise Ihlenfeldt values NUCLEAR ENERGY as a way to keep the air clean. (And the milk fresh.)" Smaller print below the photo describes the harmonious relationship between the Ihlenfeldt family and the nuclear power plant "a mile up the road" and extols the virtues of nuclear power. The ad quotes Ms. Ihlenfeldt in her support for nuclear power and asks readers to write to the USCEA for a free booklet. The only copyright notice in the ad appears at the end of the smaller print: "(c) 1993 USCEA."

In 1997 Mr. Celente published a book entitled Trends 2000: How to Prepare for and Profit from the Changes of the 21st Century in which he forecasts and comments on trends in such diverse areas as personal investments, medicine, food, family values, capitalism, politics, and the economy. In a chapter entitled "From Meltdown to Mayhem" he discusses the dangers of nuclear reactors and criticizes both the nuclear energy industry and a complacent public for their response to nuclear disasters:

> Nevertheless, as long as people were [*3] not living just down-range, or in the affected immediate vicinity following some major breakdown, they did not make a fuss. *If* something happened in the future, well, it would happen elsewhere. Governments and the utility industry actively encouraged this optimism.

Gerald Celente, Trends 2000: How to Prepare for and Profit from the Changes of the 21st Century 69-70 (1997). Following this statement is a reproduction of the USCEA ad including Mr. Baraban's photograph of Ms.

EXHIBIT
21

Dockets.Justia.com

Case 3:05-cv-00145-TFM  Document 30-2  Filed 06/20/2006  Page 2 of 4

2000 U.S. Dist. LEXIS 4447, *; 54 U.S.P.Q.2D (BNA) 1759;
28 Media L. Rep. 2013

Page 2

Ihlenfeldt. The reproduction is in black and white and is smaller than the original. The photo has been cropped slightly, and the last paragraph of the ad's text, which included USCEA's address, has been omitted. Celente then goes on to criticize both the form and substance of the ad.

> Clear air! Safe plants! Nonpolluting! A protector of the environment! Preserver of natural resources and future generations! Fresh, cold milk! Wow! Nuclear expert and dairy farmer Louise Ihlenfeldt assures us, "We've never had a problem with the plant. . . ."
>
> What, me worry? And until the earthquake struck, there'd been no trouble with the Kobe Hotel or the Santa Monica Freeway. . . .
>
> But what does happen when one [*4] of our "safe" nuclear plants takes a direct hit from a 7.5 quake? Ask the U.S. Council for Energy Awareness. Ask Louise.
>
> But even as Louise was milking Elsie, the glowing cow, and Madison Avenue was trying to distract us from absorbing what we already knew, the press was revealing some things we had been prevented from knowing for the last forty years.

Id. at 71. The rest of the chapter goes on to discuss the history of dangerous nuclear and radioactive testing by the U.S. government.

Before Trends 2000 was published the defendants attempted to contact the owners of the ad's copyright in order to negotiate a nominal fee as they did for other quoted material in the book. By that time, however, the USCEA had apparently ceased to exist, and no representatives of the group could be reached at the address listed in the ad. After diligent efforts to find forwarding information the defendants gave up.

Mr. Baraban, the photographer who took the photo in question, now brings this action claiming copyright infringement. To establish an infringement claim, he must show both (1) ownership of a valid copyright and (2) unauthorized copying. See *Twin Peaks Prod., Inc. v. Publications Int'l Ltd.*, 996 F.2d 1366, 1372 (2d Cir. 1993). [*5] Defendants have admitted that they copied the photograph without authorization and have moved for summary judgment. For the purposes of the motion, they have also conceded Mr. Baraban's ownership of a valid copyright but reserve the right to challenge copy-right validity if they lose on summary judgment. The defendants claim a complete defense to this infringement action based on fair use.

The fair use doctrine was fashioned as a "guarantee of breathing space" within the confines of copyright that allows for new transformative works that further the public discourse and the free exchange of ideas in order to promote science and the arts. See *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579, 114 S. Ct. 1164, 1171, 127 L. Ed. 2d 500 (1994). As Justice Story recognized,

> in truth, in literature, in science and in art, there are, and can be, few, if any, things, which in the abstract sense are strictly new and original throughout. Every book in literature, science and art, borrows, and must necessarily borrow, and use much which was well known and used before.

*Emerson v. Davies*, 8 F. Cas. 615, 619 (C.C.D. Mass. 1845) (No. 4,436). Congress [*6] has identified a non-exhaustive list of four factors to be used in evaluating a fair use defense: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect on the potential market for or value of the copyrighted work. See *17 U.S.C. § 107*. Taken together, the four factors in the instant case demonstrate that the defendants' inclusion of Mr. Baraban's photograph in Trends 2000 does constitute fair use.

