26 of 74 DOCUMENTS

**BATESVILLE SERVICES, INC., BATESVILLE CASKET COMPANY, INC.,
Plaintiffs, vs. FUNERAL DEPOT, INC., Defendant.**

CASE NO. 1:02-cv-01011-DFH-TAB

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
INDIANA, INDIANAPOLIS DIVISION

*2004 U.S. Dist. LEXIS 24336; Copy. L. Rep. (CCH) P28,901*

**November 10, 2004, Decided**

**NOTICE:** [*1] NOT INTENDED FOR PUBLICATION IN PRINT

**DISPOSITION:** Defendant's motion to dismiss and motion for summary judgment denied. Plaintiffs' motion to strike denied, and Plaintiff's motion for summary judgment granted in part and denied in part.

**COUNSEL:** For BATESVILLE SERVICES, INC., Plaintiff: Dwight D. Lueck, BARNES & THORNBURG, Indianapolis, IN; Mary Jane Frisby, BARNES & THORNBURG, Indianapolis, IN.

For BATESVILLE CASKET, COMPANY, INC., Plaintiff: Dwight D. Lueck, BARNES & THORNBURG, Indianapolis, IN; Mary Jane Frisby, BARNES & THORNBURG, Indianapolis, IN.

For FUNERAL DEPOT, INC., Defendant: Brian W. Welch, BINGHAM MCHALE, Indianapolis, IN; Vanessa L. Prieto, SHUTTS & BOWEN LLP, Ft. Lauderdale, FL; Bruce Howard Little, LINDQUEST & VENNUM P.L.L.P., Minneapolis, MN; Garrett M. Weber, LINDQUIST & VENNUM P.L.L.P., Minneapolis, MN; Sarah B. Stroebel, LINDQUEST & VENNUM P.L.L.P., Minneapolis, MN.

**JUDGES:** DAVID F. HAMILTON, JUDGE.

**OPINIONBY:** DAVID F. HAMILTON

**OPINION:**

ENTRY ON PENDING MOTIONS

This case presents a number of questions about the application of copyright law to advertising materials for caskets, especially the use of those advertising materials on the internet. Plaintiffs Batesville Services, Inc. and Batesville Casket Company, Inc. allege that defendant Funeral Depot, Inc. has infringed their copyrights in a number of advertising photographs used to market Batesville(R) caskets. Both [*2] sides have moved for summary judgment. Defendant Funeral Depot has also moved to dismiss for lack of subject matter jurisdiction, and plaintiffs have moved to strike an economist's affidavit offered by defendant. As explained below, the court denies defendant's motions and denies plaintiffs' motion to strike. The court grants plaintiffs' motion for summary judgment on the fair use, misuse of copyright, fraud and improper registration, and antitrust defenses, but denies plaintiffs' motion in all other respects.

I. *Background*

The following background facts are undisputed for purposes of the pending motions. Plaintiff Batesville Casket Company, Inc. sells caskets and other funeral products and services. Plaintiff Batesville Services, Inc. is an affiliated company that owns many intellectual property assets and licenses them to Batesville Casket. To help market its caskets, Batesville Casket has created lithographs of many of its caskets. Each lithograph includes a photograph of the casket and text describing the casket and its features. Batesville Casket distributes these lithographs to its authorized dealers at no charge.

Defendant Funeral Depot operates a website called funeraldepot. [*3] com through which it offers to sell caskets, including Batesville(R) caskets. Funeral Depot is not an authorized dealer of Batesville(R) caskets. If a customer orders a Batesville(R) casket from Funeral Depot, Funeral Depot arranges to buy the desired casket from an authorized dealer and arranges for shipment from that dealer to the local funeral home chosen by the customer. Price mark-ups in the casket business are high enough so that this method of distribution can provide the consumer with a competitive price that is profitable for Funeral Depot.

EXHIBIT 21(A)

Dockets.Justia.com

Case 3:05-cv-00145-TFM  Document 30-3  Filed 06/20/2006  Page 2 of 12

Page 2
2004 U.S. Dist. LEXIS 24336, *; Copy. L. Rep. (CCH) P28,901

In marketing caskets through its website, Funeral Depot has sought to have photographs of the caskets available to internet shoppers. As of March 2001, Funeral Depot was displaying at least some photographs of Batesville(R) caskets on its website. The display included a disclaimer stating that the Batesville name and images were "trademark" protected property of Hillenbrand Industries, which is the parent of Batesville Casket.

In July 2001, plaintiffs sent a cease-and-desist letter to Funeral Depot. In response, Funeral Depot removed the photographic images from its own website. However, Funeral Depot then displayed the images on a website [*4] called americanmemorialcenters.com and then on a website called casketsnow.com. While the images were on the casketsnow.com website, they could not be viewed directly by visitors to that site. They could be viewed only by going to the funeraldepot.com website and clicking on a link from there.

In 2001 or early 2002, Funeral Depot's principal Dean Magliocca spoke to James Rudolph, the principal of Veterans Cremation and Burial Society ("Veterans Society"). Veterans Society is an authorized dealer of Batesville(R) caskets. Veterans Society had a website, but at that time it did not display images of caskets for sale. Magliocca and Rudolph agreed that Funeral Depot would pay the expenses of modifying the Veterans Society website so that the images of Batesville(R) caskets would be displayed on it. Magliocca/Funeral Depot paid a third party to digitize the photographic images for the Veterans Society website. Magliocca also determined the layout of the casket web pages. Funeral Depot determines the prices of caskets shown on these Veterans Society web pages and controls changes to those web pages.

Funeral Depot then modified its own website so that small, low-resolution "thumbnail" images [*5] of Batesville(R) caskets were linked to the appropriate casket pages on the Veterans Society website. Now, when a shopper on the funeraldepot.com website clicks on a thumbnail image of a Batesville(R) casket, the shopper is linked to a much larger image on a casket page on the Veterans Society website. Although the linked casket web pages are part of the Veterans Society website, they actually display the Funeral Depot phone number. The relationship to Veterans Society is shown in the web address at the top of the screen and in a small text display at the bottom of the page stating: "All images are being shown through Veterans Burial and Cremation Web Site, an authorized Batesville reseller and licensed funeral home." The casket web pages also have a link labeled "Back to Main Gallery." Clicking on that link returns the viewer to the Funeral Depot website.

Plaintiffs contend that both the past and present arrangements violate their valid copyrights in the photographs in question. Funeral Depot contends that plaintiffs have not properly registered the photographs for copyright protection and that the use of the photographs is protected by defenses of accord and satisfaction, license, [*6] fair use, copyright misuse, fraud on the copyright office, and violation of federal antitrust laws. Funeral Depot has also argued that the use of links on the internet can never amount to copyright infringement. Additional facts are stated below, keeping in mind the applicable standard for the relevant motion, including which side's motion for summary judgment is at issue.

