49 of 74 DOCUMENTS

**LOUIS PSIHOYOS, an individual, and LARRY FUENTE, an individual, Plaintiffs, -v.- NATIONAL EXAMINER, Defendant.**

97 Civ. 7624 (JSM)

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*1998 U.S. Dist. LEXIS 9192; 49 U.S.P.Q.2D (BNA) 1766; Copy. L. Rep. (CCH) P27,801*

June 22, 1998, Decided
June 22, 1998, Filed

**DISPOSITION:** [*1] Defendant's motion for summary judgment granted in part and denied in part.

**COUNSEL:** For plaintiffs: Stephen A. Weingrad, Weingrad & Weingrad, LLP, New York, NY.

For defendant: Raymond L. Sweigart, Amy D. Hogue, Pillsbury Madison & Sutro LLP, New York, NY.

**JUDGES:** JOHN S. MARTIN, JR., U.S.D.J.

**OPINIONBY:** JOHN S. MARTIN

**OPINION:**

### MEMORANDUM OPINION AND ORDER

JOHN S. MARTIN, Jr., District Judge:

This case arises from the use by defendant National Examiner (the "Examiner") of a copyrighted photograph taken by plaintiff Louis Psihoyos portraying plaintiff Larry Fuente in front of his art car. Currently before this Court is defendant's motion to dismiss the complaint pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure* or in the alternative a motion for summary judgment pursuant to Rule 56. Because the parties have submitted affidavits and other exhibits, the Court treats defendant's motion as one for summary judgment. See *Fed. R. Civ. P. 12(b)*; see also *Groden v. Random House, Inc., 61 F.3d 1045, 1052-53 (2d Cir. 1995)*. For the reasons set forth below, the motion is granted in part and denied in part.

### FACTS

Psihoyos is a professional photographer who took the photo [*2] at issue in this case, depicting Fuente in front of his decorative Cadillac. Many vintage Cadillacs, including Fuente's, already have two fins that rise into the air from either side of the trunk above the tail-lights. Fuente has extended these fins by several feet with a dazzling edifice of beads and rhinestones that look like flames rising into the air. The curly flames are really a mosaic of flamingoes, geese, ducks, and horses arranged one atop the other. The beads and rhinestones of many colors, including pink, gold, silver, and aqua, decorate these fins and the rest of the car.

The Examiner publishes a widely circulated news magazine called "the National Examiner." The Examiner claims that it obtained a slide of the Psihoyos' photo from the Ineri Foundation ("Ineri"), publisher and owner of the copyright in a book entitled "Art Cars: Revolutionary Movement." The Examiner contends that it thought that Ineri was authorized to reproduce the slide. The Examiner returned the slide to Ineri on July 23, 1997.

The Examiner reproduced the Psihoyos' photograph in its July 22, 1997 issue. It is undisputed that the Examiner did not obtain a permission from either Psihoyos or Fuente. The [*3] photograph appears on the centerfold page along with four other photographs of art cars as a part of a pictorial article entitled "CAR-AZY: Take a ride on the wild side in kookie vehicles." The title is followed by the following text:

> AMERICANS wheely love their cars, and some folks have even turned them into wacky works of movable art! They've let their imaginations run wild and used anything and everything to decorate their car-azy hot rods. So, next time you hit the road, see if you spot one of these awesome autos.

**EXHIBIT 21(D)**

Dockets.Justia.com

Case 3:05-cv-00145-TFM   Document 30-6   Filed 06/20/2006   Page 2 of 12

Page 2

1998 U.S. Dist. LEXIS 9192, *; 49 U.S.P.Q.2D (BNA) 1766;
Copy. L. Rep. (CCH) P27,801

As to the Fuente's car, the article states: "Larry Fuente's fintastic Mad Cad is inlaid with beads, rhinestones, shoe soles and toy soldiers -- and highlighted with fabulous flamingo-adorned tail fins." Each of the other three photos is also accompanied by a short text describing an art car and its owner.

In July, 1997, Psihoyos registered his photo with the United States Copyright Office. Plaintiffs filed suit in this Court on October 15, 1997.

The Examiner now moves for summary judgment on all five counts of plaintiffs' complaint. In the memorandum of law filed in opposition to defendant's motion, plaintiffs have voluntarily withdrawn the second, third [*4] and fifth counts for unfair competition, misappropriation, and trademark dilution, respectively. The only remaining claims are Psihoyos' claim of copyright infringement and Fuente's claim for invasion of privacy.

**DISCUSSION**

**1. Copyright Infringement: Fair Use**

To establish a claim of copyright infringement, plaintiffs must show both (1) ownership of a valid copyright and (2) unauthorized copying. See *Twin Peaks Prod., Inc. v. Publications Int'l. Ltd., 996 F.2d 1366, 1372 (2d Cir. 1993)*. In this case, the Examiner does not contest the validity of Psihoyos' copyright in the photo at issue. Nor does it contest the Psihoyos' claim that it copied his photo without his permission. However, the Examiner contends that its use is privileged under the fair use provision of the Copyright Act.

Fair use has been defined as "a privilege in others than the owner of the copyright to use the copyrighted material in a reasonable manner without his consent." *Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 549, 105 S. Ct. 2218, 2224, 85 L. Ed. 2d 588 (1985)* (quotation omitted). Congress identified four factors, which are not intended to be exhaustive, to be [*5] used in evaluating a defense of fair use. These factors are: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect on the potential market for or value of the copyrighted work. *17 U.S.C. § 107*.

