IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VALENCIA M. MCCLATCHEY, ) | |
| ) | |
| Plaintiff, ) | 3:05-cv-145 |
| ) | (Johnstown) ` |
| v. ) | |
| ) | |
| THE ASSOCIATED PRESS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court for consideration is a MOTION FOR SUMMARY JUDGMENT (Document No. 18) filed by Defendant, The Associated Press ("AP"). Plaintiff has filed a response, AP has filed a reply, and the motion is now ripe for disposition. After reviewing the record evidence and the authorities cited by the parties, the Court concludes that the motion will be denied.

Standard of Review

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id*. (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the

evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

Procedural and Factual History

This case was originally filed in February 2005 in the Johnstown Division of the United States District Court for the Western District of Pennsylvania and assigned to the Honorable Kim R. Gibson. The complaint asserts claims for direct copyright infringement (Count I), contributory copyright infringement (Count II), vicarious copyright infringement (Count III), and removing and distributing false copyright information in violation of the Digital Millenium Copyright Act, 17 U.S.C. §§ 1202(a), (b) (Counts IV and V). The pending motion, which seeks summary judgment on all counts, was filed by Defendant on May 15, 2006. On February 22, 2007, Judge Gibson signed an order of recusal and the case was transferred to the undersigned.

Plaintiff Valencia McClatchey is a resident of Shanksville, Pennsylvania. On the morning of September 11, 2001, she observed United Flight 93 crash into a field near her house and took a photograph of the mushroom cloud caused by the crash, against a clear blue sky, with a red barn and the rolling hills of Pennsylvania in the foreground. In January 2002, Ms. McClatchey received federal copyright protection for the photograph, which she titled "End of Serenity." The photograph has been displayed at numerous exhibits, including the Flight 93 Memorial and the Smithsonian Institute. Various news organizations have also sought to license the use of the photograph. Ms. McClatchey generally agreed to license the photograph for one-time use. She also sold hard copies of the photograph locally and through the mail for $20 apiece, $18 of which she donated to the Todd Beamer Foundation.

At a ceremony commemorating the one-year anniversary of the crash, Ms. McClatchey met Charles Sheehan, an AP reporter. Sheehan decided to write a story about "this lady who took this picture a year before." That afternoon, Gene Puskar, an AP photographer, went to Ms. McClatchey's home to photograph her for the story. The crux of this case involves the details of the interaction between Mr. Puskar and Ms. McClatchey.

Puskar's assignment was to "take pictures of a woman with a picture."  Instead, Plaintiff contends that Puskar, under false pretenses, took a picture only of the "End of Serenity" photograph itself.  Ms. McClatchey alleges that the photograph which Puskar shot was taken from her binder and reflected her title and copyright information thereon.  Plaintiff contends that Puskar then "cropped" his picture of the photograph to remove her title and copyright notice.  The Sheehan article and the photograph were distributed as separate items to APs' roughly 2000 PhotoStream member news organizations without her permission.  Ms. McClatchey learned in August 2003 that her photograph was being used on AOL's home page in connection with a Flight 93 conspiracy theory.  Upon investigation, she learned that AOL had received the image from AP.  Plaintiff also contends that there has been unauthorized use of the photograph by the Washington Post and the Philadelphia Daily News, via AP.

AP contends that its use of the photograph was proper and was with Plaintiff's consent.  Defendant points to Ms. McClatchey's deposition, in which she states that the only copy she kept in her home was a framed "personal copy" that did not contain a copyright notice.[1]  Based on this testimony, Defendant reasons that Puskar took a picture of a photograph that did not contain Plaintiff's copyright notice.[2]  Defendant further contends that Ms. McClatchey was well aware

---

[1] A Johnstown newspaper, the Tribune-Democrat, carried Sheehan's article, but sent its own photographer to take a picture of Ms. McClatchey holding her "End of Serenity" photograph.

