## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VALENCIA M. MCCLATCHEY, ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 05-00145J |
| v. ) | The Honorable Terence F. McVerry |
| THE ASSOCIATED PRESS, ) | **JURY TRIAL DEMANDED** |
| Defendant. ) | |

### PLAINTIFF'S PRETRIAL STATEMENT

Pursuant to L.R. 16.1.4 and the Court's March 9, 2007 order, Plaintiff Valencia M. McClatchey ("Plaintiff" or "McClatchey"), by and through her attorneys Niro, Scavone, Haller, & Niro hereby submits her Pretrial Statement:

### I.   MATERIAL FACTS TO BE OFFERED AT TRIAL

On February 24, 2005, Valencia McClatchey sued the Associated Press ("AP") on five counts stemming from the AP's unauthorized use of her copyrighted End of Serenity photograph. Count I asserts a claim for direct copyright infringement, Count II asserts a claim for contributory copyright infringement, Count III asserts a claim for vicarious copyright infringement, Count IV asserts a claim for distributing false copyright information in violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202(a), and Count V asserts a claim for removing copyright management information in violation of the DMCA, 17 U.S.C. § 1202(b).

On the morning of September 11, 2001, Valencia McClatchey looked out her front window in Shanksville, Pennsylvania and saw United Flight 93 crashing into a field near her house. She stepped outside her house as a white mushroom cloud was rising

from the crash and took a compelling photograph of the mushroom cloud against a blue sky with a red barn and the rolling hills of Pennsylvania in the foreground.

On January 29, 2002, she received federal copyright registration for the photograph, which she titled "End of Serenity."  Ms. McClatchey's End of Serenity photograph has garnered widespread national acclaim and has been shown at exhibits and memorials throughout the world, including the Flight 93 Memorial, the Library of Congress, and the Smithsonian Institution.

After taking the photograph, Ms. McClatchey was approached by various news organizations and magazines, including ABC News, Fox News, U.S. News and World Report, the Pittsburgh Post-Gazette, Newsweek, and the Washington Post, all of which asked to license the use of her photograph.  Ms. McClatchey generally agreed to license her photo for a one time use, charging a fee of approximately $250 to $350.  Ms. McClatchey was not a professional photographer and did not know how much freelance photographers generally charged for such use.  Ms. McClatchey also sold non-commercial, personal use hard copies locally and through the mail for $20, $18 of which she donated to the Todd Beamer Foundation.  The other $2 she used for paper and printing costs.

Ms. McClatchey followed two general rules with respect to distribution of her photograph.  First, any hard copy of the End of Serenity photograph that she sold or gave out included her name, the word "copyright," along with the year in the lower right hand corner, and the words "End of Serenity" and "September 11, 2001" in the top left of the photo across the blue sky.  Second, she e-mailed a digital file of the photograph to any news entity that she agreed to license the work to, so that it would be the best

possible depiction. While the digital copy Ms. McClatchey sent via this fashion did not bear a copyright notice, the only entities which received a digital copy (with no copyright notice) were those entities which paid for and/or had <u>written</u> permission from Ms. McClatchey for their limited use. Ms. McClatchey retains one framed copy of the End of Serenity in her home office. All hard copies of the End of Serenity bear her copyright information.

At a ceremony memorializing the one year anniversary of the crash of Flight 93, Ms. McClatchey approached and introduced herself to Charles Sheehan, a reporter for the Associated Press, which is the largest news organization in the world. Mr. Sheehan decided to write a story about Ms. McClatchey for the Associated Press. Sheehan interviewed her and his resulting story was "a feature story about this lady who took this picture a year before. Later that day, Gene Puskar, an employee and photographer for the Associated Press, went to Ms. McClatchey's home and informed her that he was there "<u>to photograph her</u> for the Charles Sheehan story[.]" Puskar's assignment was to "take pictures of <u>a woman with a picture</u>." Ms. McClatchey stood on the side of her with a hard copy of the End of Serenity photograph which bore her copyright information, but instead of taking a picture of Ms. McClatchey with her photograph, Puskar only took a picture of her End of Serenity photograph.

