# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| VALENCIA M. MCCLATCHEY, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 05-145J |
| THE ASSOCIATED PRESS, | ) |
| Defendant. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF THE
## MOTION IN LIMINE TO LIMIT PLAINTIFF TO TWO STATUTORY
## DAMAGE AWARDS UNDER THE DIGITAL MILLENNIUM COPYRIGHT ACT

Defendant The Associated Press ("AP") respectfully submits this memorandum of law in support of its motion *in limine* to limit Plaintiff to two statutory damage awards if she is able to prove that AP violated 17 U.S.C. § 1202 of the Digital Millennium Copyright Act (DMCA). The DMCA provides that a prevailing party may "elect to recover an award of statutory damages for each violation of section 1202." 17 U.S.C. § 1203(c)(3)(B). In this case, Plaintiff alleges that AP committed two DMCA violations: (1) AP allegedly removed the copyright management information from Plaintiff's photograph in violation of § 1202(b), and (2) AP allegedly distributed false copyright management information in violation of § 1202(a). Consequently, Plaintiff is entitled to two statutory awards – one for "each violation" – if she is entitled to anything at all. Indeed, even if Plaintiff is correct that a prevailing party is entitled to collect a separate award for each "act of distribution," she still is not entitled to 1,147 awards because AP distributed the photograph to all of its subscribers in one transmission and the Act does not calculate statutory awards by the number of people who received the distribution.

**I.     INTRODUCTION**

Plaintiff Valencia McClatchey photographed the mushroom cloud rising from the crash of Flight 93 in Shanksville, Pennsylvania on September 11, 2001.  One year later, Ms. McClatchey introduced herself to an AP reporter at a memorial service.  After the reporter decided to write an article about the photograph and Ms. McClatchey's experiences since taking the picture, an AP photographer went to Ms. McClatchey's house to snap a photograph to accompany the article.  Ms. McClatchey alleges that she showed the AP photographer a hard copy of the photograph that included a title, date, and certain copyright information.  According to Ms. McClatchey's complaint, AP removed this information from its copy of the photograph and subsequently distributed its copy of the photograph to its subscribers without Ms. McClatchey's copyright information.  The record reflects that AP distributed its copy of the photograph in a single transmission to all subscribers of its PhotoStream service (the service through which AP distributes photographs).

Based on this set of allegations, Ms. McClatchey has asserted two claims under the DMCA.  In her first claim, she alleges that AP committed a violation under § 1202(a), which provides that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement . . . distribute . . . copyright management information that is false." *See* Compl. ¶¶ 48-50 (citing 17 U.S.C. § 1202(a)).  In her second claim, Ms. McClatchey alleges that AP committed a violation under § 1202(b), which prohibits a person from "intentionally remov[ing] . . . any copyright management information." *See* Compl. ¶¶ 55-56 (citing 17 U.S.C. § 1202(b)).  In lieu of seeking her actual damages for these supposed violations – she admittedly suffered no actual injury – Ms. McClatchey has elected to pursue statutory damages under § 1203(c)(3)(B).  *See* Pl.'s Pretrial Stmt. at 8.  In making this election, Ms. McClatchey claims

that she is entitled to an award for "each of the AP's 1,147 *distributions* of the 'End of Serenity' photograph.'" *Id.* (emphasis added). As is demonstrated below, however, Ms. McClatchey's damages theory is wrong as a matter of law. She is not entitled to the windfall award of $2.8 million to $28.6 million that she seeks for a single transmission of a single photograph. At most, she is entitled to two statutory awards.

## II.  ARGUMENT

The DMCA provides that a plaintiff asserting a claim under § 1202 may elect to seek either her actual damages or statutory damages. 17 U.S.C. § 1203(c)(1). Under the statute, a prevailing party may "recover an award of statutory damages for *each violation* of section 1202 in the sum of not less than $2,500 or more than $25,000." § 1203(c)(3)(B) (emphasis added). Section 1202 lists several violations, including "distribut[ing] copyright management information that is false" and "intentionally remov[ing] or alter[ing] any copyright management information." §§ 1202(a)(1), (b)(1). Here, Ms. McClatchey has pled that AP committed two violations of § 1202 by:

1. distributing false copyright management information "in violation of 17 U.S.C. § 1202(a)," Compl. ¶ 50; and
2. removing her copyright management information "in violation of 17 U.S.C. § 1202(b)," *id.* ¶ 56.

