# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VALENCIA M. MCCLATCHEY, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 05-145J |
| v. | ) |
| THE ASSOCIATED PRESS, | ) **JURY TRIAL DEMANDED** |
| Defendant. | ) |

## MS. MCCLATCHEY'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CERTAIN DOCUMENTS AND TESTIMONY REGARDING AOL

Plaintiff Valencia M. McClatchey ("Ms. McClatchey" or "Plaintiff") hereby responds to Associated Press's ("AP") motion *in limine* to exclude certain documents and testimony regarding AOL. AP argues that AOL's use of the photograph was a fair use, and that as such, any documents or testimony regarding this use does not relate to claims made against AP. This is patently false. AOL's use of the photograph directly impacts Ms. McClatchey's claim that AP distributed the photograph to its subscribers, as well as Ms. McClatchey's claim that AP is contributorily and vicariously liable for copyright infringement. Therefore, Ms. McClatchey requests that this Court deny AP's motion *in limine*.

### I.   INTRODUCTION

After AP's mass distribution of Ms. McClatchey's "End of Serenity" photograph, at least some of AP's subscribers, including AOL, published the photograph. Later, through correspondence, Ms. McClatchey found out from AOL's attorneys that AOL had received the photograph from AP. (Exhibit A). AP has also supplied through documentation, proof that AOL downloaded the photo via its access to AP's photo archive. (Exhibit B). AP has already filed a motion for summary judgment that Ms. McClatchey can not prove direct infringement by these

1

parties, including AOL, and sought dismissal of Ms. McClatchey's claims that AP is contributorily and vicariously liable for the infringement of its subscribers. That motion was denied by this Court.

Now, AP argues that even if there is direct infringement by AOL, it is fair use, and as such, should not be admitted into evidence at trial. However, fair use is a mixed question of law and fact, more suitable for a jury to decide, rather than in the context of a motion *in limine*. (Indeed, AP could have raised this issue in its motion for summary judgment, yet did not do so.) In fact, AP is making similar arguments here as in its own fair use claims, which were denied on summary judgment. Unsurprisingly, Ms. McClatchey does not agree that AOL's use was a fair use, for many of the reasons previously laid out in her opposition to AP's motion for summary judgment. In essence, AP is attempting to prevent Ms. McClatchey from submitting evidence that AP is liable for copyright infringement, whether direct, contributorily and vicariously. Therefore, Ms. McClatchey requests that this Court deny AP's motion *in limine*.

## II.   ARGUMENT

### A.   Contributory and Vicarious Infringement Require a Showing of Direct Infringement

Ms. McClatchey seeks to submit evidence that AOL directly infringed her photograph after receiving the photograph through AP's mass distribution. Due to and based on this use, Ms. McClatchey contends that AP is contributorily liable and vicariously liable for copyright infringement. Both liability for contributory copyright infringement and liability for vicarious copyright infringement require direct infringement by a primary party. Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 125 S. Ct. 2764, 2776 (2005); Metro-Goldwyn-Mayer Studios v. Grokster Ltd., 380 F.3d 1154, 1164 (9th Cir. 2004). Thus, McClatchey must prove that direct infringement. Without testimony and documents showing that direct infringement on the part of

AOL, Ms. McClatchey will not be able to prove her case. AP now seeks an order that such evidence be excluded, despite its relevance to Ms. McClatchey's claims. The weight of that evidence is for the jury to decide, not for AP to decide.

### B. AOL's Use of the Photograph is Not Fair Use

Ms. McClatchey has laid out extensive analysis on legal standards for fair use in her opposition to AP's motion for summary judgment, and will attempt to not retread on covered ground. Fair use as a defense to copyright infringement allows someone to "use the copyrighted material in a <u>reasonable</u> manner without [the copyright owner's] consent." Maxtone-Graham v. Burtchaell, 803 F.2d 1253, 1254 (2nd Cir. 1986) (emphasis added). It serves as an affirmative defense upon which the alleged infringer has the burden of proof. Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 342 F.3d 191, 197 (3d Cir. 2004); see also, Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 114 S.Ct. 1164, 1177 (1994). Fair use is a mixed question of law and fact, Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 560 (1985), which means that it "may be resolved on summary judgment if a reasonable trier of fact could reach only one conclusion"--but not otherwise. Narell v. Freeman, 872 F.2d 907, 910 (9th Cir. 1989). AP has not met its burden with regard to AOL's infringement. At best, there are sufficient factual questions which a jury should resolve.

