# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VALENCIA M. MCCLATCHEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 05-00145J |
| v. ) | The Honorable Terence F. McVerry |
| ) | |
| THE ASSOCIATED PRESS, ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendant. ) | |
| _____) | |

### MS. MCCLATCHEY'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO LIMIT MS. MCCLATCHEY TO TWO STATUTORY DAMAGE AWARDS UNDER THE DIGITAL MILLENNIUM COPYRIGHT ACT

**I.   Introduction**

Valencia M. McClatchey ("Ms. McClatchey") claims that Defendant has violated both 17 U.S.C. § 1202(a) and (b) of the Digital Millennium Copyright Act ("DMCA") by its unauthorized use, distribution, and attribution of her copyrighted "End of Serenity" photograph.  17 U.S.C. § 1202(a) prohibits knowingly providing copyright information that is false or distributing copyright information that is false.  17 U.S.C. § 1202(b) prohibits intentionally removing or altering copyright management information, and distributing knowing that such copyright information has been removed and/or altered and/or is false.  Contrary to Defendant's assertions, the DMCA is separate and distinct from the Copyright Act, 17 U.S.C. § 504 and, accordingly, the statutory damages warranted under the DMCA are likewise separate and distinct.

Defendant's apparent position is that because it distributed -- published -- the photograph to 1,147 separate news organizations in one fell swoop (rather than days, hours, or even seconds apart), only a single violation of the DMCA occurred.  This

contention is illogical and at odds with the purpose of the Act. Indeed, Defendant's construction would encourage violators to send the altered material to the maximum number of recipients at the same time in order to minimize their penalty under the Act.

Defendant also seeks to import -- without any support whatsoever -- the single recovery provision of the Copyright Act, 17 U.S.C. § 504(c), into the DMCA, which has no limitation.

For the reasons stated below, Defendant's motion should be denied.

## II.  Brief Background

Ms. McClatchey submits that Defendant has violated 17 U.S.C. § 1202(a) and (b) through the following acts: (1) removing Ms. McClatchey's copyright management information without her permission; (2) distributing electronically her "End of Serenity" photograph without her copyright management information to at least 1,147 news organizations; and (3) claiming, without justification, that Defendant was the owner of the "End of Serenity" photograph and that Ms. McClatchey was an Associated Press "stringer."

Statutory damages under the 17 U.S.C. § 1202(a) and (b) of the DMCA are governed by 17 U.S.C. § 1203(c)(3)(B). In particular, the plain reading of 17 U.S.C. § 1203(c)(3)(B) authorizes statutory damages for <u>each</u> act of distribution. It states, "[a]t any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages **for each violation** of section 1202 in the sum of not less than $2,500 or more than $25,000." 17 U.S.C. § 1203(c)(3)(B)(emphasis added). Ms. McClatchey alleges that Defendant has violated sections 1202(a) and (b) by distributing, without permission, false copyright information regarding the "End of Serenity"

photograph at least 1,147 times. Under the plain reading of the statute, each of those distributions is a separate violation for which statutory damages can be awarded.

Thus, Ms. McClatchey asks this Court to deny Defendant's motion in limine to limit her to two statutory damage awards under the DMCA. Ms. McClatchey asks this Court for an order that states she can recover statutory damages under the DMCA for each of the 1,147 violations by Defendant.

### III. The Plain Language, Legal Authority, Statutory History, and Stated Goals of the DMCA All Support Ms. McClatchey's Construction of 17 U.S.C. § 1203(c)(3)(B) to Include Multiple Awards for each Distribution by Defendant

A copyright owner's right to protect against unauthorized access, provided under DMCA, is a right separate and distinct from the right to protect against violations of exclusive copyright rights such as reproduction and distribution. Lexmark Intern., Inc. v. Static Control Components, Inc., 253 F. Supp. 2d 943 (E.D. Ky 2003). It is undisputed that Ms. McClatchey's claims under the DMCA are separate from her claims under traditional copyright law. And, as set forth below, the statutory history, stated goals, plain language, and legal authority of the DMCA all support Ms. McClatchey's construction of 17 U.S.C. § 1203(c)(3)(B) to include multiple awards for each distribution of her photograph by Defendant.

