**EXHIBIT C
TO
MS. MCCLATCHEY'S RESPONSE TO
DEFENDANT'S MOTION IN LIMINE
TO LIMIT MS. MCCLATCHEY TO TWO
STATUTORY DAMAGE AWARDS UNDER
THE DIGITAL MILLENNIUM COPYRIGHT ACT**

Westlaw.

47 U.S.C.A. § 605

Page 1

**Effective: February 08, 1996**

United States Code Annotated Currentness
 Title 47. Telegraphs, Telephones, and Radiotelegraphs
  Chapter 5. Wire or Radio Communication (Refs & Annos)
   Subchapter VI. Miscellaneous Provisions
    **§ 605. Unauthorized publication or use of communications**

(a) Practices prohibited

Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an amateur radio station operator or by a citizens band radio operator.

(b) Exceptions

The provisions of subsection (a) of this section shall not apply to the interception or receipt by any individual, or the assisting (including the manufacture or sale) of such interception or receipt, of any satellite cable programming for private viewing if--

 (1) the programming involved is not encrypted; and

 (2)(A) a marketing system is not established under which--

  (i) an agent or agents have been lawfully designated for the purpose of authorizing private viewing by individuals, and

  (ii) such authorization is available to the individual involved from the appropriate agent or agents; or

 (B) a marketing system described in subparagraph (A) is established and the individuals receiving such program-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



ming has obtained authorization for private viewing under that system.

(c) Scrambling of Public Broadcasting Service programming

No person shall encrypt or continue to encrypt satellite delivered programs included in the National Program Service of the Public Broadcasting Service and intended for public viewing by retransmission by television broadcast stations; except that as long as at least one unencrypted satellite transmission of any program subject to this subsection is provided, this subsection shall not prohibit additional encrypted satellite transmissions of the same program.

(d) Definitions

For purposes of this section--

(1) the term "satellite cable programming" means video programming which is transmitted via satellite and which is primarily intended for the direct receipt by cable operators for their retransmission to cable subscribers;

(2) the term "agent", with respect to any person, includes an employee of such person;

(3) the term "encrypt", when used with respect to satellite cable programming, means to transmit such programming in a form whereby the aural and visual characteristics (or both) are modified or altered for the purpose of preventing the unauthorized receipt of such programming by persons without authorized equipment which is designed to eliminate the effects of such modification or alteration;

(4) the term "private viewing" means the viewing for private use in an individual's dwelling unit by means of equipment, owned or operated by such individual, capable of receiving satellite cable programming directly from a satellite;

(5) the term "private financial gain" shall not include the gain resulting to any individual for the private use in such individual's dwelling unit of any programming for which the individual has not obtained authorization for that use; and

(6) the term "any person aggrieved" shall include any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming, and, in the case of a violation of paragraph (4) of subsection (e) of this section, shall also include any person engaged in the lawful manufacture, distribution, or sale of equipment necessary to authorize or receive satellite cable programming.

(e) Penalties; civil actions; remedies; attorney's fees and costs; computation of damages; regulation by State and local authorities

(1) Any person who willfully violates subsection (a) of this section shall be fined not more than $2,000 or imprisoned for not more than 6 months, or both.

(2) Any person who violates subsection (a) of this section willfully and for purposes of direct or indirect commercial advantage or private financial gain shall be fined not more than $50,000 or imprisoned for not more than 2 years, or both, for the first such conviction and shall be fined not more than $100,000 or imprisoned for not more than 5 years, or both, for any subsequent conviction.

(3)(A) Any person aggrieved by any violation of subsection (a) of this section or paragraph (4) of this subsection may bring a civil action in a United States district court or in any other court of competent jurisdiction.

(B) The court--

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

47 U.S.C.A. § 605

(i) may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a) of this section;

(ii) may award damages as described in subparagraph (C); and

(iii) shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.

(C)(i) Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses;

(I) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or

(II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

(ii) In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

(iii) In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250.

(4) Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a) of this section, shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both. For purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each such device shall be deemed a separate violation.

(5) The penalties under this subsection shall be in addition to those prescribed under any other provision of this subchapter.

(6) Nothing in this subsection shall prevent any State, or political subdivision thereof, from enacting or enforcing any laws with respect to the importation, sale, manufacture, or distribution of equipment by any person with the intent of its use to assist in the interception or receipt of radio communications prohibited by subsection (a) of this section.

(f) Rights, obligations, and liabilities under other laws unaffected

Nothing in this section shall affect any right, obligation, or liability under Title 17, any rule, regulation, or order

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

thereunder, or any other applicable Federal, State, or local law.

(g) Universal encryption standard

The Commission shall initiate an inquiry concerning the need for a universal encryption standard that permits decryption of satellite cable programming intended for private viewing. In conducting such inquiry, the Commission shall take into account--

(1) consumer costs and benefits of any such standard, including consumer investment in equipment in operation;

(2) incorporation of technological enhancements, including advanced television formats;

(3) whether any such standard would effectively prevent present and future unauthorized decryption of satellite cable programming;

(4) the costs and benefits of any such standard on other authorized users of encrypted satellite cable programming, including cable systems and satellite master antenna television systems;

(5) the effect of any such standard on competition in the manufacture of decryption equipment; and

(6) the impact of the time delay associated with the Commission procedures necessary for establishment of such standards.

(h) Rulemaking for encryption standard

If the Commission finds, based on the information gathered from the inquiry required by subsection (g) of this section, that a universal encryption standard is necessary and in the public interest, the Commission shall initiate a rulemaking to establish such a standard.

CREDIT(S)

(June 19, 1934, c. 652, Title VII, § 705, formerly Title VI, § 605, 48 Stat. 1103; June 19, 1968, Pub. L. 90-351, Title III, § 803, 82 Stat. 223; Sept. 13, 1982, Pub. L. 97-259, Title I, § 126, 96 Stat. 1099; renumbered and amended Oct. 30, 1984, Pub. L. 98-549, §§ 5(a), 6(a), 98 Stat. 2802, 2804; Nov. 7, 1988, Pub.L. 100-626, § 11, 102 Stat. 3211; Nov. 16, 1988, Pub.L. 100-667, Title II, §§ 204, 205, 102 Stat. 3958, 3959; Oct. 25, 1994, Pub.L. 103-414, Title III, §§ 303(a)(25) to (28), 304(a)(15), 108 Stat. 4295 to 4297; Feb. 8, 1996, Pub.L. 104-104, Title II, § 205(a), 110 Stat. 114.)

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

1968 Acts. Senate Report No. 1097, see 1968 U.S. Code Cong. and Adm. News, p. 2112.

1982 Acts. Senate Report Nos. 97-191 and 97-404 and House Conference Report No. 97-765, see 1982 U.S. Code Cong. and Adm. News, p. 2237.

1984 Acts. House Report No. 98-934 and Statements by Legislative Leaders, see 1984 U.S. Code Cong. and Adm. News, p. 4655.

1988 Acts. House Report No. 100-825, see 1988 U.S. Code Cong. and Adm. News, p. 4357.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.