The first fair use factor addresses "the purpose and character of the use, including whether such use is of a commercial nature or is for non-profit educational purposes." Id. Section 107 also explicitly enumerates several examples of fair use including copying a work "for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research." The defendants' use of Mr. Baraban's photograph was clearly for the purposes of criticism and comment. Mr. Celente wanted to criticize efforts by the power industry to promote a sunny view of nuclear energy in the public [*7] forum, and the USCEA ad including Mr. Baraban's photograph provided a perfect illustration of those efforts.

While the defendants published Trends 2000 in an effort to make a profit, profit motive by itself does not control the fair use analysis. See *Maxtone-Graham v. Burtchaell*, 803 F.2d 1253, 1262 (2d Cir. 1986). If a work falls into one of the fair use categories enumerated in the Copyright Act, "assessment of the first fair use

2000 U.S. Dist. LEXIS 4447, *; 54 U.S.P.Q.2D (BNA) 1759;
28 Media L. Rep. 2013

factor should be at an end, even though, as will often be the case, the defendants anticipate profits." *Wright v. Warner Books, Inc.*, 953 F.2d 731, 736-37 (2d Cir. 1991) (quotations and citations omitted). In fact, because the defendants' use of the plaintiff's photo clearly falls within the permissible use categories of "comment" and "criticism," the Court must "lean decidedly in the direction of finding fair use even as it looks at the other three factors." *Mathieson v. Associated Press*, 1992 U.S. Dist. LEXIS 9269, 23 U.S.P.Q.2D (BNA) 1685, 1689 (S.D.N.Y. 1992). Mr. Celente included the photo in his book in order to comment on Mr. Baraban's effort to portray the happy, healthy lifestyle of people and cows [*8] who live near nuclear power plants. This purpose weighs heavily in favor of a finding of fair use.

Mr. Baraban argues that because the use of his photograph in Trends 2000 constitutes satire as opposed to parody, it cannot be a fair use. The problem with this argument is that the defendants' use of Mr. Baraban's photo is neither parody nor satire as those terms have been defined in the case law. A parody is a "literary or artistic work that imitates the characteristic style of an author or work for comic effect or ridicule." See *Campbell*, 510 U.S. at 580, 114 S. Ct. at 1172 (quotation omitted). Parody is generally protected under the fair use doctrine as a valued form of social and literary criticism. See *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1400 (9th Cir. 1997). The Supreme Court has explained that the heart of any parodist's claim of fair use "is the use of some elements of a prior author's composition to create a new one that, at least in part, comments on that author's works." *Campbell*, 510 U.S. at 580, 114 S. Ct. at 1172. Satire, on the contrary, mimics the copyrighted work, using it as a [*9] "vehicle to poke fun at another target" and is generally granted less protection under the fair use doctrine. See id.; *Dr. Seuss*, 109 F.3d at 1400. Mr. Celente's use of the Louise Ihlenfeldt photograph is neither parody nor satire under these definitions because he does not mimic the style of the photo. Instead, he copies the photo outright in order to comment on it and on the USCEA advertising campaign in which the photo played an integral part.

Mr. Baraban contends that the defendants should not be entitled to a fair use defense because Mr. Celente does not comment directly on his photograph but instead uses the photograph to criticize the USCEA, people like Ms. Ihlenfeldt, and the nuclear energy industry. It is true that Mr. Celente does not critique the artistic merits of the photograph--he does not discuss the plaintiff's use of lighting or camera angle, for example. Mr. Baraban may be correct that reproducing a copyrighted work only to comment on or to poke fun at something completely unrelated to the original work is probably not a fair use. As the Second Circuit has made clear in its discussion of parody and satire, unless the plaintiff's's copyrighted work [*10] is at least in part the target of the defendant's criticism, the fair use defense is not available. See *Rogers v. Koons*, 960 F.2d 301, 310 (2d Cir. 1992).

Mr. Baraban's photo, however, is the target of Mr. Celente's criticism at least in part. The photo is part of a newsworthy advertisement that comments on an issue of public importance. The photograph is an integral part of that commentary because Mr. Baraban's artistic portrayal of the wholesome duo on the Ihlenfeldt farm makes the point that nuclear energy is safe in a way that words alone could not. Thus, the photograph is itself a work of political commentary, and the defendants are allowed to quote or reproduce a reasonable portion of that commentary in order to respond to it. As discussed above, because the defendants reproduced the photo for the purpose of commentary and criticism, the first factor weighs heavily in favor of fair use.