II. *Subject Matter Jurisdiction*

First, however, the court must turn to subject matter jurisdiction. Section 411(a) of the Copyright Act, *17 U.S.C. § 411(a)*, provides in relevant part that "no action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made in accordance with this title." Defendant Funeral Depot argues that the court has no jurisdiction over the subject matter of this copyright case because plaintiffs did not properly register the copyrights on the photographs in question.

The court disagrees. Pursuant to *28 U.S.C. § 1338(a)*, the court has subject matter jurisdiction over these claims arising under the copyright laws. Proper registration is a condition precedent [*7] to a suit, as required under *17 U.S.C. § 411(a)*, but the arguable failure to satisfy a condition precedent does not affect the court's subject matter jurisdiction. Cf. *Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393-94, 71 L. Ed. 2d 234, 102 S. Ct. 1127 (1982)* (holding unanimously that timely filing of EEOC charge under *Title VII of Civil Rights Act of 1964* was only a condition precedent to suit, not a jurisdictional requirement); *Altheimer & Gray v. Sioux Mfg. Corp., 983 F.2d 803, 813 (7th Cir. 1992)* (failure to exhaust tribal remedies in suit against tribal entity does not undermine subject matter jurisdiction); *Babrocky v. Jewel Food Co., 773 F.2d 857, 864 (7th Cir. 1985)* (requirement under Title VII that scope of EEOC charge limit the scope of subsequent complaint is a condition precedent with which litigants must comply rather than component of subject matter jurisdiction).

In seeking dismissal for lack of jurisdiction, Funeral Depot relies on copyright infringement cases stating that the court's "jurisdiction" depended on whether the plaintiff had properly registered the copyright. See, e.g., *I.M.S. Inquiry Mgmt. Systems, Ltd. v. Berkshire Information Systems, Inc., 307 F. Supp. 2d 521, 526 (S.D.N.Y. 2004)* [*8] ("The registration requirement is jurisdictional; a lack of registration bars an infringement claim."); *Foraste v. Brown University, 248 F. Supp. 2d*

Case 3:05-cv-00145-TFM    Document 30-3    Filed 06/20/2006    Page 3 of 12

Page 3

2004 U.S. Dist. LEXIS 24336, *; Copy. L. Rep. (CCH) P28,901

*71, 76 (D.R.I. 2003)* ("Copyright registration is a condition precedent and a jurisdictional prerequisite to the filing of an infringement action."); *Lennon v. Seaman, 84 F. Supp. 2d 522, 524 (S.D.N.Y. 2000)* ("That either a copyright must be registered or an application brought is a jurisdictional prerequisite to the filing of an infringement action."). These statements are part of a series of copyright opinions that have spoken of "jurisdiction" without focusing on the difference between conditions precedent to suit and those issues that actually affect the court's subject matter jurisdiction, its power to decide the case. As the Supreme Court has acknowledged, such loose uses of the term are not uncommon. *Zipes, 455 U.S. at 395* (acknowledging Supreme Court's own prior "scattered references to the timely-filing requirement as jurisdictional," but holding that requirement was only a non-jurisdictional condition precedent).

The Seventh Circuit has cautioned that the word "jurisdictional" [*9] can have multiple meanings, including such "weak" use as referring to a condition precedent. *Kanar v. United States, 118 F.3d 527, 529-30 (7th Cir. 1997)*; accord, *Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 90, 140 L. Ed. 2d 210, 118 S. Ct. 1003 (1998)* ("'Jurisdiction,' it has been observed, is a word of many, too many, meanings,'"), quoting *United States v. Vanness, 318 U.S. App. D.C. 95, 85 F.3d 661, 663, n. 2 (D.C. Cir. 1996)*. In general, whether a condition precedent has been satisfied does not affect the court's subject matter jurisdiction in the strong sense of that term. *E.g., Zipes, 455 U.S. at 393*. If an issue is jurisdictional in the strong sense, it means that the defect is not waivable, that the court has an obligation to raise the issue on its own, and that the court (not a jury) resolves disputed questions of fact material to the issue. See *Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583, 143 L. Ed. 2d 760, 119 S. Ct. 1563 (1999)* (defects not waivable); accord, *e.g., Papa v. Katy Industries, Inc., 166 F.3d 937, 943 (7th Cir. 1999)* (status as covered "employer" under employment discrimination laws is not jurisdictional, so court is not trier [*10] of fact), and *Sharpe v. Jefferson Distributing Co., 148 F.3d 676, 678 (7th Cir. 1998)* (same).

The Supreme Court explained in *Steel Co. v. Citizens for a Better Environment* that courts must distinguish between whether a claim under federal law is a winner and whether the court has jurisdiction over the claim: "Dismissal for lack of subject matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to invoke a federal controversy." *523 U.S. at 89*. Under this standard, whether plaintiffs properly registered their photographs for copyright protection is a condition precedent to prevailing on the merits of their claims. It is not a matter that affects this court's subject matter jurisdiction, which is granted by *28 U.S.C. § 1338(a)*. Defendant Funeral Depot's motion to dismiss for lack of subject matter jurisdiction is hereby denied.

### III. *Accord and Satisfaction*

Defendant Funeral Depot has raised the affirmative defense of accord and satisfaction as to claims [*11] arising before July 23, 2001, and has moved for summary judgment on the defense. Funeral Depot relies on what it describes as its compliance with a cease-and-desist demand from plaintiffs. Before July 2001, Funeral Depot had posted copies of plaintiffs' casket photographs on Funeral Depot's own website. An attorney for plaintiffs sent a cease-and-desist letter on July 23, 2001 demanding that Funeral Depot remove the images from its website. Funeral Depot removed the images from funeraldepot.com, but then moved them to a different website that Funeral Depot controlled, called "casketsnow.com." Funeral Depot later made the arrangements with Veterans Society discussed below. Plaintiffs made no further demands and took no other action before filing this lawsuit in 2002.

As the party asserting the defense of accord and satisfaction, Funeral Depot has the burden of coming forward with evidence that would allow a jury to find its elements, including objective manifestations of intent to resolve the dispute on agreed terms. See *Fifth Third Bank of Southeastern Indiana v. Bentonville Farm Supply, Inc., 629 N.E.2d 1246, 1249 (Ind. App. 1994)* ("As a contract, accord and satisfaction [*12] requires a meeting of the minds or evidence that the parties intended to agree to an accord and satisfaction."), citing *Erie Co. v. Callahan Co., 204 Ind. 580, 184 N.E. 264, 266 (Ind. 1933)*, and *Kucel v. Walter E. Heller & Co., 813 F.2d 67, 70 (5th Cir. 1987)*. n1

---

N1 Under Indiana law as summarized in *Sedona Development Group, Inc. v. Merrillville Road Ltd. P'ship, 801 N.E.2d 1274, 1278 n.1 (Ind. App. 2004)*, the defense of accord and satisfaction requires proof that: (1) there is a good faith dispute; (2) the sum in dispute is not liquidated; (3) there is consideration; (4) there is a meeting of the minds or evidence that the parties intended to agree to an accord and satisfaction; and (5) there is a performance of the contract. Plaintiffs' response to the motion for summary judgment challenges Funeral Depot's ability to satisfy the fourth element, upon which Funeral Depot has the burden of proof.