The examination of the above factors demonstrates that the Examiner's use does not constitute a fair use.

**1.1 The Purpose or Character of the Use**

"The central purpose of this investigation is to see . . . whether the new work merely 'supercede[s] the objects' of the original creation . . . or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Ringgold v. Black Entertainment Television, Inc., 126 F.3d 70, 79 (2d Cir. 1997)* (quotations and citations omitted). "Although such transformative use is not absolutely necessary for a finding of fair use . . ., the goal of copyright, to promote science and the arts, is generally furthered by the creation of transformative works." *Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 579, 114 S. Ct. 1164, 1171, 127 L.* [*6] *Ed. 2d 500 (1994)* (citation omitted). "Such [transformative] works thus lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright . . ., and the more transformative the new work, the less will be the significance of other factors like commercialism, that may weigh against a finding of fair use. Id. (citation omitted); see also 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright § 13.09*[A][1][b] (concluding that transformative use is not of a crucial importance to the fair use analysis).

The Examiner contends this factor weighs in favor of finding fair use because its use of Psihoyos' photo is transformative. Specifically, the Examiner states that as "a news magazine with wide distribution," it used the picture for news reporting or commenting purpose. The Court disagrees.

The Examiner's use is not transformative, because its piece uses the photo to show what it depicts. It is clear from examining the Examiner's article that its purpose was not to comment on the Psihoyos' photo but to use it "for precisely a central purpose for which it was created"--to show how an art car looks. Thus, the Examiner's use is [*7] not transformative. See *Ringgold, 126 F.3d at 79*.

The fact that the Examiner used the photo for a commercial rather than a nonprofit educational purpose also weighs against a finding of fair use. *Campbell, 510 U.S. at 583-84, 114 S. Ct. at 1174*. The Supreme Court has stated that "the crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of copyrighted material without paying the customary price." *Harper & Row, 471 U.S. at 562, 105 S. Ct. at 2231*. Here, the commercial nature of the Examiner's use is undisputed. The Examiner has commercially exploited the Psihoyos' photo to create news--a centerfold consisting of "car-azy hot rods." See *id. at 561, 105 S. Ct. at 2231*. Specifically, the Psihoyos' photo was placed prominently in the center of the centerfold page to attract readers' attentions to what it depicts. The mere fact the photo depicts a newsworthy item does not justify commercial exploitation of it. See *Twin Peaks, 996 F.2d at 1374; Harper & Row, 471 U.S. at 561, 105 S. Ct. at 2231*. Moreover, even if this Court were to accept the

Case 3:05-cv-00145-TFM   Document 30-6   Filed 06/20/2006   Page 3 of 12

Page 3

1998 U.S. Dist. LEXIS 9192, *; 49 U.S.P.Q.2D (BNA) 1766;
Copy. L. Rep. (CCH) P27,801

Examiner's contention [*8] that its purpose of copying is commentary or news reporting, its profit motivation would weigh heavily against the Examiner to negate the fairness of its use under this factor. See id.

Accordingly, the first factor weighs against a finding of fair use.

### 1.2 The Nature of the Copyrighted Work

The Supreme Court has stated that the more creative a work, the more protection it should be accorded from copying. *Campbell, 510 U.S. at 586, 114 S. Ct. at 1175.* The Examiner argues that the Psihoyos' photo is not creative because it merely documents Fuente in front of his car. Psihoyos states that his photo is not a mere casual snapshot, but rather a creative work. He contends that his creativity can be seen, for example, in a carefully selected location for the background.

This Court has found a photograph to be a creative work even when it was taken for an informational purpose and displayed little artistic quality. In *Strauss v. Hearst Corp., 1988 U.S. Dist. LEXIS 1427, 8 U.S.P.Q.2D (BNA) 1832 (S.D.N.Y. 1988),* the Court found that photographs of finishing equipments whose character and content were dictated in large part by the purchaser's desire to convey information were creative, [*9] because "plaintiff's efforts to create an aesthetically attractive, technically competent photograph were plainly creative expressions." *8 U.S.P.Q.2D (BNA) at 1836.* In *Mathieson v. Associated Press, 1992 U.S. Dist. LEXIS 9269, 23 U.S.P.Q.2D (BNA) 1685 (S.D.N.Y. 1992),* the Court concluded that a photo depicting a model wearing a bullet proof vest, where the vest is visible on the left side and covered by a shirt on the right, was creative, although it recognized that the photo "was created in a particular way to convey certain information as to the function of a garment which the brochure was created to advertise." *23 U.S.P.Q.2D (BNA) at 1689.* Thus, a photo does not have to rise to the level of fine art or abstraction to avoid being classified as a predominantly informational work. But see *Guccione v. Flynt, 1984 U.S. Dist. LEXIS 16144, *11-*12 (S.D.N.Y. 1984).* n1

n1 In this case, defendant Hustler Magazine used plaintiff's photo of Bob Guccione being embraced by a substantially nude woman in its article attacking Guccione's practice of posing fully clothed with nude models. Judge Sweet summarily disposed of the second factor by stating that "the single reproduced photograph represented neither a substantial creative effort by plaintiffs nor a substantial taking by defendants" *Guccione, 1984 U.S. Dist. LEXIS 16144,* at *11-*12 (citation omitted).