[2] After review, the Court concludes that McClatchey's deposition testimony does not conclusively resolve the dispute of whether Puskar took a picture of a photograph that contained a copyright notice.  The discussion at pp. 28-29 involves a photograph taken in her living room, while McClatchey and Puskar both testified that Puskar's photograph was taken outside.  Thus, that discussion may have referred to the Tribune-Democrat photograph.  Ms. McClathey offered to give Puskar a hard-copy of the photograph which he declined.  It is unlikely that she offered Puskar her only personal copy and she testified that the souvenir or memento copy she gives out to visitors always contains the copyright notice.  Further, Ms. McClathey's "personal copy" is framed and Puskar does not discuss taking a photograph of a framed photograph.  The Court did not find any testimony regarding the photograph shot by Puskar that would directly contradict Ms. McClatchey's declaration.  In sum, there are material factual disputes.

that Puskar was taking a photograph of her photograph and consented to its use with the Sheehan article.  Defendant notes that although the metadata which accompanied the electronic version of the photograph incorrectly referred to Ms. McClatchey as a "stringer,"[3] the metadata also stated that the photograph was a "handout" not created by the AP and said "NO SALES, WIDE WORLD PHOTOS OUT."[4]  Defendant points out that only three entities downloaded the photograph and that two of them, the Washington Post and Philadelphia Daily News, were authorized to do so based on earlier licenses granted by Ms. McClatchey.

## Discussion

AP contends that summary judgment should be granted on all counts.  It argues that the direct infringement claim must fail because APs' use of the photograph was permissible under the "fair use" doctrine.  Defendant contends that summary judgment should be granted on the claims for contributory and vicarious infringement because there is no evidence of third-party infringement and no evidence of encouragement or inducement by AP.  AP argues that the claims under the Digital Millenium Copyright Act, 17 U.S.C. §§ 1202(a), (b), must also fail because it did not remove any copyright information, and even assuming arguendo that it did, the copyright notice placed by Ms. McClatchey does not qualify for protection under the Act.

---

[3]A "stringer" is a term for a freelance photographer under contract with AP, which could cause news outlets to assume that AP owned the copyright.

[4]The version of the photograph attached as Exhibit B to the Ake Declaration also contains a further statement, apparently added later: "Do not retransmit.  AP no longer has rights to this handout image."

Direct Infringement

Defendant maintains that Ms. McClatchey consented to its use of the photograph. However, recognizing the factual dispute on that issue, AP contends at this stage that summary judgment is appropriate under the "fair use" doctrine.

"Fair use" is a wholly equitable doctrine that has been codified at 17 U.S.C. § 107. It is an affirmative defense on which AP bears the burden of persuasion. *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*, 342 F.3d 191, 197 (3d Cir. 2004). The "fair use" doctrine seeks to balance protection for creative works with the public's interest in the dissemination of information. *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1151 (9th Cir. 1986). The statute provides that a copyrighted work may properly be used for purposes such as criticism, commentary or news reporting. Courts apply a non-exhaustive four-factor test: (1) the purpose and character of the use, as commercial or educational; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used; and (4) the effect of the use on the market for the original. 17 U.S.C. § 107. All four factors must be explored, weighed and considered together. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994). Although the "fair use" doctrine requires case-by-case balancing of numerous factors, summary judgment is possible, but only when a reasonable factfinder could reach only one conclusion. *Hustler*, 796 F.2d at 1150-51.

At this stage, the Court must construe the evidence and reasonable inferences therefrom in the light most favorable to Plaintiff. The Court concludes that summary judgment cannot be granted. As to the first factor, a factfinder could conclude that the use was more commercial than educational. The text of the article focused on the woman who took the "End of Serenity" photograph and Ms. McClatchey believed that Puskar was taking a photograph of her holding that photograph. A year passed from the time of the crash depicted in the photograph and the article described the events in Plaintiff's life during that year. Although the photograph certainly depicts a newsworthy event, that event was no longer timely and had been extensively

chronicled. Thus, there was arguably no significant "newsworthiness" in disseminating the photograph, by itself, a year later. Plaintiff emphasizes that AP distributed the article and picture separately, with no restriction that the picture be used only in connection with the Sheehan article. Numerous courts have recognized that photographs may be sufficiently creative to make the second factor weigh in favor of Plaintiff. *See* cases cited in Plaintiff's Brief at 14-15. As to the third factor, resolving the factual dispute in the light most favorable to Plaintiff, AP did not transform the 'End of Serenity' photograph, but instead, simply copied it except for the title and copyright information. If true, this factor weighs strongly in favor of Plaintiff. As to the fourth factor, it appears that there is not a huge market for the photograph. However, AP did distribute the photo to Ms. McClatchey's most likely customers. Courts must consider not only the specific use in question, but the effect on the potential market if that type of use became widespread. *Harper & Row Pub., Inc. v. Nation Enterprises*, 471 U.S. 539, 568 (1985).