Ms. McClatchey did not give either Puskar or the AP consent to take a photograph of her photograph. Puskar did not ask her permission to use the photograph of her photograph to accompany the Sheehan article, nor did Puskar tell her the AP was also going to transmit her photo to all its members and subscribers. In fact, Puskar admits "there [was] no rights talk at all." Instead of asking Ms. McClatchey for a

digital copy of the photograph, Puskar elected to take a photograph of her photograph. Ms. McClatchey did not realize Puskar was doing this – she thought he was taking a picture of her for the Sheehan article, not capturing a photo of her photograph. Ms. McClatchey never gave anyone at the AP either written or oral permission to use the End of Serenity photograph.

Mr. Puskar then cropped the edges off Ms. McClatchey's End of Serenity photograph, omitting the included title and copyright information, and submitted it to the AP. The AP's procedures for such transmission required the editor who received the photograph, i.e., Puskar, to clear all copyright issues. As that editor, and an agent of the AP, it was Mr. Puskar's responsibility to clear any copyright issues, but he failed to do so. Compounding his "oversight", no one at the AP double checked him. In fact, Mr. Puskar admits that he "[didn't] know" what rights the AP had in the photograph.

Mr. Sheehan's article, and Mr. Puskar's copy of the End of Serenity photograph were then distributed as separate items, at different times, to the AP's roughly 2000 PhotoStream members, including AOL, and the Washington Post. Although the Sheehan article references Ms. McClatchey's photograph, the AP included no requirement or restriction that the photograph be used solely with the article. Worse, the caption on the infringing and cropped photograph itself, that Mr. Puskar co-wrote, makes no reference to Mr. Sheehan's article. In other words, the roughly 2000 news organizations received the photograph free of charge, with no restriction or guidance that the photograph was only to be used in connection with the news article. Put another way, AP's actions, or lack thereof, gave unfettered and unlimited access to Ms. McClatchey's photograph without any recompense or acknowledgement to her.

Additionally, the "meta data" attached to the photograph falsely indicated that Ms. McClatchey was a "stringer," which is another word for a freelancer.  Freelance photographers for the AP have contracts with the AP which provides that the AP owns the copyright for any photographs taken for the AP.  Therefore, the AP's members and subscribers received the photograph thinking the AP owned the copyright.  The AP admits that this was "incorrect."

All of the AP's roughly 2000 PhotoStream members and subscribers received a cropped digital copy of Ms. McClatchey's End of Serenity photograph via the AP's distribution on approximately September 11, 2002.  After the initial distribution, and once the photograph was made available to all members and subscribers with access to the PhotoArchive, at least three entities downloaded the photograph again.  In approximately August 2003, Ms. McClatchey was informed that her photograph being used on AOL's home page, in connection with a conspiracy story on Flight 93.  AOL never sought and Ms. McClatchey has never given AOL permission to use her photograph.  Shortly thereafter, Ms. McClatchey contacted AOL, learned AOL received access to the image from the AP, and requested that the AP remove her photograph from their database.  She later found additional unauthorized and infringing uses of her photograph in newspapers, such as the Washington Post and Philadelphia Daily News, magazines, and in connection with several Flight 93 conspiracy web sites.  Ms. McClatchey initially licensed the Washington Post for a limited use of her photograph.  After receiving a copy from the AP, the Washington Post again used her photograph, but failed to pay a license fee.

After Ms. McClatchey notified the AP of its unauthorized use, the AP did not inform its members and subscribers that it had no rights to the photograph or that they should destroy any copies of it. Indeed, to this day the AP has not done this. In fact, the only thing the AP did was to restrict access to Ms. McClatchey's photograph in its PhotoArchive on approximately November 3, 2004.

## II. STATEMENT OF DAMAGES CLAIMED

McClatchey has been damaged as a result of AP's infringement and is entitled to damages adequate to compensate her for the infringement that has occurred in the form of (1) statutory damages for direct copyright infringement pursuant to 17 U.S.C. § 504; (2) statutory damages for contributory and/or vicarious copyright infringement pursuant to 17 U.S.C. §504 and (3) statutory damages for removal of copyright management information pursuant to 17 U.S.C. § 1202(c)(3)(B).