Thus, to the extent that she is entitled to any award under the DMCA, she is entitled to two awards – one for "each violation."

Notwithstanding the plain language of the DMCA's statutory damages provision, Ms. McClatchey contends that the DMCA authorizes "statutory damages for each *act* of

3

distribution." Pl.'s Pretrial Stmt. at 8 (emphasis added).[1]  Of course, the DMCA's damages provision says no such thing.  The section provides for a single "award" for "each violation," not for each "act."  *See* § 1203(c)(3)(B).  If Congress had intended to provide a separate statutory award for each "act," it would have explicitly done so.  In fact, in the same subsection of the DMCA, Congress provided for statutory awards calculated per "act" for violations of a *different section* of the Act.  Section 1203(c)(3)(A) states that a prevailing party may "recover an award of statutory damages for *each violation of section 1201* in the sum of not less than $200 or more than $2,500 *per act* of circumvention, device, product, component, offer, or performance of service, as the court considers just."  17 U.S.C. § 1203(c)(3)(A) (emphasis added).  If "each violation" meant "each act" as Ms. McClatchey asserts, Congress would not have needed to state that damages are awarded "per act" for § 1201 violations; that language would have been superfluous because the same sentence expressly provides for "an award for each violation of section 1201."  *See United States v. Cooper*, 396 F.3d 308, 312 (3d Cir. 2005) ("It is a well known canon of statutory construction that courts should construe statutory language to avoid interpretations that would render any phrase superfluous.")

    The distinction between the number of statutory damage awards available for violations of the two sections makes sense.  Section 1201 establishes a cause of action against people who seek to circumvent copyright protection systems by, for example, selling "any technology, product, service, device, component, or part thereof" that is used to impair technological

---

[1] Even if Ms. McClatchey's interpretation of the statute were correct, the record shows that she would be entitled to only two statutory awards if she prevails on her claim that AP distributed false copyright management information.  In discovery, Ms. McClatchey has adduced evidence of only two "acts of distribution":  (1) AP's act of transmitting the photograph to its PhotoStream subscribers (which occurred in a single transmission from AP), and (2) its act of distributing the photograph to AOL through its PhotoArchive.

measures used to protect the rights of a copyright owner. *E.g.*, § 1201(b). In such cases, the circumvention enables other people to infringe copyrights en masse, thus multiplying the potential harm not only to the plaintiff but also to other copyright owners whose technological measures might be at risk. In light of the exponentially greater harm that could result from the circumvention of technological measures designed to protect copyrights, Congress authorized courts to award a separate award for each "act" of circumvention.

Ms. McClatchey's DMCA damages theory not only ignores the Act's plain language and its distinction between the two types of DMCA violations, it runs afoul of the law governing traditional copyright damages. As Ms. McClatchey's pretrial statement suggests, traditional copyright principles inform the interpretation of the DMCA's damages provisions. *See* Pl.'s Pretrial Stmt. at 8. As is explained in detail in the Memorandum of Law supporting AP's Motion in Limine to Limit Plaintiff to One Statutory Damage Award under the Copyright Act, a prevailing plaintiff is entitled to one statutory award "'no matter how many acts of infringement are involved.'" *Derek Andrew, Inc. v. Poof Apparel Corp.*, 2006 WL 3791371, at *11 (W.D. Wash. Dec. 22, 2006) (citation omitted). Indeed, a single transmission to multiple recipients does not constitute a separate copyright violation for purposes of calculating statutory damages under the Copyright Act. *See Bouchat v. Champion Prods., Inc.*, 327 F. Supp. 2d 537, 551-52 (D. Md. 2003). These principles necessarily inform the interpretation of the damages provision governing claims under § 1202, which protects a copyright owner's single copyrighted work.