### 1. AOL's Use is Commercial and Non-Transformative

The first fair use factor is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). AP claims AOL's use of the photograph was in connection with news reporting, and thus presumably, non-commercial. While the preamble to Section 107 enumerates certain purposes that are more appropriate for a finding of fair use, including news reporting, it does so only to

3

provide examples and not to create a presumption that all news articles are fair use. See Harper, 471 U.S. at 561 ("The issue is not what constitutes 'news,' but whether a claim of news reporting is a valid fair use defense to an infringement of copyrightable expression."). The article was published by AOL in August 2003, nearly two years after the actual event. The article itself was specifically directed toward the hijackers' actions while on the Flight 93, and information available in the plane's black box. There is no reason why Ms. McClatchey's copyrighted photograph was necessary to accompany such an article. Additionally, AOL is a commercial web site, which placed Ms. McClatchey's photograph on its front page in order to draw interest to an article. AOL touts itself as "a leading Web-based business, with the second largest Web network in the United States, the third largest online advertising network and the leading Instant Messaging network." (Exhibit C). Any commercial use, such as is evident here, tends to cut against a fair use defense. Lish v. Harper's Magazine Found., 807 F.Supp. 1090, 1101 (S.D.N.Y. 1992).

AP also argues that AOL's publication of the photograph is transformative, because it is a "thumbnail." For this analysis, one must determine i.e. "whether the new work merely 'supercede[s] the objects' of the original creation…or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." Ringgold v. Black Entertainment Television, Inc., 126 F.3d 70, 79 (2nd Cir. 1997). For a use to be considered transformative, "there must be real, substantial condensation of the materials, and intellectual labor and judgment bestowed thereon; and not merely the facile use of the scissors; or extracts of the essential parts, constituting the chief value of the original work." Los Angeles News Service v. CBS Broadcasting, Inc., 305 F.3d 924, 939 (9th Cir. 2002) quoting Folsom v. Marsh, 9 F. Cas. 342, 345 (C.C.D. Mass 1841); see also, Castle Rock Entertainment, Inc. v.

4

Carol Publishing Group, Inc., 150 F.3d 132, 142 (2nd Cir. 1998) (work is transformative when copyrighted material is "transformed in the creation of new information, new aesthetics, new insights and understandings."). "When the secondary use involves such an untransformed duplication of the original, it has little or no value that does not exist in the original work." Robinson v. Random House, Inc. 877 F.Supp 830, 841 (S.D.N.Y. 1995).

AP continually uses the word "thumbnail" to describe AOL's publication of Ms. McClatchey's copyrighted photograph. However, AOL's publication is much larger than a "thumbnail," is featured on the front page of its web site, and is distinguishable from the situation in Kelly v. Arriba Soft Corp., 336 F.3d 811 (9th Cir. 2003). In Kelly, the images were "much smaller, lower-resolution images that served an entirely different function than Kelly's original images." Id. at 818. There, the defendants operated a search engine, which crawled web sites in order to provide an index of images available on the Internet. Id. That use was "unrelated to any aesthetic purpose." Id. In fact, the defendants in Kelly used the thumbnails available in the index to send users to other web sites, where they could find the full sized image. Id. AOL's use is clearly distinguishable. It was not merely providing an index of images, but luring visitors to its web site with use of the image, which is a normal sized image for use on a front page of an internet site. (Indeed, it would be impossible for AOL to use a full sized image on its home page, because it would take up the entire page.) Further, AP has presented no evidence that AOL's use of the photograph was lower-resolution or that it did not provide a larger view of the image within the article, or through clicking on the photograph.