#### a. The Plain Language of 17 U.S.C. § 1203(c)(3)(B) Supports Ms. McClatchey's Construction

17 U.S.C. § 1203(c)(3)(B) authorizes statutory damages for <u>each</u> act of distribution. It states, "[a]t any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages *for each violation* of section 1202 in the sum of not less than $2,500 or more than $25,000." 17 U.S.C. § 1203(c)(3)(B) (emphasis added). A "violation" of 17 U.S.C. § 1203(c)(3)(B) involves

3

distributing false copyright information; Defendant distributed false copyright information to 1,147 separate entities. (See Defendant's Brief, at p. 7).

The leading treatise in this area, *Nimmer on Copyright*, <u>confirms</u> Ms. McClatchey's reading of the statutory language that multiple awards are warranted for multiple distributions of the same work. Nimmer states: "[f]or violations regarding copyright management information, the statute sets the figure between $2,500 and $25,000. **Multiple awards lie here for 'each violation of section 1202.'**" (Exhibit A, *Nimmer on Copyright* § 12A.13 (emphasis added)). Defendant's statement that *Nimmer* simply "parrots" the language of the statute is flat wrong. (Defendant's Brief, at p. 6). And, not surprisingly, Defendant has cited no authority to contradict *Nimmer*.

Instead, Defendant urges this Court to import the "single recovery" damages limitation of the Copyright Act, 17 U.S.C. § 504(c), into the statutory damages provision of the DMCA, 17 U.S.C. § 1203(c)(3)(B). There is no support for such an importation; indeed, an examination of the differences in the statutory language undermines Defendant's construction. 17 U.S.C. § 504(c) does not contemplate statutory damages for each violation, but expressly limits damages to ***a single award "for all infringements*** involved in the action, with respect to any one work, for which any one infringer is liable individually." (emphasis added). There is no such limiting language in 17 U.S.C. § 1203(c)(3)(B).

### b.  The Legal Authority Supports Mrs. McClatchey's Construction

In <u>Sony Computer Entertainment America</u> v. <u>Filipiak</u>, 406 F. Supp. 2d 1068 (N.D. Cal. 2005), the Northern District of California was asked to decide whether multiple awards were available pursuant to 17 U.S.C. § 1203(c)(3)(A) for violations of DMCA §

4

1201. The words used in 17 U.S.C. § 1203(c)(3)(A) are slightly different than the words used in 17 U.S.C. § 1203(c)(3)(B), but both include language apportioning damages for "each violation". Specifically, beyond apportioning damages for each violation, 17 U.S.C. § 1203(c)(3)(A) includes the additional language "per act of circumvention, device, product, component, offer, or performance of service."

The Sony court concluded that multiple awards were permissible under the statutory language. The Sony court held:

> The Court concludes that § 1203(c)(3)(A) authorizes a separate award of statutory damages for each device sold. See DirecTV, Inc. v. Hendrix, 2005 U.S. Dist. LEXIS 17348, 2005 WL 757562 (N.D. Cal.) at *5-6 (calculating statutory damages under the Federal Communications Act by multiplying the number of illegal theft devices sold by the statutory amount).

Id. at 1074. The only case cited by the Sony court, DirecTV, Inc. v. Hendrix, 2005 U.S. Dist. LEXIS 17348, 2005 WL 757562 (N.D. Cal. 2005)(attached hereto as Exhibit B), involves a statute that does not include the additional language of 17 U.S.C. § 1203(c)(3)(A), but in fact includes the same relevant language as 17 U.S.C. § 1203(c)(3)(B), i.e., an award of damages for each violation.

      i.      **The DirecTV Line of Cases Supports a Construction of Multiple Awards**

The DirecTV case cited by the Sony court as authority for multiple awards involves a statute that has the same relevant language as 17 U.S.C. § 1203(c)(3)(B), the statute at issue in this case. DirecTV, Inc., 2005 U.S. Dist. LEXIS 17348, at *5-6. In DirecTV, the district court was asked to decide whether multiple awards should lie for violations of 47 U.S.C. § 605 (attached hereto as Exhibit C), which prohibits pirating or intercepting satellite transmissions. Id. DirecTV accused an individual defendant of purchasing over 200 signal theft devices and re-selling the devices to others. DirecTV

5

was seeking statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C). The language of 47 U.S.C. § 605(e)(3)(C) is strikingly similar to the language of 17 U.S.C. § 1203(c)(3)(B):

> *17 U.S.C. § 1203(c)(3)(B)* states, "a complaining party may elect to recover an award of statutory damages <u>for each violation</u> of section 1202 in the sum of not less than $2,500 or more than $25,000."