In assessing the second fair use factor, the nature of the copyrighted work, the Court notes at the outset that publicly released works qualify for far less protection against fair use than do unpublished materials, and works that are factual or informational in nature are more [*11] susceptible to fair use than those that are non-factual or creative. See *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 563, 105 S. Ct. 2218, 2232, 85 L. Ed. 2d 588 (1985). Mr. Baraban's photo, as part of the USCEA ad, was widely disseminated in at least three national publications, and Mr. Baraban was presumably paid for his work. "Thus, plaintiff's right to control the first public appearance of the [photo] is not implicated here, nor does there exist any 'race to publish.'" *Mathieson*, 23 U.S.P.Q.2D (BNA) at 1689.

Although photographs are often "factual or informational in nature," the art of photography has generally been deemed sufficiently creative to make the second fair use factor weigh in favor of photographer-plaintiffs. See *Strauss v. Hearst Corp.*, 1988 U.S. Dist. LEXIS 1427, 8 U.S.P.Q.2D (BNA) 1832, 1836 (S.D.N.Y. 1988). Mr. Baraban's photograph is a creative work. He shot Louise Ihlenfeldt and her cow from a low angle framed dramatically, even heroically, against the sky. Ms. Ihlenfeldt is posed ramrod straight with her chin up, gazing into the distance as her companion regards the photographer stoically with [*12] a sidelong stare. As creative as the photograph may be, however, the defendants' correctly point out that for purposes of fair use analysis it cannot be severed from the ad in which it was published. The advertisement was an example of what is sometimes termed an "op-ad"--a commentary on a political or social issue paid for as advertising by an advocacy group. As such, the ad invited public commentary and discussion of the kind at issue here. Therefore, while Mr. Baraban's photograph was a creative work, its prior publication as

Case 3:05-cv-00145-TFM   Document 30-2   Filed 06/20/2006   Page 4 of 4

Page 4

2000 U.S. Dist. LEXIS 4447, *; 54 U.S.P.Q.2D (BNA) 1759;
28 Media L. Rep. 2013

part of a commentary on an issue of public importance prevents the second factor from weighing decisively in his favor.

The third factor in the fair use analysis is the amount and substantiality of the work used. Generally, the amount of permissible copying depends on the purpose or character of the use. See *Campbell, 510 U.S. at 586, 114 S. Ct. at 1175*. The key issue is whether the defendants have used any more of the copyrighted work than is necessary to accomplish the protected purpose. See *Rogers, 960 F.2d at 311*. Even full reproduction may be protected by fair use in the right circumstances. See id. The photograph [*13] at issue here was reproduced in Trends 2000 with some modification. It has been shrunk to less than one quarter of its original size and is in black and white whereas the original was in color. The reproduction in the book is just large enough to give the reader a sense of the wholesome, sunny image of Ms. Ihlenfeldt and her companion. The photo is essential to Mr. Celente's commentary on the USCEA ad campaign, and the book does not reproduce the image in the same full-color large-sized glory as the original. The defendants have not used any more of the photo than was necessary to comment on it. Therefore, the third factor weighs in the defendants' favor.

The fourth factor, the effect on the potential market for the original, is closely related to the third in this case. The defendants have only reproduced a black-and-white version that measures less than two by three inches and pales in comparison to the full-color original. It is therefore unlikely that Trends 2000 will have a negative impact on the putative market for Mr. Baraban's photo. Furthermore, the idea that a thriving market for photographs of Louise Ihlenfeldt and her cow (however dramatically portrayed) actually [*14] exists is dubious to say the least. The fourth factor must weigh against Mr. Baraban because the defendants have done no harm to any market for his photo.

Considering all four factors together, the defendants' inclusion of a small black-and-white version of Mr. Baraban's photograph in their book in order to comment on the photo and the USCEA ad campaign is a fair use.

The defendants also move the Court to exercise its discretion to award attorney fees and costs under *17 U.S.C. § 505* because the plaintiff's claim is "objectively unreasonable." While Mr. Baraban's claim is not particularly strong, there is no evidence of bad faith on his part, and there was at least some basis for challenging the defendants' interpretation of their fair use defense. See *Ringgold v. Black Entertainment Television, Inc., 126 F.3d 70 (1997)*.

Therefore, the defendants' motion for summary judgment is granted, but their motion for fees and costs is denied.

**SO ORDERED.**

Dated: New York, New York

April 6, 2000

JOHN S. MARTIN, JR., U.S.D.J.