Plaintiffs' letter did not promise anything at all in exchange for Funeral Depot's [*13] compliance with its demand to remove plaintiffs' images from Funeral Depot's website. The letter did not promise not to sue; it simply demanded compliance with plaintiffs' view of Funeral Depot's legal obligations. There is no evidence that plaintiffs communicated an offer of any kind. The court assumes that Funeral Depot hoped its compliance would avoid a lawsuit, but that hope was not based on any explicit promise, *i.e.*, any objective manifestation of intent by plaintiffs that they would take no further action if Funeral Depot complied. Nor is there any evidence that Funeral Depot communicated to plaintiffs any understanding that compliance would avoid a lawsuit or other consequences for the alleged copyright violations. Plaintiffs have not moved for summary judgment on this defense themselves, but in any event Funeral Depot is not entitled to summary judgment on the defense of accord and satisfaction as applied to claims arising before July 23, 2001. n2

n2 Plaintiffs continue to seek damages for the earlier use of their photographs on the funeraldepot.com and casketsnow.com websites, though Funeral Depot's alleged infringement seems not to have damaged plaintiffs at all and Funeral Depot's sales of Batesville caskets were modest (gross revenues in the five-figures). As a result of these modest claims for damages, the license and linking issues discussed below based on the Veterans Society links could not resolve the entire case.

[*14]

IV. *Scope of Implied License to Veterans Society*

In responding to the cease and desist letter of July 2001, Funeral Depot eventually made other arrangements. Its website now contains links to the Veterans Society website for full-size photographs of Batesville(R) caskets. Veterans Society is an authorized Batesville(R) casket dealer. Plaintiffs provided the photographs to Veterans Society for its use. Like any other Batesville(R) dealer, Veterans Society is authorized to use those photographs for at least some purposes.

All of plaintiffs' copyright claims based on Funeral Depot's links to the Veterans Society website -- for direct, vicarious, and contributory infringement -- are built on the assumption that Veterans Society is itself violating plaintiffs' rights by posting the photographs on its website in ways that help Funeral Depot promote its business. There is no written license agreement between plaintiffs and Veterans Society. It is nevertheless clear that Veterans Society has an implied license to use the photographs, at least as part of its own marketing efforts. The central issue is whether plaintiffs have licensed Veterans Society to use the copyrighted photographs [*15] as they are now being used.

Funeral Depot argues that the evidence shows that plaintiffs' policy is to permit authorized dealers to use the photographs as long as they are used to sell Batesville(R) caskets and as long as the dealer's name is displayed on the website. Veterans Society's use falls within those boundaries. In response, plaintiffs contend that Veterans Society has an implied license to use the photographs only to promote its own business. Plaintiffs also contend that Veterans Society has violated the terms of this implied license by using the photographs to promote Funeral Depot's business. In support of this position, plaintiffs refer to their own stated policy, which they say limits authorized dealers' use of copyrighted images to uses that promote the dealers' own businesses. There is no evidence, however, that plaintiffs have even *asked* Veterans Society to change the current arrangements, let alone that plaintiffs have taken more decisive steps to force a change in Veterans Society's practices. There also is no evidence that the plaintiffs' internal policy was ever communicated to Veterans Society.

Implied non-exclusive copyright licenses can provide a complete [*16] defense to a charge of copyright infringement. *E.g., I.A.E., Inc. v. Shaver, 74 F.3d 768, 775-76 (7th Cir. 1996)* (affirming finding that license defense had been established, and noting that a nonexclusive license "may even be implied from conduct"); see also *John G. Danielson, Inc. v. Winchester-Conant Properties, Inc., 322 F.3d 26, 40 (1st Cir. 2003)* (discussing implied copyright licenses but finding no implied license). In response, plaintiffs cite cases stating that implied licenses should be construed narrowly and that they do not include a right to sub-license to others. See, *e.g., Play Media Systems, Inc. v. America Online, Inc., 171 F. Supp. 2d 1094, 1099 (C.D. Cal. 2001)*. These general statements in favor of narrow construction cannot resolve this issue as a matter of law, though, and Funeral Depot is not asserting that it has a sub-license to use the photographs. It contends instead that the implied license permits Veterans Society to use the photographs precisely as they are now being used -- on Veterans Society's own website, for the mutual benefit of Funeral Depot and Veterans Society.

Plaintiffs also rely on *Electronic Publishing Co. v. Zalytron Tube Corp., 376 F.2d 592 (2d Cir. 1967)*, [*17] for the proposition that a manufacturer who prepares and distributes advertising materials (rather than a publisher of those advertising materials) retains copyrights over the advertising materials. Assuming that is true, the case says nothing about the scope of an implied license. Per-

Case 3:05-cv-00145-TFM   Document 30-3   Filed 06/20/2006   Page 5 of 12

Page 5

2004 U.S. Dist. LEXIS 24336, *; Copy. L. Rep. (CCH) P28,901

haps *Electronic Publishing* would be on point if a catalog publisher were suing Funeral Depot, but it does not answer the question here about the relevant scope of the implied license to Veterans Society.

The scope of the implied license is a question of fact. The facts here could lead a reasonable jury to find that Veterans Society's implied license allows the current use of the images in question on Veterans Society's own website. First, the absence of a written license agreement makes it difficult to determine as a matter of law, at least, the scope of the license that undoubtedly exists. The fact that a license can be implied from conduct is critical to the issue. Under plaintiffs' theory of the case, they could revoke at any time the implied license to Veterans Society, whatever its terms might be. Plaintiffs could use that power to insist that Veterans Society revise its website in a way that [*18] satisfies plaintiffs. Plaintiffs have not taken either step, presumably for business reasons, such as maintaining good relationships with their dealers in general and with this dealer in particular.

Regardless of their reasons, plaintiffs' failure to take those steps is evidence that tends to prove that Veterans Society is not violating the terms of its implied license by allowing Funeral Depot to display its telephone number on the web pages with the licensed images. That evidence, plus the absence of any written license agreement, shows that there are genuine issues of material fact concerning Funeral Depot's license defense. Neither side is entitled to prevail as a matter of law on Funeral Depot's license defense.

V. *Fair Use*

Funeral Depot also contends that its use of the Batesville(R) casket photographs is "fair use" of copyrighted material, so that Funeral Depot is protected from liability by *17 U.S.C. § 107*. Both sides have moved for summary judgment on the fair use defense. The relevant facts are undisputed. The court concludes that the undisputed facts show that the fair use defense is not available. The court grants plaintiffs' motion on [*19] the defense and denies defendant's motion on the defense.