[*10]

Given the relatively low standard of creativity that the Court has required before finding a photograph to be creative, the Psihoyos' photo is creative. The Fuente's car is positioned so that the photo highlights its tail fins--the most impressive feature of the car. The background color of grayish white and light brown has an effect of bringing out the car and its decorations. Thus, the Psihoyos' photo should be accorded the kind of copyright protection given to creative works.

While it is undisputed that the photo at issue had not been published prior to the Examiner's issue, the scope of the fair use doctrine in this case should not be narrowed because of it. The scope of the fair use doctrine is considerably narrower with respect to unpublished works that are held confidential by their copyright owners. *Harper & Row, 471 U.S. at 554, 105 S. Ct. at 2227.* However, if the author does not seek confidentiality, fair use is not necessarily precluded as to an unpublished work. *Rotbart v. J.R. O'Dwyer Co., 1995 U.S. Dist. LEXIS 1315, 34 U.S.P.Q.2D (BNA) 1085, 1088 (S.D.N.Y. 1995).* Here, although Psihoyos himself has not published the photo at issue, it is undisputed that he has published [*11] another photo that was taken at the same time and that looks very similar to it. If one views the photo as a part of Psihoyos' work portraying Fuente and his car, it may be considered de facto published. See *Rotbart, 34 U.S.P.Q.2D (BNA) at 1088.* Moreover, prior to the Examiner's publication, the photo had already been distributed to Ineri, publisher of a book on art cars. Under these circumstances, it cannot be said that Psihoyos sought confidentiality regarding his photos of the Fuente's car. Accordingly, it appears improper to narrow the scope of the fair use doctrine simply because the photo at issue has not been published.

### 1.3 The Substantiality of the Portion Used

It is undisputed that the Examiner took the entire photograph. The issue is whether in so doing, the Examiner copied "more of the original . . . than necessary." *Rogers v. Koons, 960 F.2d 301, 311 (2d Cir. 1992).*

Courts have "recognized that the extent of permissible copying varies with the purpose and character of the use." *Campbell, 510 U.S. at 586-87, 114 S. Ct. at 1175.* "Sometimes wholesale copying may be permitted, while in other cases taking even a small percentage of the original work has been [*12] held unfair use." *Rogers, 960 F.2d at 311.* For example, when copying is done for the purpose of commenting or news reporting, courts have allowed a significant leeway with respect to the extent and nature of copying. See, e.g., *Mathieson v.*

Case 3:05-cv-00145-TFM    Document 30-6    Filed 06/20/2006    Page 4 of 12

Page 4

1998 U.S. Dist. LEXIS 9192, *; 49 U.S.P.Q.2D (BNA) 1766;
Copy. L. Rep. (CCH) P27,801

*Associated Press, 1992 U.S. Dist. LEXIS 9269, 23 U.S.P.Q.2D (BNA) 1685 (S.D.N.Y. 1992); Haberman v. Hustler Magazine, Inc., 626 F. Supp. 201, 212 (D. Mass. 1986).*

The Examiner's argument that its use is permissible because it had to take the entire photo in order to adequately comment on and inform its readers of the existence of art cars lacks merits. As stated earlier, the mere fact that the photo depicts a newsworthy item does not justify copying it entirely without permission. The case would be different if the Examiner's use were for the purpose of commenting on the Psihoyos' photography. But the article is about art cars not photography and the Examiner was simply using the Psihoyos' photo to save itself the expense of obtaining its own photo. Cf., *Twin Peaks, 996 F.2d at 1376-77*. Thus, the third factor weighs against the Examiner, which took almost all of the Psihoyos' photo including the essence of his work. See Rogers, 960 [*13] F.2d a 311.

### 1.4 The Effect on the Potential Market of the Original

The fourth factor looks at the effect of the use on the market value of the original. The Supreme Court in *Stewart v. Abend, 495 U.S. 207, 110 S. Ct. 1750, 109 L. Ed. 2d 184 (1990)*, stated that this factor "is the 'most important, and indeed, central fair use factor.'" *Id. at 238, 110 S. Ct. at 1769* (quotation omitted); see also *Harper & Row, 471 U.S. at 566, 105 S. Ct. at 2233*. This factor "requires courts to consider not only the extent of market harm caused by the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in substantially adverse impact on the potential market for the original.'" *Ringgold, 126 F.3d at 80-81* (citing *Campbell, 510 U.S. at 590, 114 S. Ct. at 1117* (quotation omitted)). In so doing, courts are to consider "only traditional, reasonable, or likely to be developed markets." *American Geophysical Union v. Texaco Inc., 60 F.3d 913, 930 (2d Cir. 1994)*.

Psihoyos states that the Examiner's piece adversely impacted the potential market for his work because he did not earn licensing fees from [*14] the Examiner and because the Examiner's piece can be used as a poster, reducing demands for the original. The Court agrees.

Although Psihoyos has not specifically shown a decline in the number of licensing requests for his work since the Examiner's article was published, he is not required to do so. *Ringgold, 126 F.3d at 81*. In fact, it is reasonable to conclude that "unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in the substantially adverse impact on the potential market for [licensing of] the original. *Campbell, 510 U.S. at 590, 114 S. Ct. at 1177* (internal quotation omitted); see also *Ringgold, 126 F.3d at 81*. Even if the Court were to accept the Examiner's contention that its piece would serve to increase the demand for the photo, this would not preclude Psihoyos' entitlement to a licensing fee. *Ringgold, 126 F.3d at 81 n.16*.