      Defendant cites *Ringgold v. Black Entertainment Television, Inc.*, 126 F.3d 70, 79 (2d Cir. 1997), for the proposition that a news program that included camera shots of a person's story quilts would have a strong fair use defense. However, this case is more analogous to the "weak defense" scenario referenced in the footnote in *Ringgold*, *id.* at 79 n.11, because AP allegedly enabled its subscribers to obtain a digital replica of the original work without paying the licensing fee. In sum, the Court cannot resolve the "fair use" doctrine factors in Defendant's favor as a matter of law. The effect of APs' distribution of the "picture of the photo" was to give subscribers access to "End of Serenity" without a recognition of Plaintiff's copyright. That use was certainly not necessary to give appropriate context to the Sheehan article.

Secondary Infringement

      There are two distinct theories of secondary copyright infringement. Contributory infringement requires: (1) direct infringement by a primary party; (2) inducement or material contribution to the infringing contact; and (3) knowledge or reason to know of the direct

infringement. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 125 S. Ct. 2764, 2776 (2005). The elements of vicarious infringement are: (1) direct infringement by a primary party; (2) a direct financial benefit to defendant; and (3) the refusal to exercise the ability to supervise infringers. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 380 F.3d 1154, 1164 (9th Cir. 2004).

Defendant contends that there is no evidence of direct infringement by third parties. However, the record reflects that AOL obtained the photograph from AP and used it without permission. At this stage, the Court must view the record in the light most favorable to Ms. McClatchey. The Court agrees with Plaintiff that APs' actions in distributing the photograph to its subscribers constituted a material contribution to the infringing conduct. As Plaintiff aptly notes, the members and subscribers rely on AP to collect and distribute such information for their use. AP disseminated the photograph to enable further publication. Thus, if AP was infringing on Ms. McClatchey's copyright, it knew that its subscribers would infringe as well. Moreover, the "financial interest" prong need only relate to the organization as a whole. *Playboy Enterprises v. Webbworld, Inc.*, 968 F. Supp. 1171, 1177 (D. Tex. 1997). Thus, Plaintiff need not demonstrate a direct connection between APs' revenues and her photograph. Finally, Defendant may supervise its members and subscribers through its Agreement and Terms of Use. The Court notes that the metadata accompanying the photograph purported to impose certain restrictions on use, but did not restrict the photograph's use to the Sheehan article. In conclusion, summary judgment will be denied on Counts II and III.

Digital Millenium Copyright Act Claims

Plaintiff has asserted claims under Sections (a) and (b) of the Digital Millenium Copyright Act. Count IV alleges the distribution of false copyright management information and Count V alleges that the Associated Press removed or altered copyright management information.

Congress has provided, at 17 U.S.C. § 1202, as follows:

**(a) False copyright management information.--No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement--**

**(1) provide copyright management information that is false, or**

**(2) distribute or import for distribution copyright management information that is false.**

**(b) Removal or alteration of copyright management information.--No person shall, without the authority of the copyright owner or the law--**

**(1) intentionally remove or alter any copyright management information,**

**(2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or**

**(3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,**

**knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.**

The term "copyright management information" is defined at 17 U.S.C. § 1202© to mean "any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form . . . ." The statute then lists eight categories of information, including title, author and copyright notice.

Defendant contends that the Act is not applicable because Ms. McClatchey's copyright notice was not "digital." In *IQ Group, Ltd. v. Weisner Publishers, LLC*, 409 F. Supp.2d 587, 597 (D.N.J. 2006) (involving removal of a logo and a hyperlink), the Court explained that under Section 1202, it must determine whether the information allegedly removed "functioned as a component of an automated copyright protection or management system." Ms. McClatchey testified in her deposition that she used the My Advanced Brochures software program on her

computer, in a two-step process, to print the title, her name and the copyright notice on all printouts of the photograph. The Court finds that this technological process comes within the digital "copyright management information" as defined in the statute. Moreover, Section 1202© defines the term broadly to include "any" of the information set forth in the eight categories, "including in digital form." To avoid rendering those terms superfluous, the statute must also protect non-digital information. Thus, the Court concludes that the statute applies to the facts of this case, when viewed in the light most favorable to Plaintiff.