### A. Direct Copyright Infringement Damages Pursuant to 17 U.S.C. § 504(c)(2)

McClatchey seeks statutory damages pursuant to 17 U.S.C. § 504(c)(2) in the amount of $150,000 for the willful infringement by AP of McClatchey's "End of Serenity" copyright. The $150,000 amount is justified by the willful and wantonly reckless behavior of the AP, including (1) never seeking or receiving oral or written permission to use the copyrighted photograph; (2) cropping the photograph to remove McClatchey's copyright management information; and (3) distributing the photograph over 1100 times and falsely identifying the AP as the owner.

**B.      Contributory and/or Vicarious Copyright Infringement Pursuant to § 504(c)(2)**

McClatchey seeks statutory damages pursuant to 17 U.S.C. § 504(c)(2) for each act of contributory and/or vicarious copyright infringement in the amount of $150,000 per infringement.  The Washington Post and America Online (AOL) each received an electronic transmission of the photograph from the AP.  The Washington Post and AOL, believing the AP had rights in the photograph, published the photograph without McClatchey's consent.  The AP is liable for these separate acts of infringement by the AOL and the Washington Post.  McClatchey is seeking $150,000 for each separate act for a total of $300,000 for AP's contributory and/or vicarious infringement.

**C.      Damages for Violation of DMCA Pursuant to 17 U.S.C. § 1202(c)(3)(B)**

17 U.S.C. § 1202(a) prohibits knowingly providing copyright information that is false or distributing copyright information that is false.  17 U.S.C. § 1202(b) prohibits intentionally removing or altering copyright management information, and distributing knowing that such copyright information has been removed and/or altered and/or is false.

The AP has violated both 17 U.S.C. § 1202(a) and (b) through the following acts: (1)  removing McClatchey's copyright management information without her permission; (2) distributing electronically her "End of Serenity" photograph without her copyright management information to at least 1,147 news organizations; and (3) claiming, without justification, that the AP was the owner of the "End of Serenity" photograph and that Ms. McClatchey was a "stringer."

Statutory damages under the DMCA, 17 U.S.C. § 1203, are measured differently than damages under 17 U.S.C. § 504.  In particular, 17 U.S.C. § 1203 authorizes

statutory damages for <u>each</u> act of distribution.  See <u>Sony Computer Entertainment America</u> v. <u>Filipiak</u>, 406 F. Supp. 2d 1068, 1074 (N.D. Cal. 2005); see also *Nimmer on Copyright* § 12A.13 ("For violations regarding copyright management information, the statute sets the figure between $2,500 and $25,000.  Multiple awards lie here for 'each violation of section 1202.'").

17 U.S.C. § 1203(c)(3)(B) permits a party to "elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000."  Thus, McClatchey is seeking statutory damages for each violation of § 1202 at a level between $2,500 and $25,000 for each of the AP's 1,147 distributions of the "End of Serenity" photograph which violate section 1202.

Several of the factors the Court can consider in determining the amount of damages for each violation within the range of $2,500 and $25,000 are: revenues lost to the plaintiff; the willfulness of the infringement; and, profits reaped by defendant in connection with the infringement.  The Court can also consider the goal of discouraging wrongful conduct. See: <u>Controversy Music</u> v. <u>Shiferaw</u>, 2003 U.S. Dist. LEXIS 15224, 2003 WL 22048519 at * 2 (N.D. Cal. 2003).  AP's willful, wrongful conduct as set forth above is compelling justification for an increased damages number for each violation within the permissible range.

**D.     Injunction and Attorneys Fees and Costs**

Finally, McClatchey seeks an injunction and reasonable attorneys' fees and costs as the Court deems appropriate.