In her pretrial statement, Ms. McClatchey offers two cites to support her position that she is entitled to separate awards for each "act," one case and one treatise. *See* Pl.'s Pretrial Stmt. at 8. Neither supports her view. The case, *Sony Computer Entertainment America, Inc. v. Filipiak*, 406 F. Supp. 2d 1068 (N.D. Cal. 2005) (cited in Pl.'s Pretrial Statement at 8), addressed a

5

violation of § 1201, not § 1202. Specifically, the plaintiff in that case "sold devices used to . . . circumvent copyright protection mechanisms" in certain videogames. *Id.* at 1070. The court applied the damages provision governing statutory awards for § 1201 violations and awarded the plaintiff "a separate award of statutory damages for each device sold." *Id.* at 1074 (citing § 1203(c)(3)(A), which permits awards "*per* act of circumvention, *device*, product, component, offer, or performance of service") (emphasis added). Because *Sony Computer* dealt with a different statutory section with different language and a different measure of statutory awards, the case simply offers no support for Ms. McClatchey's position.

The treatise cited by Ms. McClatchey – 3 *Nimmer on Copyright* § 12A.13 (cited in Pl.'s Pretrial Statement at 8) – offers her no support either. That treatise simply parrots the language of the statute, stating that a prevailing party may collect awards "'for each violation of section 1202,'" and for § 1201 violations may collect a separate damage award "'per act of circumvention, device, product, component, offer, or performance of service.'" 3 NIMMER ON COPYRIGHT § 12A.13[B] (quoting 17 U.S.C. §§ 1203(c)(3)(A), (B)).

Simply put, Ms. McClatchey's theory that she is entitled to separate statutory awards for "each act" is contradicted by the DMCA's language and structure, flies in the face of established principles governing copyright damages, and is not even supported by the two authorities on which she relies. The bottom line is that if Ms. McClatchey prevails on her DMCA claims, she is entitled to collect a single statutory award for "each violation."

Nevertheless, even if Ms. McClatchey's interpretation of the DMCA is correct, she still is not entitled to 1,147 statutory awards. *See* Pl.'s Pretrial Stmt. at 8. Ms. McClatchey simply alleges that 1,147 different AP subscribers *received* the photograph through AP's distribution, not that AP made 1,147 separate distributions. Here, the "act of distribution" was AP's single

6

act of distributing the photograph to *all* AP PhotoStream subscribers. Indeed, the plain meaning of "distribution" contemplates that an object is given to multiple recipients. *See, e.g.*, THE NEW OXFORD AMERICAN DICTIONARY 496 (2001) (defining "distribution" as the "the action of sharing something out among a number of recipients") (attached hereto as Appendix A). Moreover, this plain meaning is consistent with traditional copyright law, which protects a copyright owner's right to "distribute *copies* . . . of the copyrighted work to the *public*" and thus contemplates a distribution of the work to many recipients. 17 U.S.C. § 106(3) (emphasis added); *see, e.g.*, 17 U.S.C. § 101 (defining "publication" as "the distribution of *copies* or phonorecords of a work to the *public* by sale or other transfer of ownership, or by rental, lease, or lending") (emphasis added); *Warner Bros. Records, Inc. v. Payne*, 2006 WL 2844415, at *3 (W.D. Tex. July 17, 2006) ("'Distribute' is not defined in the Copyright Act, but the Supreme Court has equated the term with 'publication,' which is defined under the Act."); *see also Harper & Row Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 552 (1985) (explaining that the "right to distribute copies" under 17 U.S.C. § 106(3) is "'the right to control the first *public* distribution'") (citation omitted) (emphasis added). In this case, AP did not make 1,147 distributions. It distributed the photograph to all of its 1,147 PhotoStream subscribers in one act. Thus, even under Ms. McClatchey's preferred interpretation, she is not entitled to the number of awards she now seeks.

## CONCLUSION

For the foregoing reasons, AP respectfully requests that the Court limit Plaintiff to a total of two statutory awards if she prevails on both of her DMCA claims.

Dated: May 4, 2007

Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

By: /s/ Robert Penchina

Robert Penchina (*Pro Hac Vice*)
321 West 44th Street, Suite 510
New York, NY 10036
(212) 850-6100
(212) 850-6299 (Fax)

Gayle C. Sproul (I.D. No. 38833)
Michael Berry, I.D. No. 86351 (*Pro Hac Vice*)
2112 Walnut Street, Third Floor
Philadelphia, Pennsylvania 19103
(215) 988-9778
(215) 988-9750 (Fax)

*Attorneys for The Associated Press*