### 2. The Photograph is Creative in Nature

The second fair use factor to consider is "the nature of the copyrighted work." 17 U.S.C. 107(2). Legal authority demonstrates that for photographs such as Ms. McClatchey's, the second

factor generally weighs in favor of the photographer. "Although photographs are often 'factual or informational in nature,' the art of photography has generally been deemed sufficiently creative to make the second fair use factor weigh in favor of photographer-plaintiffs." Baraban v. Time Warner, Inc., 2000 U.S. Dist. LEXIS 4447, *11 (S.D.N.Y. 2000) quoting Strauss v. Hearst Corp., 8 U.S.P.Q.2d 1832, 1836 (S.D.N.Y. 1988); Kelly, 336 F.3d at 820 (weighing second factor in favor of photographer); Greenberg v. National Geographic Society, 1999 U.S. Dist. LEXIS 13874, *27-28 (S.D. Fla. 1999) (weighing second factor in favor of photographer); Psihoyos v. Fuente, 1998 U.S. Dist. LEXIS 9192, * (S.D.N.Y. 1998) (weighing second factor in favor of photographer); Mathieson v. Associated Press, 23 U.S.P.Q.2d 1685, 1691 (S.D.N.Y. 1992) (weighing second factor in favor of photographer).

AP argues that simply because Ms. McClatchey "grabbed her camera, ran onto her porch and 'I didn't even aim…'" that her photograph has less aesthetic value and creativity. Nonsense. Joe Rosenthal, who took the famous photograph of the flag-raising at Iwo Jima, stated the following about that photograph in an AP article: "Out of the corner of my eye, as I had turned toward Genaust, I had seen the men start the flag up. I swung my camera, and shot the scene." (Exhibit D). No one would argue that his photograph lacked creativity or aesthetic value because he merely "swung [his] camera."

### 3.    AOL Used the Entire Photograph

The third fair use factor considers "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. 107(3). In analyzing this factor, both the quantity and the quality and importance of the material used must be considered. Campbell, 510 U.S. at 587; see Harper, 471 U.S. at 564-565 (taking approximately 300 words out of a memoir weighed against fair use because what was taken "was essentially the heart of the

book."). While "wholesale copying does not preclude fair use per se," copying an entire work "militates against a finding of fair use." Hustler, 796 F.2d at 1155. In general, an infringing use does not constitute fair use if the entire work is reproduced. Inifinity Broadcase Corp. v. Kirkwood, 150 F.3d 104, 109 (2nd Cir. 1998); Sega Enters. Ltd. v. Maphia, 857 F.Supp. 679, 687 (N.D. Cal. 1994). Here, the AOL copied the entire work.

"[T]he mere fact that the photo depicts a newsworthy item does not justify copying it entirely without permission." Psihoyo, 1998 U.S. Dist. LEXIS 9192 at *13; see also Greenberg, 1999 U.S. Dist. LEXIS 13874 at *31 (finding against fair use on the third factor, where "[t]he reprint…though cropped, is a substantial portion of Plaintiffs' copyrighted photograph."); Batesville Services, Inc. v. Funeral Depot, Inc., 2004 U.S. Dist. LEXIS 24336, *25 (S.D. Ind. 2004) (copying photographs as a whole weighs against fair use.) Furthermore, in cases where courts have found copying an entire photograph to be reasonable, the facts have vastly differed compared with those in the instant case. See Baraban, 2000 U.S. Dist. LEXIS 4447 at *13 (photograph shrunk to less than one quarter of its original size and in black and white); Nunez, 235 F.3d at 22 ("the [pornographic] pictures were the story"); Mathieson, 1992 WL 164447, at *8 (the two photographs at issue were "components of a larger compilation of photos which constitue[d] a 'single' work").

In Kelly, the court found that "It was necessary for Arriba to copy the entire image to allow users to recognize the image and decide whether to pursue more information about the image or the originating web site." 336 F.3d at 821. That is clearly not the case here. AOL need not have put the photograph on its front page, its users need not view the photograph to decide whether or not to read the article. Further, the smaller size it used was necessary for the layout of the page, and it used an exact reproduction of the photograph, color and all.