> *47 U.S.C. § 605(e)(3)(C)(i)(II)* states, "<u>for each violation</u> of paragraph (4) of this subsection involved in the action an aggrieved party may receive statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just."

The <u>DirecTV</u> court concluded that multiple awards were applicable under the statute and cited numerous other cases reaching the same conclusion:

> Every court that has addressed damages under this section has awarded the statutory minimum of $10,000 ***per device***. The only variance lies in whether the courts assume one of the devices was possessed for personal use and thus not included in the $10,000 per device assessment.

<u>Id.</u>, *citing*, <u>Cablevision of S. Conn.</u> v. <u>Smith</u>, 141 F. Supp. 2d 277, 287 (D. Conn. 2001) ("Smith is liable for damages in the amount of $10,000 to $100,000 ***per violation of section 605(e)(4), i.e., per device sold or distributed.***"); <u>DirecTV, Inc.</u> v. <u>McDougall</u>, 2004 U.S. Dist. LEXIS 23013, at *14 (W.D. Tex. 2004) (wherein the court held there were ***eight awards for eight violations***). <u>DirecTV, Inc.</u> v. <u>Adkins</u>, 320 F. Supp. 2d 474, 477 (W.D. Va. 2004) (granting DirecTV an award of $10,000 ***per device*** for a total award of $2,050,000 resulting from defendant's purchase, use, and resale of twenty-one

6

devices in violation of § 605(e)(4)); DirecTV, Inc. v. Naegle, SACV 03-818-JVS (C.D.Cal Oct. 27, 2003) (granting default judgment in the amount of $450,000 resulting from defendants *forty-five violations*); DirecTV, Inc. v. McGreevey, SACV 03-1103-JVS (C.D.Cal. Oct. 28, 2003) (granting default judgment in the amount of $220,000 resulting from defendant's *twenty-two violations*);  see also: Top Rank, Inc. v. Ortiz, 2003 WL 21143072 (S.D.N.Y. 2003)(the court determined that statutory damages against a barber shop that intercepted and broadcast a pay-per-view event should be calculated based on the number of persons watching even though there was only one broadcast).

The DirecTV case, and the cases cited therein, all analyzed the same statutory language at issue here: "for each violation".  The DirecTV line of cases all concluded that the "for each violation" language means that multiple statutory damage awards lie for each device or distribution.  And the Sony court followed the DirecTV line of cases to address its analysis of 17 U.S.C. § 1203(c)(3)(A).  Without question, the DirecTV line of cases is even more applicable to 17 U.S.C. § 1203(c)(3)(B) because of the similarity of the language between the two statutes analyzed.

Moreover, the stated purpose of the statutes in this case and the DirecTV cases is the same:  to discourage piracy.  The DirecTV cases involved a statute prohibiting piracy of satellite transmissions.  The same is true of the DMCA: "The purpose of CMI (copyright management information) is to facilitate licensing of copyright for use on the Internet, and *to discourage piracy*."   IQ Group, Ltd. v. Weisner Pub., LLC, 409 F. Supp. 2d 587, 597 (D.N.J. 2006), *quoting*, Senate Report No. 105-190 (1998).

Defendant does not mention the DirecTV cases, and cites no legal authority to support its proposed construction of 17 U.S.C. § 1203(c)(3)(B).  Nor does Defendant

7

cite any legal authority construing a statute with the same language as 17 U.S.C. § 1203(c)(3)(B). Instead, Defendant's authority is limited to cases which interpret the original Copyright Act. As addressed above, however, the Copyright Act -- unlike the DMCA -- contains an express damages limitation of a single recovery for multiple infringements by the same party of the same work. There is no language in 17 U.S.C. § 1203(c)(3)(B) which limits multiple violations to a single award. To the contrary, 17 U.S.C. § 1203(c)(3)(B) specifically calls for multiple awards for "each violation", just the same as the anti-piracy of satellite transmission statute, 47 U.S.C. § 605(e)(3)(C)(i)(II).

      c.      **The Statutory History and Stated Goals of the DMCA Support Ms. McClatchey's Construction**

Ms. McClatchey's construction of 17 U.S.C. § 1203(c)(3)(B) is consistent with the stated goals of the DMCA. The DMCA protects "copyright management performed by the technological measures of automated systems." IQ Group, Ltd., 409 F. Supp. 2d at 597. "The purpose of CMI (copyright management information) is to facilitate licensing of copyright for use on the Internet, and to discourage piracy." Id. at 596, *quoting*, Senate Report No. 105-190 (1998).