*The Copyright Act* was amended in 1976 to recognize what had been a judicial doctrine of fair use. The Act now provides in relevant part:

> Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include --
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.
>
> The fact that a work is unpublished shall not itself bar a finding of fair use if such finding [*20] is made upon consideration of all the above factors.

*17 U.S.C. § 107*. The statutory factors are not intended to be an exhaustive list of relevant factors. *Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 549, 85 L. Ed. 2d 588, 105 S. Ct. 2218 (1985)*; *Chicago Bd. of Education v. Substance, Inc., 354 F.3d 624, 629 (7th Cir. 2003)* ("the four factors . . . are not exhaustive and do not constitute an algorithm that enables decisions to be ground out mechanically").

The first factor weighs against the fair use defense. Funeral Depot uses plaintiffs' photographs for its own commercial purposes. This fact is not controlling by itself and gives rise to no presumption against the defense. Still, this fact tends to weigh against the defense, at least as compared to educational uses or criticism, comment, news reporting, or research. *Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 579, 127 L. Ed. 2d 500, 114 S. Ct. 1164 (1994)*.

More significant under this first factor is the question whether defendant made "transformative" use of the images, to use the Supreme Court's language in *Campbell*, borrowed from Judge Leval in *Toward a Fair Use Standard, 103 Harv.L.Rev. 1105, 1111 (1990)*. [*21] The undisputed facts show there was no transformative use of plaintiffs' images here. Funeral Depot added nothing to the works and created nothing new. Funeral Depot simply copied the images and uses them for precisely the

Case 3:05-cv-00145-TFM   Document 30-3   Filed 06/20/2006   Page 6 of 12

Page 6
2004 U.S. Dist. LEXIS 24336, *; Copy. L. Rep. (CCH) P28,901

same purpose for which plaintiffs originally developed them: to sell the products that appear in the photographs. In the language of *Campbell v. Acuff-Rose Music*, Funeral Depot's use of the images "merely supersedes the objects of the original creation." *510 U.S. at 579*. In the language of the Seventh Circuit in *Ty, Inc. v. Publ'ns Int'l, 292 F.3d 512, 517-18 (7th Cir. 2002)*, Funeral Depot's copying is "substitutional" rather than "complementary," meaning that the factor weighs substantially against the fair use defense. Accord, *Davis v. The Gap, Inc., 246 F.3d 152, 174-76 (2d Cir. 2001)* (use of plaintiff's distinctive jewelry in commercial advertising was not "transformative" use but superseded use of original in order to avoid paying royalty).

Funeral Depot relies on *Kelly v. Arriba Soft Corp., 336 F.3d 811 (9th Cir. 2003)*, which held in relevant part that it was fair use of [*22] an artist's photographs to post small, low-resolution "thumbnail" images of those photographs on the defendant's website, which searched the internet and helped consumers find where they could buy the images it found. *336 F.3d at 815*. The case is readily distinguishable from this one. The photographs used in this case are high resolution, and they are not being made available for merely informational purposes, as was the case in Kelly. *Id. at 818-19*. The images in this case are being made available for Funeral Depot's own sales purposes as substitutes for plaintiffs' photographs rather than as a complement to them.

Funeral Depot also argues that its use of plaintiffs' images is transformative because it is using them "to improve consumer access to information already available for free on the Internet, to help consumers find the same caskets but at a lower price than they could expect to pay to an Authorized Funeral Home." Def. Br. at 16. That noble capitalist motive, however, does not mean that defendant's use of the images is "transformative." They are still the same images, being used for the same purpose of selling caskets. Funeral Depot has not cited [*23] any case treating such use as "transformative," and the court sees nothing transformative about it. Funeral Depot's copying of the photographs "merely supersedes" the original work and adds little if anything that is new and copyrightable in its own right. See *Castle Rock Entertainment, Inc. v. Carol Publishing Group, Inc., 150 F.3d 132, 142 (2d Cir. 1998)* (describing presence or absence of such "transformative" use as the most critical aspect of first statutory factor), quoting *Campbell v. Acuff-Rose Music, Inc., 510 U.S. at 579*. The first factor thus weighs heavily against the fair use defense.

The second statutory factor is the nature of the copyrighted work. Plaintiffs' photographs are commercial advertising materials, as distinct from artistic creations, for example. See *Kelly v. Arriba Soft, 336 F.3d at 820* (distinguishing between creative works and those that are more "fact-based"). Photographs used in advertising may still be protected by copyright. "A picture is none the less a picture, and none the less a subject of copyright, that it is used for an advertisement." *Bleistein v. Donaldson Lithographing Co., 188 U.S. 239, 251, 47 L. Ed. 460, 23 S. Ct. 298, 1903 Dec. Comm'r Pat. 650 (1903)*. [*24] A party who holds a copyright on advertising materials is entitled to enforce the copyright laws against unauthorized copying that is not protected by a defense. E.g., *Harbor Motor Co., Inc. v. Arnell Chevrolet-Geo, Inc., 265 F.3d 638, 644 (7th Cir. 2001)* (reinstating jury verdict finding copyright infringement in advertising); *Electronic Publishing Co. v. Zalytron Tube Corp., 376 F.2d 592, 592 (2d Cir. 1967)* (advertisers were entitled to prohibit use of copyrighted advertising materials in advertising by downstream merchants). This factor is essentially neutral on Funeral Depot's fair use defense.

The third statutory factor is the amount and substantiality of the portion of the copyrighted work used in relation to the copyrighted work as a whole. This factor weighs against the fair use defense. There is no *per se* rule against copying a work as a whole if that is necessary for the fair use. *Chicago Bd. of Education, 354 F.3d at 629*, citing *Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 449-50, 78 L. Ed. 2d 574, 104 S. Ct. 774 (1984)* (consumer's copying of entire television show on tape to enable later private viewing is fair [*25] use). Such complete copying, however, tends to weigh against fair use. In this case, Funeral Depot copied the photographs as a whole. Its copying has gone well beyond, for example, the "handful of screen shots" used to illustrate a video game in comparative advertising of video game equipment, which was held to be fair use in *Sony Computer Entertainment America, Inc. v. Bleem, LLC, 214 F.3d 1022 (9th Cir. 2000)*. Funeral Depot argues that it was entitled to make such complete copies in order to provide valuable information to consumers. Funeral Depot's reliance on *Kelly v. Arriba Soft* and its approval of the use of low-resolution thumbnail images of copyrighted photographs cannot be extended to the high-resolution images defendant has copied from plaintiffs.

The fourth factor is the effect of the use upon the potential market for or value of the copyrighted work. This factor tends to weigh in favor of the fair use defense because there is no market for the copyrighted work itself. Plaintiffs simply give the photographs to their authorized dealers. There is no secondary or downstream market.