Moreover, the Examiner's piece can serve as a substitute for the original. As in *Update Art, Inc. v. Maariv Israel Newspaper, Inc., 635 F. Supp. 228 (S.D.N.Y. 1986)*, where the Court found that a full-page newspaper copy of the picture was in direct competition with the original as posters, [*15] the Examiner's centerfold page that displays the Psihoyos' photo can be used as a poster. See *id. at 232*. The Examiner argues that this case is distinguishable from Update Art, because the Psihoyos' photo is altered by the inclusion of four other art cars and the Examiner's commentary. However, this argument ignores the fact that the Examiner's piece is dominated by the Psihoyos' photo--not only the photo appears prominently in the center of the centerfold page but is by far the largest among the five art car photos. Thus, it is reasonable to conclude that the Examiner's piece can compete directly with the original as a poster.

Accordingly, the fourth factor weighs against finding a fair use.

### 1.5 Summary

After weighing the four fair use factors, the Court concludes that the use the Examiner has made of Psihoyos' photograph does not constitute a fair use. Thus, the motion for summary judgment with respect to the copyright infringement claim is denied.

## 2 The New York Civil Rights Law

The right to privacy in New York is derived solely from sections 50 and 51 of the New York Civil Rights Law. There is no common law right of privacy in New York. *Arrington* [*16] *v. New York Times Co., 55 N.Y.2d 433, 440, 449 N.Y.S.2d 941, 943-44, 434 N.E.2d 1319 (1982)* (quotation and citations omitted).

Section 51 provides remedies for the commercialization of an individual's personality without his consent. *Stephano v. News Group Publications, Inc., 64 N.Y.2d 174, 183, 485 N.Y.S.2d 220, 224, 474 N.E.2d 580 (1984)*; see also *N.Y. Civ. Rights Law § 51*. "In order to establish a violation of section 51, a plaintiff must show that the defendant made use, within the state of New York, of plaintiff's name, portrait, or picture 'for advertising purposes or for the purposes of trade' without plaintiff's written consent." *Titan Sports, Inc. v. Comics World Corp., 870 F.2d 85, 87 (2d Cir. 1989)*; see also, *N.Y. Civ. Rights Law § 51*. The Examiner concedes that it published the photo depicting Fuente in front of his art car in New York without obtaining Fuente's consent. However,

Case 3:05-cv-00145-TFM    Document 30-6    Filed 06/20/2006    Page 5 of 12

Page 5

1998 U.S. Dist. LEXIS 9192, *; 49 U.S.P.Q.2D (BNA) 1766;
Copy. L. Rep. (CCH) P27,801

it contends that its use was not for the purposes of advertising or trade, but instead to report a matter of public interest.

"Although the statute does not define 'purposes of trade' or 'advertising,' [New York] courts have consistently refused to construe these terms as encompassing [*17] publications concerning newsworthy events or matters of public interest." *Finger v. Omni Publications Int'l, Ltd.*, 77 N.Y.2d 138, 141-42, 564 N.Y.S.2d 1014, 1016, 566 N.E.2d 141 (1990); see also *Arrington*, 55 N.Y.2d at 440, 449 N.Y.S.2d at 1322. Whether an unauthorized use of a person's image fits within the public interest exception is initially a question of law for the court. See *Titan Sports*, 870 F.2d at 88-89. However, if the court finds that a factual issue exists as to that exception's application, it must leave the issue for resolution by the finder of fact. Id.

New York courts have defined 'public interest' or 'newsworthy' in most liberal and far-reaching terms. *De Gregorio v. CBS, Inc.*, 123 Misc. 2d 491, 493 473 N.Y.S.2d 922, 924 (N.Y. Sup. Ct. 1984). As observed in De Gregorio, New York courts have deemed as a matter of public interest not only news in the sense of current events but also "all types of factual, educational and historical data, or even entertainment and amusement, concerning interesting phases of human activity in general." Id. Clearly, the Examiner's article on art cars concerns a matter of public interest as a matter of law. [*18] See, e.g., *id.* at 492-95, 473 N.Y.S.2d at 923-25; *Finger*, 77 N.Y.2d at 141-44, 564 N.Y.S.2d at 1016-17; *Arrington*, 55 N.Y.2d at 440-41, 449 N.Y.S.2d at 944.

"A picture illustrating an article on a matter of public interest is not considered used for the purpose of trade or advertising within the prohibition of statute . . . unless it has no real relationship to the article . . . or unless the article is an advertisement in disguise." *Murray v. New York Magazine Co.*, 27 N.Y.2d 406, 409, 318 N.Y.S.2d 474, 476, 267 N.E.2d 256 (1971). The parties do not dispute that the photo at issue bears a reasonable relationship to the presentation of the art car phenomenon. However, the parties dispute as to whether the use was "an advertisement in disguise."