Defendant also contends that the metadata unambiguously stated that the photograph was taken by Val McClatchey and was a handout. However, the metadata also identified Ms. McClatchey as a "stringer," from which subscribers could have inferred that the Associated Press owned the copyright. Plaintiff points to the PhotoStream Agreement, which asserts that all PhotoStream pictures remain the property of AP. Most tellingly, there was no clear statement notifying subscribers that Ms. McClatchey owned the copyright to "End of Serenity".

Finally, Defendant asserts that there is no evidence that it intended to aid infringement. As noted above, there are issues of material fact regarding whether Puskar removed the copyright notice. Under Plaintiff's version of the facts, AP intentionally cropped the copyright notice out of the picture before distributing it to subscribers. This appears to be precisely the conduct to which Section 1202(b) is directed. As Plaintiff notes, the nature of APs' business is to provide stories and pictures for use by its members and subscribers. Thus, a reasonable factfinder could conclude that by cropping out the copyright notice, Defendant had the requisite intent to induce, enable, facilitate or conceal infringement. Accordingly, the Court must conclude that Defendant is not entitled to summary judgment on Counts IV and V.

Statutory Damages

Plaintiff seeks statutory damages enhanced to the maximum of $150,000.00 based on willful infringement, and multiplied by the number of subscribers to AP. Defendant argues that

there is no evidentiary support for a finding of willfulness and that as a matter of law, Plaintiff may only recover a single award of statutory damages.

For the reasons set forth above, the Court cannot grant summary judgment to Defendant on the issue of willfulness.  Construing the record in the light most favorable to Plaintiff, a factfinder could conclude that AP misled Ms. McClatchey by taking a picture solely of the photograph, intentionally cropped the copyright notice, and then distributed it without her permission.

However, the Court agrees with Defendant that Plaintiff is entitled to recover only a single award.  *See Daley v. Firetree, Ltd.*, 2006 WL 148879 *7 (M.D. Pa. 2006) (copyright act permits recovery of one award of statutory damages for each work infringed).  The record is clear that the "End of Serenity" photograph is the only work involved.  Indeed, Plaintiff does not challenge this argument.  The Court reserves all decisions regarding damages for future proceedings.


In conclusion, Defendant's summary judgment motion will be denied.  There are numerous genuine issues of material fact regarding the circumstances which led to the "picture of the photo."  When viewed in the light most favorable to Plaintiff, the record could support claims for direct and secondary infringement and for violations of the Digital Millenium Copyright Act.  There is also factual support for a reasonable juror to conclude that Defendant acted willfully, for purposes of determining damages.

An appropriate order follows.


                                                McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VALENCIA M. MCCLATCHEY, ) | |
| ) | |
| Plaintiff, ) | 3:05-cv-145 |
| ) | (Johnstown) |
| v. ) | |
| ) | |
| THE ASSOCIATED PRESS, ) | |
| ) | |
| Defendant. ) | |

## ORDER OF COURT

AND NOW, this 9th day of March, 2007, in accordance with the foregoing Memorandum Opinion it is hereby ORDERED, ADJUDGED AND DECREED that the MOTION FOR SUMMARY JUDGMENT (Document No. 18) filed by The Associated Press is **DENIED**.

Plaintiff shall file a pretrial statement on or before **March 29, 2007**. Defendant shall file a pretrial statement on or before **April 18, 2007**. A pretrial conference will be held before the undersigned on **April 20, 2007 at 2:00 P.M.** in Courtroom 6C, 6th Floor, U.S. Courthouse, 700 Grant Street, Pittsburgh, Pennsylvania 15219.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Douglas M. Hall, Esquire
Email: dhall@nshn.com
John E. Hall, Esquire
Email: jhall@eckertseamans.com
Kara L. Szpondowski, Esquire
Email: szpondowski@nshn.com

Gayle C. Sproul, Esquire
Email: gsproul@lskslaw.com
Robert Penchina, Esquire
Email: rpenchina@lskslaw.com
Michael L. Berry, Esquire
Email: mberry@lskslaw.com