8

### III. WITNESSES (LIABILITY/DAMAGES)

**Valencia McClatchey** (Liability/Damages)
107 Osage Path
Stoystown, PA 15563

**Charles Sheehan** (Liability)
2324 West Cortez
Chicago, Illinois 60622

**Gene Puskar**
(Liability/Damages)
318 Washington Road
Apartment 104
Pittsburgh, PA 15216.

**James Gerberich** (Liability)
7 Evans Drive
Cranbury, New Jersey.

**J. David Ake** (Liability)
345 East 56th
New York, NY 0022.

**George Galt** (Liability)
6611 Melody Lane
Bethesda, MD 20817

### IV. DESIGNATIONS

Plaintiff may read in parts of the deposition testimony of Sheehan, Puskar, Gerberich, Ake, and Galt.  Designations are attached hereto as Exhibit A.

### V. EXHIBITS

Plaintiff's list of exhibits is attached hereto as Exhibit B.

### VI. LEGAL ISSUES

Copyright infringement requires (1) ownership of a copyright and (2) copying of the copyrighted material by the defendant.  World Wrestling Federation Entertainment, Inc. v. Big Dog Holdings, Inc., 280 F.Supp.2d 413, 424 (W.D. Pa. 2003).  The AP has

9

never alleged that Ms. McClatchey does not own the copyright to her End of Serenity photograph. Furthermore, the AP has admitted that it took a photograph of Ms. McClatchey's End of Serenity photograph and transmitted it to its PhotoStream members and subscribers. And, the AP did so without consent from McClatchey.

Liability for contributory copyright infringement requires (1) direct infringement by a primary party; and (2) inducement or materially contributes to the infringing contact; and (3) defendant knows or has reason to know of the direct infringement. Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 125 S. Ct. 2764, 2776 (2005).

The AP's actions support that (1) there was intent by it to induce its members to infringe and (2) that it had the requisite knowledge.

Three elements are required to prove a defendant is vicariously liable for copyright infringement: (1) direct infringement by a primary party, (2) a direct financial benefit to the defendant, and (3) the right and ability to supervise the infringers. Metro-Goldwyn-Mayer Studios v. Grokster Ltd., 380 F.3d 1154, 1164 (9th Cir. 2004).

The AP enjoys a direct financial benefit from its use and distribution of Ms. McClatchey's photograph. Regardless, the "direct financial interest" need only be tied to the operation as a whole, not exclusively to the infringement. See Playboy Enters. v. Webbworld, Inc., 968 F. Supp. 1171, 1177 (D. Tex. 1997); Realsongs v. Gulf Broadcasting Corp., 824 F. Supp. 89 (M.D.La. 1993).

Willfulness depends upon whether the defendant had actual or constructive knowledge that its conduct was infringing. United States Media Corp. v. Edde Entertainment Corp., 1998 U.S. Dist. LEXIS 10985, *61 (S.D.N.Y. 1998). Therefore, Ms. McClatchey need not show that the AP actually knew that its conduct was

10

infringing. See id. Ms. McClatchey may justify a willfulness finding on the basis that the AP acted with "reckless disregard for the copyright holder's rights." Id.

Section 1202(a) of the Digital Millennium Copyright Act ("DMCA") prohibits knowing falsification of copyright management information ("CMI") with the intent to aid copyright infringement. To recover for a violation of § 1202(a), a plaintiff must prove that the defendant who falsifies CMI knows that the CMI is false, and that the defendant provides, distributes, or imports the false CMI with the intent to aid infringement. 17 U.S.C. § 1202(a); see also S. Rep. No. 105-190, at 34-35 (1998); Ward v. Nat'l Geographic Soc'y, 208 F. Supp. 2d 429, 449 (S.D.N.Y. 2002). The AP has admitted that they distributed the McClatchey photograph with the false information that indicated the AP had ownership rights in the photograph.

Section 1202(b) of the DMCA prohibits the intentional removal or alteration of CMI with reasonable grounds to know the removal or alteration will aid infringement. To recover for a violation of § 1202(b), a plaintiff must demonstrate that the defendant intentionally removed or altered CMI knowing, or having reasonable grounds to know, that the removal will aid infringement. 17 U.S.C. § 1202(b). The defendant must remove copyright management information from the "body" of, or area around, plaintiff's work itself. Schiffer Publishing, Ltd. v. Chronicle Books, LLC, 2004 U.S. Dist. LEXIS 23052 (E.D. Pa. 2004).