7

### 4. AOL's Use Could Effect the Market for the Copyrighted Work

The final factor to consider is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. 107(4). Key to the fourth factor is "whether unrestricted and widespread conduct of the sort engaged in by the defendant…would result in a substantially adverse impact on the potential market for the original." Campbell, 510 U.S. at 590. The concern is "whether the secondary use usurps or substitutes for the market of the original work." Castle Rock, 150 F.3d at 145 ; see Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc., 166 F.3d 65, 73 (2nd Cir. 1999); compare with Haberman v. Hustler Magazine, Inc., 626 F.Supp. 201 (D. Mass 1986) (art postcards versus their depiction in an adult magazine are not the same market). Moreover, Ms. McClatchey doesn't need to show a decline in the number of licensing requests for her photo to establish harm. Psihoyo at *14; Ringgold, 126 F.3d at 81. The fair use doctrine has always precluded a use that "supersedes the use of the original." Harper, 471 U.S. at 5509, citing Folsom, 9 F. Cas. at 344-345. Widespread use such as that by the AOL could diminish the potential market for McClatchey's work. AOL's posting of the photograph, with no restrictions on who can copy and paste it onto their web site diminish Ms. McClatchey's right to control the distribution of her copyrighted work.

### C. Documents and Testimony on AOL's Use Are Necessary to Prove McClatchey's Direct Infringement Claim Against AP

Ms. McClatchey contends that AP distributed the photograph to its 1,147 subscribers without restriction. Communications Ms. McClatchey had with AOL's attorney confirm that AOL received the photograph from AP, (Exhibit A), and assist Ms. McClatchey in proving her direct infringement case. AP has also supplied through documentation, proof that AOL

downloaded the photo via its access to AP's photo archive. (Exhibit B). This type of information is necessary for Ms. McClatchey to prove that AP violated the Copyright Act by distributing and reproducing her copyrighted photograph.

## III.  CONCLUSION

Even in the context of summary judgment, which this is not, fair use "may be resolved on summary judgment if a reasonable trier of fact could reach only one conclusion"--but not otherwise.  Narell v. Freeman, 872 F.2d 907, 910 (9th Cir. 1989).  Whether AOL's use of the photograph is fair use does not lead to a single conclusion, and it is more appropriate for a jury to determine.  Further, Ms. McClatchey needs to introduce such documents and testimony in support of her claims of direct infringement, contributory copyright infringement, and vicarious copyright infringement against AP.  For these reasons, Ms. McClatchey requests that this Court deny AP's motion *in limine*.

> Respectfully submitted,
>
> /s/Douglas M. Hall
> Paul K. Vickrey
> Douglas M. Hall
> Kara L. Szpondowski
> Niro, Scavone, Haller & Niro
> 181 West Madison, Suite 4600
> Chicago, Illinois  60602-4515
> Phone: 312-236-0733
> Fax: 312-236-3137
> *Attorneys for Valencia M. McClatchey*
>
> John E. Hall
> Eckert Seamans Cherin & Mellott, LLC
> USX Tower
> 600 Grant Street, 44th Floor
> Pittsburgh, Pennsylvania 15219
> Phone:  (412) 566-6000
> Fax: (412) 566-6099

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true copy of the foregoing **MS. MCCLATCHEY'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CERTAIN DOCUMENTS AND TESTIMONY REGARDING AOL** was served upon the below listed parties on this 11th day of May 2007.

**By ECF:**        Gayle C. Sproul
Levine Sullivan Koch & Schultz, LLP
2112 Walnut St., 3rd Floor
Philadelphia, PA 19013
Phone: (215) 988-9778

**By ECF:**        Robert Penchina
Levine Sullivan Koch & Schultz, LLP
230 Park Avenue
Suite 1160
New York, NY 10169
Phone: (212) 850-6100
Fax: (212) 850-6299

                                /s/Douglas M. Hall_____