Several of the factors the Court can consider in determining the amount of damages for each violation within the range of $2,500 and $25,000 are: revenues lost to the Ms. McClatchey; the willfulness of the infringement; and, the profits reaped by defendant in connection with the infringement. The Court may also consider the goal of *discouraging wrongful conduct*. See: Controversy Music v. Shiferaw, 2003 U.S. Dist. LEXIS 15224, 2003 WL 22048519 at * 2 (N.D. Cal. 2003)(emphasis added).

The goals of discouraging piracy and wrongful conduct would be undermined if the number of distributions were irrelevant. Under Defendant's theory, the maximum

8

penalty would be $25,000 regardless of whether the printed material was sent to one person or five million people. Indeed, under Defendant's theory, the penalty per "distribution" would decrease as the distribution widened; an anomaly that would essentially reward, rather than deter, egregious conduct.

### i. Defendant's Argument Regarding the 1,147 Distributions Defies Common Sense

The ease with which Defendant was able to pirate the "End of Serenity" photograph and distribute it to 1,147 news organizations is exactly why Congress felt the need to enact the DMCA. Defendant's excuse here – that it achieved a distribution to 1,147 separate news organizations by the single punch of a button -- is one of the very ills the DMCA is designed to prevent.

Defendant has *admitted* that it distributed Ms. McClatchey's "End of Serenity" photograph to 1,147 <u>separate and distinct</u> news organizations. Defendant states in its brief, at page 7: "In this case, Defendant did not make 1,147 distributions. <u>It distributed the photograph to all of its 1,147 PhotoStream subscribers in one act</u>." This argument does not withstand scrutiny. Why should it make any difference whether Defendant transmitted the photograph to 1,147 separate news organizations within days, hours, or seconds of each other? It should not, of course. Defendant's argument would result in multiple awards for transmissions seconds apart, yet reward mass transmissions that occurred at the same time.

In fact, the ease with which Defendant accomplished such multiple violations on a large scale is one of the very reasons Congress enacted the DMCA. The Federal Circuit, in describing the DMCA as a whole, stated:

9

> Congress crafted the new anticircumvention and anti-trafficking provisions here at issue to help bring copyright law into the information age. Advances in digital technology over the past few decades have stripped copyright owners of much of the technological and economic protection to which they had grown accustomed. **Whereas large scale copying and distribution of copyrighted material used to be difficult and expensive, it is now easy and inexpensive**.

The Chamberlin Group, Inc. v. Skylink Technologies, Inc., 381 F.3d 1178, 1197 (Fed. Cir. 2004)(emphasis added).

## II.    Conclusion

The statutory purpose and plain language of the DMCA, as well as the authorities interpreting it, all support Ms. McClatchey's contention that she can recover statutory damages in the range of $2,500 to $25,000 for each of the 1,147 separate news organizations to which Defendant sent her altered photograph in violation of 17 U.S.C. § 1202(a) and (b). Any other reading of the statute would render it toothless and wholly ineffective in achieving the stated goal of discouraging piracy in the information age. Defendant's motion in limine should be denied.

Respectfully submitted,

/s/ Douglas M. Hall_____
Douglas M. Hall
Paul K. Vickrey
Kara L. Szpondowski
Niro, Scavone, Haller & Niro
181 West Madison, Suite 4600
Chicago, Illinois  60602-4515
Phone: 312-236-0733
Fax: 312-236-3137
*Attorneys for Valencia M. McClatchey*

John E. Hall
Eckert Seamans Cherin & Mellott, LLC
USX Tower
600 Grant Street, 44th Floor
Pittsburgh, Pennsylvania 15219
Phone:  (412) 566-6000
Fax: (412) 566-6099

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing **MS. MCCLATCHEY'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO LIMIT MS. MCCLATCHEY TO TWO STATUTORY DAMAGE AWARDS UNDER THE DIGITAL MILLENNIUM COPYRIGHT ACT** was served upon the below listed parties on this 11th day of May 2007.

**By ECF:**            Gayle C. Sproul
Levine Sullivan Koch & Schultz, LLP
2112 Walnut St., 3rd Floor
Philadelphia, PA 19013
Phone: (215) 988-9778

**By ECF:**            Robert Penchina
Levine Sullivan Koch & Schultz, LLP
230 Park Avenue
Suite 1160
New York, NY 10169
Phone: (212) 850-6100
Fax: (212) 850-6299

/s/ Douglas M. Hall