Funeral Depot's principal argument for fair use falls outside the non-exclusive [*26] list of statutory factors. The argument is that there has been a market failure in the retail market for caskets and that Funeral Depot's copying of plaintiffs' photographs serves the greater consumer good of helping consumers buy caskets more cheaply. Funeral Depot relies on the Seventh Circuit's

Case 3:05-cv-00145-TFM   Document 30-3   Filed 06/20/2006   Page 7 of 12

Page 7
2004 U.S. Dist. LEXIS 24336, *; Copy. L. Rep. (CCH) P28,901

decision in *Ty, Inc. v. Publications International, 292 F.3d 512 (7th Cir. 2002)*, in which the court held that a publisher was entitled to take and publish its own photographs of the plaintiff's "Beanie Baby" products for use in a catalog sold to collectors. Funeral Depot concludes from *Ty, Inc.* that an otherwise infringing use of a copyrighted work is fair use when it serves to promote competition in the marketplace. Def. Br. at 21.

The most obvious and basic difference between this case and *Ty, Inc.* is that the defendant in *Ty, Inc.* took its own photographs and published its own photographs. Plaintiffs in this case agree that Funeral Depot is entitled to take its own photographs of Batesville(R) caskets and to use them for its own advertising purposes. That process, however, would be expensive and time-consuming. Funeral Depot prefers to take the easier and [*27] cheaper approach of copying plaintiffs' own photographs. Nothing in *Ty, Inc.* suggests that the court would have been willing to allow the defendant simply to copy the plaintiffs' own photographs to prepare its own competing collectors' catalog.

Funeral Depot has called to the court's attention the long-known information about the ability of funeral homes and casket manufacturers to extract premium prices from consumers shopping for caskets and funeral sources at times of grief, emotional distress, and great urgency. In economic terms, grieving families visiting funeral homes to shop for caskets and related services face high "search costs." See Harrington Affidavit, *passim*, discussed below in Part X. Assuming those points as facts for purposes of summary judgment, however, does nothing for the copyright issues in this case. Antitrust laws and other consumer protection laws regulate the funeral industry. Those laws enable Funeral Depot to function as it does by offering caskets at lower retail prices, presumably to the annoyance of plaintiffs and other casket manufacturers, and especially to the annoyance of other casket dealers and funeral homes. Funeral Depot is free to buy [*28] and sell caskets and to advertise its services, using its own and licensed advertising materials. It is not entitled to copy plaintiffs' copyrighted materials wholesale merely to save itself the trouble of preparing its own advertising materials, even if consumers might benefit from its activities. They would benefit equally if Funeral Depot avoided copying and simply created its own advertising materials.

Funeral Depot also suggests that its use of plaintiffs' photographs is actually helpful to plaintiffs -- by promoting more sales of Batesville(R) caskets. Funeral Depot buys caskets from authorized Batesville(R) dealers. Even if the retail price is lower than in funeral homes, there is no indication that the prices paid to Batesville Casket are any lower. Whether the argument is persuasive or not, it's an argument better suited to negotiations between the business managers than to a court required to apply the law. To the extent that plaintiffs have valid copyrights, they are entitled to enforce those rights even if they do not correctly perceive their own best economic interests.

"Fair use is a mixed question of law and fact." *Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 560, 85 L. Ed. 2d 588, 105 S. Ct. 2218 (1985)*. [*29] It may be resolved on summary judgment if and only if a reasonable trier of fact could reach only one conclusion. *Ty, Inc. v. Publications Intern. Ltd., 292 F.3d at 516*. Based on the parties' briefs and evidentiary submissions, the court finds no genuine issue of fact material to the fair use defense. The facts about Funeral Depot's use of the plaintiffs' photographs in their entirety for purposes of defendant's own marketing efforts are undisputed. The sum of the statutory factors shows that Funeral Depot is copying plaintiffs' entire images for its own commercial purposes, not for comparative purposes but essentially to save itself the trouble of doing its own work to prepare advertising materials for the caskets it sells to the public. That is not fair use, and the court is not aware of any case treating such bald copying for such purposes as fair use.

Under Funeral Depot's theory, any copyrighted advertising material would be available for other competitors to use. For example, a used car dealership selling used Fords would be entitled to copy Ford's original advertising materials to save itself the trouble of taking its own photographs and doing its own layout [*30] work. The result would effectively nullify copyright protection for advertising materials. Because the relevant facts are undisputed, the court can and in this case should resolve the issue as a matter of law. See *Chicago Bd. of Educ. v. Substance, Inc., 354 F.3d 624, 629 (7th Cir. 2003)* (affirming summary judgment for plaintiff and rejecting fair use defense); *Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc., 150 F.3d 132, 146 (2d Cir. 1998)* (affirming summary judgment rejecting fair use defense where all four statutory factors weighed against it); *Los Angeles News Service v. Reuters Television Intern., Ltd., 149 F.3d 987, 994-95 (9th Cir. 1998)* (affirming summary judgment for plaintiff by rejecting fair use defense where one of four statutory factors favored defense); *Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829, 844-45 (11th Cir. 1990)* (affirming summary judgment for plaintiff by rejecting fair use defense where none of four statutory factors favored defense). The court grants plaintiffs' motion for summary judgment on the fair use defense.

VI. *Linking*

Funeral Depot [*31] raises another issue in defense of its current arrangements, under which the Funeral Depot website provides links to the casket web pages on

Case 3:05-cv-00145-TFM    Document 30-3    Filed 06/20/2006    Page 8 of 12

Page 8
2004 U.S. Dist. LEXIS 24336, *; Copy. L. Rep. (CCH) P28,901

the Veterans Society's website. Funeral Depot argues that such links can never amount to a copyright violation. In support of this view, Funeral Depot cites *Ticketmaster Corp. v. Tickets.com, Inc., 2000 U.S. Dist. LEXIS 4553, 2000 WL 525390, *2 (C.D. Cal. 2000)*, and *Bernstein v. J.C. Penney, Inc., 1998 U.S. Dist. LEXIS 19048, 1998 WL 906644 (C.D. Cal. 1998)*. The court finds that this argument and these authorities do not resolve this issue as a matter of law.

In *Ticketmaster*, one on-line broker of tickets for sporting and entertainment events sued another similar broker. The plaintiff alleged that the defendant gathered information from plaintiff's website about events for which plaintiff had exclusive rights to sell tickets. Then, when a prospective buyer visited the defendant's website and found information about such an event, the defendant included a link from its website to an "interior" page of the plaintiff's website where the customer could quickly (*i.e.*, bypassing lots of advertising) buy the desired tickets from plaintiff. In the course of denying [*32] a motion to dismiss the copyright infringement claim because the plaintiff alleged actual copying, the court observed:

> By a similar analogy, the hyperlink to the interior web page (whatever it may do for the unfair competition or interference claims) does not allege copying.
>
> Further, hyperlinking does not itself involve a violation of the Copyright Act (whatever it may do for other claims) since no copying is involved. The customer is automatically transferred to the particular genuine web page of the original author. There is no deception in what is happening. This is analogous to using a library's card index to get reference to particular items, albeit faster and more efficiently.