The Examiner is entitled to use the photos of art cars even if the Court accepts Fuente's argument that it used the photos to encourage sales of its publication. See *Arrington*, 55 N.Y.2d at 440, 449 N.Y.S.2d at 944. The New York courts have stated that the use of photos in the context of the newsworthy communication cannot be proscribed based on the fact that a defendant may have included the photo to increase the circulation [*19] of its magazine and therefore its profits. See *Stephano*, 64 N.Y.2d at 184-85; 485 N.Y.S.2d at 225; see also *Murray*, 27 N.Y.2d at 409, 318 N.Y.S.2d at 276; *Finger*, 77 N.Y.2d at 142, 564 N.Y.S.2d at 1016; *Arrington*, 55 N.Y.2d at 440, 449 N.Y.S.2d at 944. "A contrary rule would unreasonably and unrealistically limit the [public interest] exception to nonprofit or purely altruistic organizations which are not the only, or even the primary, source of information concerning newsworthy events and matters of public interest." *Stephano*, 64 N.Y.2d at 185, 485 N.Y.S.2d at 225. As a result, New York courts have generally refused to apply section 51 to proscribe the use of photo in the context of the newsworthy communication in cases similar to this one. See, e.g., *Stephano*, 64 N.Y.2d at 184-86; 485 N.Y.S.2d at 225-26; *Arrington*, 55 N.Y.2d at 440, 449 N.Y.S.2d at 944.

This case is unlike Titan Sports, in which the Second Circuit held that an issue of fact existed as to whether oversized photos inserted in a defendant's magazine were used for the purposes of trade. In that case, the defendant, publisher of the magazine entitled "Wrestling All-Stars Poster Magazine [*20] and Wrestling All Stars Giant Pin-Ups," included oversized photos of professional wrestlers in its publication. *870 F.2d at 86*. These photos were folded and stapled into the center of each publication so that they may not be viewed in their entirety unless unstapled and removed. Id. The blurb "10 FULL COLOR WRESTLING POSTERS! HUGE SIZE!" or some variation of this theme, appeared on the cover of each publication. Id. The instant case differs from Titan Sports in several significant aspects. n2 First, there is no evidence that suggests that the Examiner tried to market photos of art cars to sell more magazines. The cover of the July 22 issue does not even mention its article on art cars. Second, unlike the photos in Titan Sports, the photo of art car is not printed on a poster-type oversized paper. While the centerfold page may be taken out and used as a poster, it is unlikely that it can serve as a separate product given its low quality. Third, in Titan Sports, the posters would be particularly appealing to magazine's intended readers--professional wrestling fans. The Examiner, on the other hand, does not limit its readers to art car fans. In fact, the July 22 issue, [*21] which is 44 pages long, devotes only two pages to the topic of art cars. Consequently, unlike Titan Sports, there is no genuine issue of fact as to whether the Examiner's use is for the purposes of trade.

n2 In Titan Sports, the Second Circuit specifies several factors that the fact-finder should consider in determining whether there has been a use for the purposes of trade. They include the nature of the item, the extent of its relationship to the traditional content of a magazine, the ease with which it may be detached from the magazine, whether it is suitable for use as a separate

Case 3:05-cv-00145-TFM   Document 30-6   Filed 06/20/2006   Page 6 of 12

Page 6

1998 U.S. Dist. LEXIS 9192, *; 49 U.S.P.Q.2D (BNA) 1766;
Copy. L. Rep. (CCH) P27,801

product once detached, and how the publisher markets the item. *Titan Sports, 870 F.2d at 89.*

Finally, the fact that Fuente has allegedly shunned publicity will not result in a determination of liability under section 51 where publication was a report on a subject of public interest. See, e.g., *Arrington, 55 N.Y.2d at 442, 449 N.Y.S.2d at 945* (stating the section 51 is not to be used to vindicate a personal predilection [*22] for greater privacy).

Accordingly, the Court finds that the Examiner's use of the Fuente's image fits within the public interest exception as a matter of law and grants defendant's motion for summary judgement on the invasion of privacy claim.

## CONCLUSION

Plaintiffs' application to withdraw the second, third, and fifth counts of their complaint is granted. Defendant's motion for summary judgment on the first count-- the copyright infringement claim--is denied. Defendant's motion for summary judgment on the fourth count--the invasion of privacy claim--is granted and thus the fourth count is dismissed.

**SO ORDERED.**

Dated: New York, New York

June 22, 1998

JOHN S. MARTIN, JR., U.S.D.J.

Case 3:05-cv-00145-TFM     Document 30-6     Filed 06/20/2006     Page 7 of 12

LEXSEE 1998 U.S. DIST. LEXIS 917

ZVI LIVNAT and GUY JACKSON, Plaintiffs, - against - SHAI BAR LAVI, AMLON PUBLISHING GROUP, INC. d/b/a NEW RAVE, TAKE OFF, INC., CUPID NETWORK TELEVISION, INC., SPICE TELEVISION NETWORK, INC., TAKE FOUR, INC., CAPITAL DISTRIBUTION, INC., and/or CAPITAL DISTRIBUTION, INC., d/b/a CUPID NETWORK TELEVISION, INC., and/or SPICE TELEVISION, INC., and/or TAKE FOUR, INC., and/or, TAKE OFF, INC., and/or any successor in interest to CAPITAL DISTRIBUTION, INC., and/or SPICE TELEVISION NETWORK, INC., and/or TAKE FOUR, INC., and/or TAKE OFF, INC., Defendants.

96 Civ. 4967 (RWS)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1998 U.S. Dist. LEXIS 917; 46 U.S.P.Q.2D (BNA) 1300; Copy. L. Rep. (CCH) P27,739

January 29, 1998, Decided
February 2, 1998, Filed

**DISPOSITION:** [*1] Summary judgment granted to Nonpublishing Defendants and claims against them in Second Amended Complaint dismissed.