Section 1202(b) specifically prohibits exactly what the AP did here - removing CMI from the body of an image and transfer it digitally. The AP admits that it cropped off portions of the top, bottom, left, and right of the McClatchey End of Serenity photograph.

11

"Copyright management information" can fall under eight separate categories, including "(1) The title and other information identifying the work, including the information set forth on a notice of copyright. (2) The name of, and other identifying information about, the author of a work. (3) The name of, and other identifying information about the copyright owner of the work, including the information set forth on the notice of copyright." 17 U.S.C. 1202(c). Ms. McClatchey provided her name and the date in the lower right hand corner of the photograph, and the title of the photograph in the upper left, in the area of blue sky. Her name is sufficient information to fall under 17 U.S.C. 1202(c)(2) or 17 U.S.C. 1202(c)(3). The title is sufficient information to fall under 17 U.S.C. 1202(c)(1).

The DMCA protects "copyright management performed by the technological measures of automated systems." IQ Group, Ltd. v. Weisner Pub., LLC, 409 F.Supp.2d 587, 597 (D.N.J. 2006). "The purpose of CMI is to facilitate licensing of copyright for use on the Internet, and to discourage piracy." Id. at 596, quoting S.Rep. No. 105-190 (1998). "Under the bill, CMI includes such items as the title of the work, the author, the copyright owner, and in some instances, the writer, performer, and director. CMI need not be in digital form, but CMI in digital form is expressly included." Id. (Emphasis added).

Section 1202(b)(2) requires that, "No person shall…distribute…copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law[.]" Thus, the AP must possess actual knowledge of the unauthorized change. See Gordon v. Nextel Communications and Mullen Advert., 345 F.3d 922, 926 (6th Cir. 2003).

Fair use as a defense to copyright infringement allows someone to "use the copyrighted material in a <u>reasonable</u> manner without [the copyright owner's] consent." <u>Maxtone-Graham</u> v. <u>Burtchaell</u>, 803 F.2d 1253, 1254 (2nd Cir. 1986) (emphasis added). It serves as an affirmative defense upon which the alleged infringer, the AP, has the burden of proof. <u>Video Pipeline, Inc.</u> v. <u>Buena Vista Home Entm't, Inc.</u>, 342 F.3d 191, 197 (3d Cir. 2004); see also, <u>Campbell</u> v. <u>Acuff-Rose Music, Inc.</u>, 510 U.S. 569, 114 S.Ct. 1164, 1177 (1994).

The Copyright Act specifies four non-exhaustive factors that may be taken into account to determine whether the fair use defense is applicable: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. Meeting one factor alone (or even two or three) is not dispositive; all four factors "are to be explored, and the results weighed together, in light of the purposes of copyright." <u>Campbell</u> v. <u>Acuff-Rose Music, Inc.</u>, 510 U.S. 569, 578, 114 S.Ct. 1164, 1177 (1994).

**VII.    <u>EXPERTS</u>**

Neither party has an expert.

Respectfully submitted,

/s/Douglas M. Hall_____
Douglas M. Hall
Kara L. Szpondowski
Niro, Scavone, Haller & Niro
181 West Madison, Suite 4600
Chicago, Illinois  60602-4515
Phone: 312-236-0733
Fax: 312-236-3137
*Attorneys for Valencia M. McClatchey*

John E. Hall
Eckert Seamans Cherin & Mellott, LLC
USX Tower
600 Grant Street, 44th Floor
Pittsburgh, Pennsylvania 15219
Phone: (412) 566-6000
Fax: (412) 566-6099

## **CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that a true copy of the foregoing **PLAINTIFF'S PRETRIAL STATEMENT** was served upon the below listed parties on this 29th day of March 2007.

**By ECF:**    Gayle C. Sproul
         Levine Sullivan Koch & Schultz, LLP
         2112 Walnut St., 3rd Floor
         Philadelphia, PA 19013
         Phone: (215) 988-9778


**By ECF:**    Robert Penchina
         Levine Sullivan Koch & Schultz, LLP
         230 Park Avenue
         Suite 1160
         New York, NY 10169
         Phone: (212) 850-6100
         Fax: (212) 850-6299


            /s/Douglas M. Hall_____