*Ticketmaster Corp. v. Tickets.Com, Inc., 2000 U.S. Dist. LEXIS 4553, 2000 WL 525390, *2.*

Similarly, in *Bernstein*, the plaintiff was a photographer who alleged that a foreign website contained infringing copies of two of his photographs of actress Elizabeth Taylor. He sued a perfume company who used Taylor as a spokeswoman and whose website contained a hyperlink to a website with information about her films, which in turn linked to the foreign website with the allegedly infringing copies of plaintiff's [*33] photographs of Taylor. The district court granted a motion to dismiss the copyright claim against the perfume manufacturer, for the claim was based on the ability of internet users to follow links that eventually might take them to an infringing photograph posted by someone else in another country.

*Ticketmaster* and *Bernstein* show that it may be difficult to prove copyright infringement or contributory infringement from the use of hyperlinks. Indeed, hyperlinks are essential to the operation of the internet for a host of legitimate purposes. The host of a website who establishes a link to another site that may be interesting to the host's website visitors does not undertake any general duty to police whether the linked sites contain any material infringing the copyrights of others. *Ticketmaster* and *Bernstein* do not, however, by their own terms come close to embracing the sweeping *per se* rule that Funeral Depot advocates on summary judgment.

Also instructive here is *Intellectual Reserve, Inc. v. Utah Lighthouse Ministry, Inc., 75 F. Supp. 2d 1290 (D. Utah 1999)*. There the defendants had been posting the plaintiff's copyrighted materials on their [*34] own website. After the defendants were ordered to remove them, they placed a notice on their website that the materials were online, gave addresses of websites containing the materials they had been ordered to remove, and posted e-mails on their website that encouraged browsing those websites. *75 F. Supp. 2d at 1292*. The district court found that this evidence showed that plaintiff was likely to prevail on the merits of a claim of contributory copyright infringement. The court went on to order defendants to stop encouraging internet users to visit the infringing websites.

The *Intellectual Reserve* decision shows that in extreme cases, even encouraging browsing of infringing websites can violate the copyright laws. From that conclusion, it is easy to allow room for liability for defendants who deliberately encourage use of infringing websites by establishing links to those sites. This is not a case where Funeral Depot merely found some useful material elsewhere on the internet and encouraged its shoppers to link to those sites. Instead, Funeral Depot actively secured control of the contents of the Veterans Society website and modified the website to use it for its own [*35] purposes. Viewed in the light reasonably most favorable to plaintiffs, the evidence shows Funeral Depot's extensive involvement in the display of plaintiffs' photographs. n3

> n3 For purposes of deciding this issue on defendant's motion for summary judgment, the court must assume that the Veterans Society's use of plaintiffs' photographs is not authorized by plaintiffs.

Case 3:05-cv-00145-TFM   Document 30-3   Filed 06/20/2006   Page 9 of 12

Page 9

2004 U.S. Dist. LEXIS 24336, *; Copy. L. Rep. (CCH) P28,901

The so-called "casket gallery" on the Veterans Society website did not exist until Funeral Depot created those pages. Funeral Depot designed the allegedly infringing web pages. It paid for those web pages. And it still controls those infringing web pages and changes to them. The casket web pages display Funeral Depot's phone number rather than Veterans Society's number. Funeral Depot's control over the casket web pages is so complete that the owner of the Veterans Society was not aware of any changes to the casket portion of the website. These facts are unusual enough to take this case out of the general principle that linking does not amount to [*36] copying. These facts indicate a sufficient involvement by Funeral Depot that could allow a reasonable jury to hold Funeral Depot liable for copyright infringement or contributory infringement, if infringement it is. The possibility of copyright infringement liability on these unusual facts showing such extensive involvement in the allegedly infringing display should not pose any broad threat to the use of hyperlinks on the internet.

VII. *Copyright Misuse*

Copyright law recognizes an equitable defense for copyright misuse, which can bar enforcement of an otherwise valid copyright against otherwise unlawful copying. The defense "prevents copyright holders from leveraging their limited monopoly to allow them control of areas outside the monopoly." *Assessment Technologies of WI, LLC v. WIREdata, Inc., 350 F.3d 640, 647 (7th Cir. 2003)*, quoting *A & M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1026-27 (9th Cir. 2001)*.

In a variation on its principal theme, Funeral Depot argues that plaintiffs are misusing their copyrights because they are using them to try to control the resale market for their Batesville(R) caskets. Funeral Depot contends [*37] that plaintiffs have no genuine interest in protecting copyrights in the photographs of their caskets, which they distribute for free to authorized dealers. The result of copyright enforcement, says Funeral Depot, would be to "prop up the funeral home monopoly in the sale of caskets." Def. Br. at 26.

Notwithstanding this rhetoric, the undisputed evidence shows that plaintiffs are entitled to summary judgment on the defense of copyright misuse. The differences between this case and the leading case on the misuse defense, *Lasercomb America, Inc. v. Reynolds, 911 F.2d 970 (4th Cir. 1990)*, show as much. In *Lasercomb*, the holder of a copyright to software offered licenses for the software, but only on the condition that the licensee agree for 99 years not to develop and sell any competing -- but non-infringing -- software. The Fourth Circuit reversed a district court decision rejecting the misuse defense and held that misuse had been established as a matter of law. *Id. at 979*. The Fourth Circuit explained that the test was not whether the non-competition terms of the leases violated federal antitrust laws, "but whether the copyright is being used [*38] in a manner violative of the public policy embodied in the grant of a copyright." *Id. at 978*. The court recognized that a copyright of course entitles the holder to prohibit copying. The misuse arose from the plaintiff's attempt to use its copyright on a particular expression of an idea "to control competition in an area outside the copyright, *i.e.*, the idea of computer-assisted die manufacture, regardless of whether such conduct amounts to an antitrust violation." *911 F.2d at 979*.

This case is entirely different. The public policy embodied in copyright law does not allow the owner to prohibit others from offering their own expressions of an unprotected idea or subject matter. Yet that public policy certainly allows the copyright holder to prohibit copying of his own expression. See *A&M Records, Inc. v. Napster, Inc., 239 F.3d at 1027* (affirming rejection of copyright misuse defense in case alleging that on-line file-sharing violated copyrights in songs: "There is no evidence here that plaintiffs seek to control areas outside of their grant of monopoly. Rather, plaintiffs seek to control reproduction and distribution of their copyrighted [*39] works, exclusive rights of copyright holders."). Plaintiffs in this case are making no attempt to prohibit Funeral Depot from taking its own photographs of Batesville(R) caskets. Nor are plaintiffs seeking to prohibit Funeral Depot from using its own photographs to market those caskets in the downstream market. Assuming that plaintiffs' copyrights are otherwise valid and enforceable, plaintiffs are entitled to prohibit copying of their copyrighted materials, just as Funeral Depot is entitled to hire its own photographer to take its own photographs for use in its own advertising. Funeral Depot has come forward with no evidence from which a reasonable trier of fact could find copyright misuse. Plaintiffs are entitled to summary judgment on this defense.