**COUNSEL:** For Plaintiffs: ARNOLD LASKY, ESQ., Of Counsel, WEINGRAD & WEINGRAD, New York, NY.

For Defendants: PETER L. ALTIERI, ESQ., Of Counsel, EPSTEIN BECKER & GREEN, New York, NY.

**JUDGES:** ROBERT W. SWEET, U.S.D.J.

**OPINIONBY:** ROBERT W. SWEET

**OPINION:**

OPINION

**Sweet, D.J.**

Defendants Shai Bar Lavi ("Lavi"), Take Off, Inc. ("Take Off"), Cupid Network Television, Inc. ("Cupid"), Take Four, Inc. ("Take Four"), and Capital Distribution, Inc. ("Capital") (collectively, the "Nonpublishing Defendants"), have moved under *Rule 12(b)(6), Fed. R. Civ. P.*, for dismissal of claims asserted against them in the second amended complaint, (the "Second Amended Complaint"). For the reasons set forth below, the motion is granted.

**Parties**

Plaintiffs Zvi Livnat ("Livnat") and Guy Jackson ("Jackson") are both citizens of the State of Israel and residents of New York. In 1994, both were employed by Take Four, Livnat as sound-man, Jackson as a video camera-man.

Lavi is alleged to be the CEO of Take Four and/or Take Off.

Take Four is in the television broadcast business producing [*2] cable vision adult programs for Cupid. Take Off also produces programs for Cupid.

Non-moving defendant Amlon Publishing Group, Inc. ("Amlon") publishes New Rave, a magazine.

**Prior Proceedings**

Livnat filed a complaint alleging copyright infringement on or about December 15, 1995. The complaint was dismissed for failure to prosecute on or about October 29, 1996.

This action commenced on June 28, 1996. The Amended Complaint, which is the subject of the instant motion, was filed on September 26, 1997. Discovery has proceeded.

On or about April 2, 1997, pursuant to *Rule 68, Fed. R. Civ. P.*, all defendants served an offer of judgment on

Case 3:05-cv-00145-TFM    Document 30-6    Filed 06/20/2006    Page 9 of 12

Page 2
1998 U.S. Dist. LEXIS 917, *; 46 U.S.P.Q.2D (BNA) 1300;
Copy. L. Rep. (CCH) P27,739

each plaintiff in the amount of $ 20,000, plus costs and statutorily required attorneys' fees to be determined by the court. That offer was rejected.

On April 15, 1997, the Nonpublishing Defendants moved for dismissal of the first amended complaint pursuant to Rule 12(b)(6). The first amended complaint merely stated that "defendants" had "published and/or [had] caused the publishing, in New Rave Magazine . . . a collection of images" for which Livnat owned the copyright. On September 8, 1997, dismissal was granted. *Livnat v. Lavi,* [*3] *1997 U.S. Dist. LEXIS 13633, No. 96 Civ. 4967, 1997 WL 566097 at *2 (S.D.N.Y., Sept. 8, 1997).*

On September 25, 1997, Livnat filed his Second Amended Complaint. On October 23, 1997, the Nonpublishing Defendants filed the instant motion to dismiss for failure to state a claim. Oral argument was heard on December 3, 1997, at which time the motion was deemed fully submitted.

Facts

On a Rule 12(b)(6) motion to dismiss, the factual allegations of the complaint are presumed to be true and all factual inferences must be drawn in the plaintiffs' favor and against the defendants. See *Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974); Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989); Dwyer v. Regan, 777 F.2d 825, 828-29 (2d Cir. 1985).* The factual allegations of Livnat's Second Amended Complaint as set forth below are therefore presumed to be true only for the purpose of deciding the present motion to dismiss.

In 1994, while employed by Take Four as a sound technician, Livnat took 19 still photographs (the "Photographs") of models posing on the set of a program produced by Lavi and Take Four for Cupid, which is a pornographic cable station. Several of the Photographs [*4] also depicted Jackson filming the cable vision adult programs. Jackson was aware that Livnat was taking his photograph.

Livnat maintains that he provided the proofs and some prints of the Photographs to Lavi and was reimbursed for the laboratory costs of producing those proofs and prints. According to Livnat, Lavi agreed not to use the Photographs for commercial purposes unless he had obtained license from Livnat, on terms to be agreed. No model release was obtained from Jackson.

In a deposition taken by Plaintiffs' counsel, Lavi testified that he took the Photographs to Amlon, publisher of New Rave magazine, to obtain the editor's opinion about the value of using the Photographs in an article about Cupid. The editor said that he was not interested in using the photographs. When the meeting ended, Lavi left the photographs behind at Amlon's offices.

On May 30, 1995, the July 1995 issue of New Rave magazine was published by Amlon, containing an article entitled "Behind the Scenes," which included the 19 Photographs, seven of which arguably include a likeness of Jackson. The July issue also contained several advertisements by Cupid. None of the images used in the Cupid advertisements [*5] were derived from the Photographs. The July issue was on sale until June 26, 1995.