VIII. *Defective Registration and Fraud on the Copyright Office*

Funeral Depot has pled as a defense that plaintiffs' copyrights are invalid as a result of alleged fraud on the copyright office. The issue is closely related to the issue of proper registration posed by Funeral Depot's jurisdictional motion. Both sides have moved for summary judgment on the defense. Funeral Depot contends that plaintiffs have admitted that when [*40] they finally got around to registering the 118 lithographs, the deposit copies were not the same as the originals. In its initial briefs on the subject, Funeral Depot also contended that plaintiffs failed to inform the Copyright Office that there

Case 3:05-cv-00145-TFM   Document 30-3   Filed 06/20/2006   Page 10 of 12

Page 10

2004 U.S. Dist. LEXIS 24336, *; Copy. L. Rep. (CCH) P28,901

were at least some differences between the originals and the deposit copies. Plaintiffs came forward with their Exhibit D, a letter to the Copyright Office informing it that there were some minor differences. Thus, Funeral Depot argued in its reply brief for a *per se* rule that any discrepancies between the originals and the deposit copies invalidate the registrations.

The issue here stems from the fact that plaintiffs had been distributing the lithographs in question since the 1970s without putting copyright notices on them. When concerns arose about Funeral Depot's activities on the internet, plaintiffs in July 2001 secured from the photographer who took the photographs an assignment of any copyrights in the photographs. On September 24, 2002, plaintiffs submitted applications to register approximately 301 "casket lithographs" for copyright protection. Each lithograph contained both a photograph and text. Plaintiffs informed the Copyright [*41] Office that in many instances the year in the copyright notice was not the same as the year the work was first published, and that the enclosed deposits were "identical, or virtually identical, to the prints that were first published." Pl. Ex. D.

Because plaintiffs gave that notice to the Copyright Office, and because the registrations were issued, Funeral Depot appears in its reply brief to have abandoned any argument that plaintiffs deliberately misled the Copyright Office. In any event, to avoid summary judgment on the fraud defense, Funeral Depot would have to come forward with evidence that would allow a jury to find that plaintiffs intended to deceive the Copyright Office on some material matter and that the Copyright Office (or perhaps Funeral Depot) relied to its detriment on the intentional deception. See, *e.g., Data General Corp. v. Grumman Systems Support Corp.,* 36 F.3d 1147, 1161 & n.24 (1st Cir. 1994) (collecting cases). Especially in light of Plaintiffs' Exhibit D, there is no such evidence.

Funeral Depot argues in its reply brief for a *per se* rule: if the deposit copies are not perfect copies of the original, then the registration is invalid. The [*42] parties have not directed the court to Seventh Circuit decisions on the issue. Funeral Depot finds support for its *per se* proposal in *Geoscan, Inc. v. Geotrace Technologies, Inc.,* 226 F.3d 387, 393 (5th Cir. 2000). The case involved software used to interpret seismic patterns in exploring for oil and natural gas. The plaintiff had registered the software by submitting a deposit of the first ten lines and the last ten lines of the source code for each program. n4 The problem, however, was that the plaintiff had submitted not the original source code but later versions of the source code. 226 F.3d at 393. The Fifth Circuit concluded: "the deposit was not a complete copy of the original source code, thus [plaintiff] had not fulfilled all the statutory formalities necessary to register its copyright and have ownership' in its software for the purposes of a copyright infringement claim." *Id.* The Fifth Circuit appears to have adopted the view that if there is any difference at all between the original and the deposit copies, then the registration is invalid and the copyright may not be enforced. The Fifth Circuit did not cite any direct support for [*43] that view.

> n4 Regulations have included special provisions that do not always require that complete copies of computer programs be submitted with the copyright registration. See *37 C.F.R. § 202.20(c)(2)(vii).*

The closest support it cited was *Kodadek v. MTV Networks, Inc.,* 152 F.3d, 1209, 1210 (9th Cir. 1998), which was one example of some colorful and unsavory cases in which plaintiffs have claimed that they were the originators of highly successful Hollywood figures, though they alas no longer had any originals that predated the successful films or other productions. In *Kodadek,* the plaintiff claimed to have originated the characters "Beavis and Butthead" two years before they appeared on television. Other examples include *Seiler v. Lucasfilm, Ltd.,* 808 F.2d 1316 (9th Cir. 1986), in which the plaintiff claimed to have created the "Imperial Walkers" of the movie *The Empire Strikes Back* three or four years before the movie was released. In both cases, the plaintiffs claimed they unfortunately [*44] no longer had their original drawings. Instead, plaintiffs claimed, after the successful release of the film or television show, they had "reconstructed" their original drawings and had submitted them to the Copyright Office for registration. The Ninth Circuit affirmed summary judgment for the defendants in both cases, finding that recognizing such belated reconstructions would be an open invitation to fraud. In both cases, the Ninth Circuit indicated that the deposit copies could not be reconstructions of the originals but needed to be copies that were "virtually identical" to the originals. *Kodadek,* 152 F.3d at 1212; *Seiler,* 808 F.2d at 1322.

For present purposes, the important point is that the Ninth Circuit cases did not say "identical," but "virtually identical," which allows for a little flexibility. In *Kodadek,* the Ninth Circuit explained that the copy requirement means "that any copy' deposited as part of an application for a certificate of copyright registration must be virtually identical to the original and must have been produced by directly referring to the original." *152 F.3d at 1212.*

To return to *Geoscan,* the [*45] Fifth Circuit seems to have taken this line of reasoning even further, to the

Case 3:05-cv-00145-TFM   Document 30-3   Filed 06/20/2006   Page 11 of 12

Page 11

2004 U.S. Dist. LEXIS 24336, *; Copy. L. Rep. (CCH) P28,901

point that any difference between the original and the deposit copy must invalidate the registration. As shown above, however, the Fifth Circuit did not offer support for that extension of *Kodadek*.

In contrast, the First Circuit has taken a more flexible approach to differences between deposit copies and originals. In *Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1163 (1st Cir. 1994), the First Circuit affirmed a plaintiff's verdict for copyright infringement. The court held that the district judge had properly instructed the jury that immaterial, inadvertent errors in the deposit copies "do not impeach the validity and effect of the registration." The First Circuit reached that conclusion after reviewing the well-established law to the effect that such errors in the application for registration do not invalidate it. The court saw no reason to treat errors in deposit copies any differently. The court observed: "We conclude that there is no support in law or reason for a rule that penalizes immaterial, inadvertent errors in a copyright deposit." *Id.*

Similarly, [*46] in *Dynamic Solutions, Inc. v. Planning & Control, Inc.*, 646 F. Supp. 1329, 1341 (S.D.N.Y. 1986), the copyright owner had deposited revised versions of its software and was unable to specify the differences between the original and the revised versions. The district court found that, in the absence of intent to deceive the Copyright Office and without evidence that the differences were material, the unidentified differences did not invalidate the copyright registration. The court therefore granted a preliminary injunction against the defendant's infringement of the copyright on the software.