Discussion

The Court of Appeals has made clear that where a District Court is provided with materials outside the pleadings in the context of a 12(b)(6) motion to dismiss, it "may exclude the additional materials and decide the motion on the complaint alone or convert the motion to one from summary judgment under *Fed. R. Civ. P. 56* and afford all parties the opportunity to present supporting material." *Kopec v. Coughlin, 922 F.2d 152, 154 (2d Cir. 1991).* In their opposition to the motion to dismiss, Plaintiffs have offered the deposition of Lavi as extraneous evidence to support the allegations in the Second Amended Complaint. The Nonpublishing Defendants addressed the content of the deposition in their reply papers. The motion will therefore be treated as one for summary judgment, pursuant to *Rule 56, Fed. R. Civ. P.*

*Rule 56(e) of the Federal Rules of Civil Procedure* provides that a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits . . . show that there is no genuine issue [*6] as to any material fact and that the moving party is entitled to a judgment as a matter of law." See, *Silver v. City University, 947 F.2d 1021, 1022 (2d Cir. 1991).*

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York, 72 F.3d 1051, 1060 (2d Cir. 1995).* In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See *Brady v. Town of Colchester, 863 F.2d 205, 210 (2d Cir. 1988); Matsushita Elec. Indus. v. Zenith Radio Corp, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).* If there is any evidence in the record regarding the issues on which summary judgment is sought from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. See *Knowles v. New York City Dept. of Corrections, 904 F. Supp. 217, 220 (S.D.N.Y. 1995).*

Case 3:05-cv-00145-TFM    Document 30-6    Filed 06/20/2006    Page 10 of 12

Page 3

1998 U.S. Dist. LEXIS 917, *; 46 U.S.P.Q.2D (BNA) 1300;
Copy. L. Rep. (CCH) P27,739

A party seeking to defeat a summary judgment motion cannot "rely on mere speculation or conjecture as to the true nature [*7] of facts to overcome the motion." *Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995)* (quoting *Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986))*. Rather the responding party 'must show the existence of a disputed material fact in light of the substantive law." *Peer Int'l Corp. v. Luna Records, Inc., 887 F. Supp. 560, 564 (S.D.N.Y. 1995)*. In the absence of any disputed material fact, summary judgment is appropriate.

**Contributory Infringement**

Lavi contends that because Plaintiffs have not alleged that the Nonpublishing Defendants published or altered the Photographs, there can be no claim of copyright infringement. However, Plaintiffs' allegations need not state a claim for direct infringement; if the allegations succeed in stating that the Nonpublishing Defendants knew of and substantially participated in Amlon's direct infringement, a claim for contributory infringement might stand. Livnat has asserted that liability should be imposed on the Nonpublishing Defendants based on the following allegations: first, that Livnat, acting as an advertising agent for the other Nonpublishing Defendants, met at Amlon with the editor of New Rave and proposed [*8] that the Photographs be used in an article about Cupid, although this proposal was rejected; second, that Cupid, Take Off and Take Four advertised in the July 1995 issue of New Rave which also carried the article containing the Photographs.

A contributory infringer is one who, "with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *Gershwin Publishing Corp. v. Columbia Artists Management, Inc., 443 F.2d 1159, 1162 (2d Cir. 1971)*. Thus, "knowledge and participation [are] the touchstones of contributory infringement." *Demetriades v. Kaufmann, 690 F. Supp. 289, 293 (S.D.N.Y. 1988)*.

Participation sufficient to establish a claim of contributory infringement may not consist of merely providing the "means to accomplish an infringing activity . . ." *Sony Corp. v. Universal City Studios, Inc., 464 U.S. 417, 435 n.17, 78 L. Ed. 2d 574, 104 S. Ct. 774 (1984)*. In order for liability to be imposed, the alleged contributory infringer must make more than a "mere quantitative contribution" to the primary infringement. *Gershwin, 443 F.2d at 1162* (quoting *Fortnightly Corp. v. United Artists Television, Inc.,* [*9] *392 U.S. 390, 396-97, 20 L. Ed. 2d 1176, 88 S. Ct. 2084)*. Participation in the infringement must be "substantial." *Demetriades v. Kaufmann, 690 F. Supp. 289, 294 (S.D.N.Y. 1988)*. The authorization or assistance must bear a direct relationship to the infringing acts, and the contributory infringer must have acted in concert with the direct infringer. 3 Melville B. Nimmer, David Nimmer, *Nimmer on Copyright § 12.04*[A][2][a] at 12-75 (1996).

Knowledge of the infringing activity may be actual or constructive, *EZ-TIXZ, Inc. v. HIT-TIX, Inc., 919 F. Supp. 728, 732 (S.D.N.Y. 1996)*. However, one who furnishes a copyrighted work to another but is innocent of any knowledge of the other party's intended illegitimate use will not be liable. 3 Melville B. Nimmer, David Nimmer, *Nimmer on Copyrights, § 12.04*[A][2][b] at 12-76-77 (1996) (citing *Schuchart & Associates v. Solo Serve Corp., 1983 U.S. Dist. LEXIS 15936, 220 U.S.P.Q. 170 (W.D. Tex. 1983)*.