This court finds that the approach in *Kodadek, Seiler, Data General*, and *Dynamic Solutions* is more persuasive than the *Geoscan* rule, which would not tolerate any discrepancies, regardless of intent or materiality. The more recent copies of lithographs that plaintiffs submitted as deposit copies in this case cannot be compared to the highly suspicious "reconstructions" from *Kodadek* and *Seiler*. The originals and the later copies are documents that plaintiffs have been using in the ordinary course of their business for years. Viewed in the light reasonably most [*47] favorable to plaintiffs, a reasonable trier of fact could find that any differences between the originals and the deposit copies were immaterial and that neither the Copyright Office nor Funeral Depot relied upon them. Accordingly, Funeral Depot's motion for summary judgment on this issue is denied.

Even when the evidence in this record is viewed in the light reasonably most favorable to Funeral Depot, a reasonable jury could not find intent to deceive the Copyright Office, materiality, or reliance by either the Copyright Office or defendant, yet a jury would need to be able to find all three to find in favor of Funeral Depot. The undisputed evidence shows that plaintiffs alerted the Copyright Office to the existence of minor differences between the originals and the deposit copies, and the Copyright Office issued the registrations. Accordingly, plaintiffs are entitled to summary judgment on the defense of fraud on the Copyright Office and improper registration.

IX. *Antitrust Defense*

Funeral Depot has pled as a defense that plaintiffs, by bringing this suit to attempt to enforce their claimed copyrights, have violated the federal Sherman Act, *15 U.S.C. § 1 et seq.* [*48] Plaintiffs have moved for summary judgment on that defense, arguing that their pursuit of this litigation is protected by the *Noerr-Pennington* doctrine of antitrust law, which protects even anti-competitive efforts to petition the government, including the courts. The *Noerr-Pennington* doctrine protects plaintiffs' pursuit of this copyright litigation as long as the lawsuit is not "objectively baseless," which would require Funeral Depot to prove (1) that "no reasonable litigant could realistically expect success on the merits," and (2) that the plaintiff intended to use the process of the litigation, as opposed to its outcome, as an anticompetitive weapon. *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60-61, 123 L. Ed. 2d 611, 113 S. Ct. 1920 (1993) (affirming summary judgment by rejecting antitrust claim based on copyright suit that was supported by "probable cause"). Funeral Depot has not tried to support its antitrust defense, and the court therefore grants plaintiffs' motion for summary judgment as to the antitrust defense.

X. *Motion to Strike Dr. Harrington's Report*

In support of its own motion for summary judgment and [*49] in opposition to plaintiffs' motion, Funeral Depot has offered an affidavit from David E. Harrington on the issue of fair use. Dr. Harrington is an economist who has studied the funeral services industry extensively. He has opined that consumers benefit substantially from internet sites that allow them to shop for caskets and other funeral products and services. He is an advocate for greater competition in those markets. More specific to this case, and contrary to plaintiffs' argument, he has opined that Funeral Depot's use of and links to plaintiffs' photographs of caskets on internet sites is helpful to consumers. Harrington Aff. PP 11, 14, 15, & 24. Pursuant to *Rule 702 of the Federal Rules of Evidence*, plaintiffs have moved to strike Dr. Harrington's affidavit because it is not reliable and would not be helpful to a trier of fact.

Dr. Harrington's report offers a detailed account of how consumers can benefit from the competition that

Case 3:05-cv-00145-TFM   Document 30-3   Filed 06/20/2006   Page 12 of 12

Page 12

2004 U.S. Dist. LEXIS 24336, *; Copy. L. Rep. (CCH) P28,901

Funeral Depot provides. In essence, making information available on the internet dramatically lowers the search costs for consumers, who might otherwise have to make multiple visits to funeral homes to learn about the market choices available to them. [*50] Dr. Harrington offers very little, however, by way of support for his defense for Funeral Depot's decisions first to copy plaintiffs' photographs and then to use links to the Veterans Society website, which Funeral Depot arguably controls. In Paragraph 14, Dr. Harrington refers to "a smattering of evidence" that some consumers are visiting funeral homes armed with better information, though he does not explain why a consumer needs access to copyrighted photographs to obtain that benefit. In Paragraph 15, Dr. Harrington offers only speculation and a heroic leap to his conclusion about the value of copyright infringement:

> 15. Over the last five years, funeral homes *have almost surely* experienced an increase in the number of consumers coming in armed with pictures and prices of caskets they found on the Internet. Many of these pictures *would have come* from Funeral Depot's website, which has received more than four hundred thousand hits from visitors, a number which reflects the much lower cost of visiting websites than funeral homes. The benefits to funeral consumers of information gleaned from the Internet will be greater if -- in [Wisconsin funeral director] Mark Krause's [*51] words -- the products and prices are for comparable products. *In other words*, consumers [] benefit if Internet firms like Funeral Depot are allowed to display pictures of Batesville caskets on their websites or via links to authorized Batesville dealers who are part of their network.

Emphasis added. The last sentence deserves close attention. Dr. Harrington does not opine that the benefit to consumers depends in any way on the use of photographs that infringe plaintiffs' copyrights. He does not offer any support for the conclusion that consumers are better off if Funeral Depot is allowed simply to copy plaintiffs' copyrighted photographs for posting on its own website, as compared to the non-infringing alternative of having Funeral Depot take and publish its own photographs. With respect to links to authorized Batesville dealers, Dr. Harrington does not address the principal issue here related to linking, which is whether Funeral Depot is entitled in effect to obtain control over an authorized dealer's website. n5

> n5 If Funeral Depot were creating links to *independent* dealer websites that display plaintiffs' copyrighted photographs of caskets, the case might be closer to the *Ticketmaster* case discussed above, *2000 U.S. Dist. LEXIS 4553, 2000 WL 525390*. Instead, however, it is offering links to the Veterans Society website with pages that Funeral Depot designed, with prices that Funeral Depot selected, and with Funeral Depot's telephone number.

[*52]

For these reasons, the court concludes that Dr. Harrington's affidavit does not present a genuine issue of fact as to Funeral Depot's fair use defense. There is no doubt, however, that Dr. Harrington's report provides useful and reliable background information, and the court declines to strike the report from the record. Plaintiffs' motion to strike is denied.

*Conclusion*

For the reasons stated above, defendant's motion to dismiss is hereby denied, and defendant's motion for summary judgment is also denied. Plaintiffs' motion to strike is hereby denied. Plaintiffs' motion for summary judgment is granted on the fair use, misuse of copyright, fraud and improper registration, and antitrust defenses, but is denied in all other respects.

So ordered.

Date: November 10, 2004

DAVID F. HAMILTON, JUDGE

United States District Court Southern District of Indiana