Grant or denial of summary judgment dismissing claims of contributory liability turns on the ability of the plaintiff to allege sufficient knowledge on the part of the defendant. In *Schuchart & Associates v. Solo Serve Corp., 1983 U.S. Dist. LEXIS 15936, 220 U.S.P.Q. 170* [*10] *(W.D. Texas 1983)*, the defendant commissioned architectural plans from the plaintiff for one store, then later gave the plans to a second architecture firm and asked it to design a store like the first. The second firm copied the plans. The court held the defendant not liable for contributory infringement because it had not directed the second architecture firm to copy the plans and did not know of the infringing activity until after the copying had occurred. See also *ITSI T.V. Productions v. California Authority of Racing Fairs, 785 F. Supp. 854, 866 (E.D. Ca. 1992)* (defendant given copies of plaintiff's televised racing programs for broadcast by one who had not obtained the plaintiff's permission; because plaintiff failed to point to any evidence that defendant knew or should have known that the broadcast of the program would infringe plaintiff's copyright, summary judgment granted to defendant). In *R&R Recreation Products, Inc. v. Joan Cook Inc., 1992 U.S. Dist. LEXIS 5176, No. 91 Civ. 2589, 1992 WL 88171 (S.D.N.Y. April 14, 1992)*, summary judgment was granted where the evidence indicated that the defendant catalogue company had pointed out to the direct infringer that the plaintiff's cat and mouse [*11] watch was a best-seller. The direct infringer then began to offer infringing copies of plaintiff's product. Shortly thereafter, the direct infringer sent defendant two checks totaling $ 500,000, raising the inference that some kick-back of profits was made in return for the information. Id. at *1. The court denied summary judgment for the defendant on the grounds that the $ 500,000 payment was evidence that defendant had knowledge of the direct infringer's intent to copy the plaintiff's product. Id. at *3.

In the instant case, Plaintiffs have not adduced sufficient evidence to withstand summary judgment. Lavi's deposition testimony makes clear that he lacked the requisite knowledge for liability as a contributory infringer. He testified that the editor at Amlon entirely rejected the

1998 U.S. Dist. LEXIS 917, *; 46 U.S.P.Q.2D (BNA) 1300;
Copy. L. Rep. (CCH) P27,739

Photographs for publication, and that Lavi left the photographs behind without any thought that they would be used by the magazine. It is alleged in the Second Amended Complaint that Lavi agreed to seek Livnat's license before submitting the photographs to commercial use. Here, no opportunity to seek Livnat's permission had yet arisen, because, as far as Lavi knew, no commercial use would be forthcoming. [*12] Lavi lacked the actual or constructive knowledge of the infringing activity necessary for contributory liability.

Finally, Plaintiffs' allegations that Cupid, Take Off and Take Four advertised in the July 1995 issue of New Rave similarly fail to meet the knowledge and participation requirement for contributory liability. Merely advertising in an issue which carries an article containing infringing photographs cannot constitute a material contribution to that infringement.

**The Invasion of Privacy against Nonpublishing Defendants Will Also Be Dismissed**

New York Civil Rights Law provides that:

> A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor.

N.Y. Civ. Rights § 50 (McKinney's 1992). Section 51 of the Civil Rights Law authorizes the maintenance of an invasion of privacy action only against a person who "used" a plaintiff's image. N.Y. Civ. Rights § 51; *Anderson v. Strong Memorial Hospital, 140 Misc. 2d 770, 531 N.Y.S.2d* [*13] *735 (Sup. Ct. Monroe Cty. 1988)*.

Livnat asserts that use by the Nonpublishing Defendants arises from the fact that all moving defendants advertised in New Rave, and all obtained benefit from the use of the Photographs in the article about Cupid Network. Such indirect benefit does not constitute use sufficient to provide a cause of action under § 50. In Anderson, the plaintiff was an AIDS patient who was encouraged by certain physicians and nurses to allow his photograph to be taken while being treated in the hospital. Two days later the photograph appeared in the local paper as part of an article. The plaintiff sued the newspaper as well as the hospital and several nurses and doctors. The court dismissed the claims against the hospital and related individuals because the complaint failed to allege that these defendants made any use of the photograph:

> Although the amended complaint alleged that [the individually named defendants] encouraged plaintiff to have his photograph taken, there are no allegations to the effect that they took the photograph, sold it, published it, or otherwise exercised any control over it, to give rise to the conclusion that they 'used' the photograph.

[*14]

*140 Misc. 2d at 773, 531 N.Y.S.2d at 738* (citations omitted).

In the instant action, leaving aside the issue of whether the article in New Rave could be deemed a "disguised advertisement", see *Lerman v. Flynt Distributing Co., Inc., 745 F.2d 123 (2d Cir. 1984); Heller v. Family Circle, Inc., 85 A.D.2d 679, 445 N.Y.S.2d 513 (A.D. Dept. 2 1981)*, the Nonpublishing Defendants took no direct action in publishing the Photographs, and cannot be held liable for their use.

**Conclusion**

For the reasons set forth above, summary judgment will be granted to the Nonpublishing Defendants and claims against them in the Second Amended Complaint will be dismissed.

It is so ordered.

**New York, N. Y.
January 29, 1998**

    **ROBERT W. SWEET**

    **U.S.D.J.**

Case 3:05-cv-00145-TFM   Document 30-6   Filed 06/20/2006   Page 12 of 12

Page 12

2004 U.S. Dist. LEXIS 23052, *; 73 U.S.P.Q.2D (BNA) 1090;
Copy. L. Rep. (CCH) P28,913

Fact and Conclusions of Law, following a bench trial on the merits, and for the foregoing reasons, it is hereby **ORDERED** that:

    1. Judgment is entered in favor of Plaintiffs and against Defendants on Plaintiffs' claims of copyright infringement.

    2. Judgment is entered in favor of Defendants and against Plaintiffs on Plain- tiffs' *Digital Millennium Copyright Act* claims.

    3. The parties are directed to appear before this Court on **December 2, 2004]** at **10:00 A.M.** for oral argument on the issue of damages. Briefs shall be due on November 29, 2004.

**BY THE COURT:**

**Berle M. Schiller, J.**