IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VALENCIA M. MCCLATCHEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **3:05-cv-145** |
| | ) | **(Johnstown)** |
| **v.** | ) | |
| | ) | |
| **THE ASSOCIATED PRESS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM ORDER**

Before the Court for consideration are numerous motions in limine:

MOTION IN LIMINE TO EXCLUDE CERTAIN DOCUMENTS AND TESTIMONY REGARDING AOL BY ASSOCIATED PRESS ("AP") (Document No. 45);

MOTION IN LIMINE TO LIMIT PLAINTIFF TO ONE STATUTORY DAMAGE AWARD UNDER THE COPYRIGHT ACT BY ASSOCIATED PRESS (Document No. 47);

MOTION IN LIMINE TO LIMIT PLAINTIFF TO TWO STATUTORY DAMAGE AWARDS UNDER THE DIGITAL MILLENNIUM COPYRIGHT ACT BY ASSOCIATED PRESS (Document No. 49);

MOTION IN LIMINE TO EXCLUDE CERTAIN DOCUMENTS AND TESTIMONY REGARDING IPHOTOART BY ASSOCIATED PRESS (Document No. 51);

FIRST MOTION IN LIMINE TO PRECLUDE ERIC N. LIEBERMAN FROM TESTIFYING AT TRIAL BY VALENCIA M. MCCLATCHEY (Document No. 52); AND

MOTION IN LIMINE TO EXCLUDE CERTAIN DOCUMENTS AND TESTIMONY REGARDING ALLEGED THIRD-PARTY INFRINGEMENTS BY ASSOCIATED PRESS (Document No. 54).

The motions have been exhaustively briefed (Documents Nos. 46, 48, 50, 53, 55-66), and are ripe for disposition. A jury trial is scheduled to commence on June 25, 2007.

Procedural and Factual History

This case was originally filed in February 2005 in the Johnstown Division of the United

States District Court for the Western District of Pennsylvania and assigned to the Honorable Kim R. Gibson. The complaint asserts claims for direct copyright infringement (Count I), contributory copyright infringement (Count II), vicarious copyright infringement (Count III), and removing and distributing false copyright information in violation of the Digital Millenium Copyright Act, 17 U.S.C. §§ 1202(a), (b) (Counts IV and V). On February 22, 2007, Judge Gibson issued an order of recusal and the case was transferred to the undersigned. In a Memorandum Opinion and Order dated March 9, 2007 ("Memorandum Opinion"), this Court denied AP's motion for summary judgment.

As set forth in the Court's Memorandum Opinion, Plaintiff Valencia McClatchey is a resident of Shanksville, Pennsylvania. On the morning of September 11, 2001, she observed United Flight 93 crash into a field near her house and took a photograph of the mushroom cloud caused by the crash, against a clear blue sky, with a red barn and the rolling hills of Pennsylvania in the foreground. In January 2002, Ms. McClatchey received federal copyright protection for the photograph, which she titled "End of Serenity." The photograph has been displayed at numerous exhibits, including the Flight 93 Memorial and the Smithsonian Institute. Various news organizations have also sought to license the use of the photograph. Ms. McClatchey generally agreed to license the photograph for one-time use. She also sold hard copies of the photograph locally and through the mail for $20 apiece, $18 of which she donated to the Todd Beamer Foundation.

At a ceremony commemorating the one-year anniversary of the crash, Ms. McClatchey met Charles Sheehan, an AP reporter. Sheehan decided to write a story about "this lady who took this picture a year before." That afternoon, Gene Puskar, an AP photographer, went to Ms. McClatchey's home to photograph her for the story. The crux of this case involves the details of the interaction between Mr. Puskar and Ms. McClatchey.

Puskar's assignment was to "take pictures of a woman with a picture." Instead, Plaintiff contends that Puskar, under false pretenses, took a picture only of the "End of Serenity"

photograph itself. Ms. McClatchey alleges that the photograph which Puskar photographed was taken from her binder and reflected her title and copyright information thereon. Plaintiff contends that Puskar then "cropped" his picture of the photograph, which removed her title and copyright notice. The Sheehan news article and the photograph were distributed as separate items to APs' PhotoStream member news organizations without her knowledge or permission. Ms. McClatchey learned in August 2003 that her photograph was being used on AOL's home page in connection with a Flight 93 conspiracy theory. Upon investigation, she learned that AOL had received the image from AP. This litigation ensued.

<u>Discussion</u>

The motions in limine will be addressed seriatim.

<u>1. Motion in Limine Regarding AOL (#45)</u>

AP asks the Court to exclude documents and testimony regarding a publication of the photograph by AOL on August 8, 2003 (Exhibit D to the Complaint). AP contends that AOL had a separate and independent right to make fair use of the photograph. AP further argues that because AOL's use was noninfringing, AP cannot be held liable for contributory or vicarious infringement.

In response, McClatchey contends that the use by AOL was not a "fair use" but rather constituted direct infringement and that the evidence regarding AOL's use is independently relevant to prove that AP distributed the photograph to its subscribers. Further, McClatchey points out that "fair use" is a mixed question of law and fact that should be submitted to the jury and that the Court previously denied similar "fair use" arguments raised by AP at the summary judgment stage.

As set forth in the Court's Memorandum Opinion:

> "Fair use" is a wholly equitable doctrine that has been codified at 17 U.S.C. § 107. It is an affirmative defense on which AP bears the burden of persuasion. *Video*

> *Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*, 342 F.3d 191, 197 (3d Cir. 2004). The "fair use" doctrine seeks to balance protection for creative works with the public's interest in the dissemination of information. *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1151 (9th Cir. 1986). The statute provides that a copyrighted work may properly be used for purposes such as criticism, commentary or news reporting. Courts apply a non-exhaustive four-factor test: (1) the purpose and character of the use, as commercial or educational; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used; and (4) the effect of the use on the market for the original. 17 U.S.C. § 107. All four factors must be explored, weighed and considered together. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994). Although the "fair use" doctrine requires case-by-case balancing of numerous factors, summary judgment is possible, but only when a reasonable factfinder could reach only one conclusion. *Hustler*, 796 F.2d at 1150-51.

"Fair use" is a mixed question of law and fact. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560 (1985). A reasonable factfinder could conclude that AOL's use was not "fair use," for the reasons articulated in McClatchey's response brief. Thus, the evidence regarding AOL's use is relevant and would not unfairly confuse and prejudice the jury if presented. In addition, the evidence regarding AOL's use is relevant to establish that AP distributed the photograph, which is part of McClatchey's proof against AP. Accordingly, the MOTION in Limine *to Exclude Certain Documents and Testimony Regarding AOL* by ASSOCIATED PRESS ("AP") (Document No. 45) is **DENIED**.

2. Statutory Damages Award Under the Copyright Act (#47)

This motion in limine seeks a legal determination regarding the calculation of damages under the Copyright Act. AP contends that Plaintiff is "limited to one award of statutory damages for each work proved to be infringed," and thus cannot recover for direct infringement, contributory infringement and vicarious infringement. AP cites to page 10 of this Court's Memorandum Opinion, in which the Court stated:

> However, the Court agrees with Defendant that Plaintiff is entitled to recover only a single award. *See Daley v. Firetree, Ltd.*, 2006 WL 148879 *7 (M.D. Pa. 2006) (copyright act permits recovery of one award of statutory damages for each work infringed). The record is clear that the "End of Serenity" photograph is the only work involved. Indeed, Plaintiff does not challenge this argument. The Court reserves all decisions regarding damages for future proceedings.

In response, McClatchey argues that the number of statutory damages awards depends on the number of works *and* the number of individually liable infringers. McClatchey acknowledges that pursuant to 17 U.S.C. § 504(c), she is entitled to recover statutory damages for one infringing action by AP (direct, contributory or vicarious) and not all three. She also agrees that there is only one "work" at issue. However, McClatchey contends that she may recover multiple statutory damages awards if a party is found to be jointly and severally liable with multiple parties who are not jointly and severally liable with each other. She cites a hypothetical from the treatise 4 *Nimmer on Copyright* § 14.04(E)(2)(d) for this proposition.[1] This is an issue of first impression in this circuit.

The provision at issue, 17 U.S.C. § 504(c)(1), states:

> (c) Statutory Damages.--
>
> (1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, ***an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally***, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

(Emphasis added). In Section 504(c)(2), the statutory damages award for willful violations is increased to $150,000.

The Court does not agree with McClatchey's strained, albeit creative, proposed interpretation of the statute. The statute simply does not require full and complete joint and several liability amongst all alleged infringers. As McClatchey acknowledges, there is partial joint and several liability in this case because each downstream user (AOL, The Progress, Newsday) is jointly and severally liable with AP. Thus, none of the downstream users can be an "individually liable infringer" for the purpose of triggering a distinct statutory damages award.

---

[1]Under the hypothetical, if D (a movie distributor), sent the infringing work to A, B and C (three unrelated theaters who were not jointly and severally liable with each other), there should be three sets of statutory damages awards.

Instead, this is a case in which "any two or more infringers are liable jointly and severally." McClatchey's proposed interpretation would render the word "any" superfluous, or alternatively, would rewrite the statute to impose a single award only where "***all*** infringers are liable jointly and severally." In sum, the Court concludes that the most plausible interpretation of the statute authorizes a single award when there is any joint and several liability, even if there is not complete joint and several liability amongst all potential infringers.

The factual situation faced by the Court in *Bouchat v. Champion Products, Inc.*, 327 F. Supp.2d 537 (D. Md. 2003) (involving the logo for the Baltimore Ravens football team) is quite analogous. Although the discussion in *Bouchat* is dicta and, in any event, not binding on this Court, the Court finds it to be persuasive. In *Bouchat*, one primary infringer, the NFLP, used Plaintiff's drawing to create an infringing logo. The NFLP then licensed the team logo to hundreds, if not thousands, of business entities that used the logo in the course of their businesses. *Bouchat* flatly rejected the hypothetical in *Nimmer on Copyright*, at least in the context of coordinated mass marketing operations, characterizing the result as "absurd." *Id.* at 553. The Court explained that each of the downstream defendants acted derivatively from a common primary infringer and was jointly and severally liable with the NFLP. *Id.* at n. 22. Accordingly, the Court concluded that Plaintiff would be limited to a single statutory damages award.

Similarly, in this case there is one alleged primary infringer, AP. The downstream users all acted derivatively from the common primary infringer, via AP's electronic distribution to its subscribers. While perhaps not as numerous as the actual downstream users in *Bouchat*, the mechanism is very similar. In both cases, there is joint and several liability between the primary infringer and each of the downstream users, but not among all downstream users. This "partial" joint and several liability triggers the statutory limit to a single award.

Moreover, in this case, the only defendant is AP, the primary infringer who has joint and several liability with all of the downstream users. Thus, the Court need not engage in the

calculation set forth in *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 144 (5th Cir. 1992) (two different defendants committing five separate infringements of five different works equals ten awards). There is only one defendant and one work. McClatchey seeks multiple awards against AP, even though it did not name any other parties, by invoking the doctrine of joint and several liability. In other words, Plaintiff seeks to invoke joint and several liability to overcome the statutory limitation on damages whenever there is joint and several liability. This reasoning is counterintuitive and circular at best and is directly contrary to the actual statutory text, which explicitly limits plaintiff to a single award where "any two or more infringers are liable jointly and severally." 17 U.S.C. § 504(c)(1). Thus, it is not necessary for the Court to reject the *Nimmer* hypothetical in all circumstances. Here, where the only Defendant is jointly and severally liable with all other alleged downstream infringers, Plaintiff is entitled to only a single statutory damages award. Accordingly, the MOTION in Limine *to Limit Plaintiff to One Statutory Damage Award under the Copyright Act* by ASSOCIATED PRESS (Document No. 47) is **GRANTED**.

3. Damages Award Under DMCA (#49)

AP's next motion in limine also seeks a legal determination, involving the calculation of damages under the Digital Millenium Copyright Act (DMCA), 17 U.S.C. § 1203. AP's position is that the complaint alleges only two "violations" of the DMCA and consequently, Plaintiff can recover no more than two statutory awards. McClatchey claims entitlement to a separate statutory award for distribution of the photograph to each of AP's 1, 147 PhotoStream subscribers on the basis that each is a separate violation of the DMCA. AP contends that the term "violation" in the DMCA is meant to encompass all related conduct, regardless of the number of downstream recipients. In AP's view, the distribution of false copyright management

information ("CMI") to all AP PhotoStream subscribers was only a single violation.[2] This also appears to be an issue of first impression and the analogies proposed by the advocates for both sides are inexact.

The relevant statutory provision is 17 U.S.C. § 1203(c)(3), which states:

> (3) Statutory damages. – (A) At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for **each violation** of section 1201 in the sum of not less than $200 or more than $2,500 **per act** of circumvention, device, product, component, offer, or performance of service, as the court considers just.
>
> (B) At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for **each violation** of section 1202 in the sum of not less than $2,500 or more than $25,000.

(Emphasis added).

McClatchey cites to section 1203(c)(3)(A), which calculates statutory damages "per act of circumvention," and contends that a similar calculation should apply in subsection (c)(3)(B), the subsection which is applicable in this case. She argues that AP's conduct enabled each of the 1,147 PhotoStream subscribers to violate and circumvent her copyright. AP responds with the opposing canon of construction, arguing that the absence of any parallel reference to "per act" damages in subsection (c)(3)(B), is intentional.[3]

AP argues that the limitation in the Copyright Act to a single award should be imported into the DMCA. However, AP's argument ignores the materially different statutory language at issue – as discussed above, section 504(c) explicitly authorizes only a single award per work where there is any joint and several liability. There is no such parallel language in the DMCA, so AP's analogy lacks merit.

---

[2] The Court does not decide whether the distribution to AOL through AP's PhotoArchive would be a third violation. AP apparently does not contest that the alleged removal of the CMI would be a separate violation.

[3] Section 1201 deals with circumvention of copyright protection systems. Section 1202 addresses the integrity of CMI. Congress imposed higher penalties for violations of section 1202 as compared to section 1201.

McClatchey points to 47 U.S.C. § 605(e), which prohibits pirating or intercepting satellite transmissions and contains similar language. The "each violation" language in section 605(e)(4) has been interpreted to authorize multiple awards. In its reply brief, AP correctly observes that section 605(e)(4) explicitly defines the sale of each device to "be deemed a separate violation." Because the DMCA lacks a similar statutory definition, the strength of McClatchey's analogy is diminished.

Both parties cite to the *DirectTV* line of cases, which interprets section 605.[4] AP gets the better of this argument. Most of the cases cited by Plaintiff arose under section 605(e)(4), which as noted above, expressly defines each device to be a distinct violation. In cases involving the "each violation" provision as to section 605(a), "most cases applying this statute in a commercial context have interpreted the showing of an event on a single night as one violation" regardless of the number of viewers. *Garden City Boxing Club, Inc. v Perez*, 2006 WL 2265039 *5 (E.D.N.Y. Aug. 8, 2006) (noting lack of statutory definition of term "violation"). In *Community Television Systems, Inc. v. Caruso*, 284 F.3d 430, 435 (2d Cir. 2002), the Second Circuit rejected an expansive definition of the term "violation" to encompass each time a device was used and instead held that "a violation occurs each time a device is purchased and installed."

Ultimately, this Court is most persuaded by AP's "structural" argument. The DMCA, like the Copyright Act, provides statutory damages as an alternative to actual damages. Presumably, plaintiffs will elect statutory damages only when that calculation exceeds their actual damages. In other words, Congress has determined that in order to deter violations of the DMCA, plaintiffs electing statutory damages may receive a windfall. The Court's definition of the term "violation" will determine the extent of that windfall. This Court concludes that Congress would not have intended to make the statutory damages windfall totally independent of the defendant's conduct. Where one act by Defendant results in mass infringement, it is more

[4]Both parties also discuss *Nimmer on Copyright* § 12A.13. The treatise states that multiple awards can be obtained "for each violation of section 1202" but does not discuss how to define the term "violation."

likely that actual damages will yield the more favorable recovery. The DMCA damages provisions are clearly focused on the defendant's conduct. *Compare* section 1203(c)(3)(A) (calculating statutory damages "per act"). In essence, the term "each violation" is best understood to mean "each violative act performed by Defendant." Thus, AP would violate the DMCA each time it wrongfully distributed a photograph to its subscribers. In this case, the Court concludes that AP committed only one alleged violative act by distributing the End of Serenity photograph to its PhotoStream subscribers, even though there were 1,147 recipients. In accordance with the foregoing, the MOTION in Limine *to Limit Plaintiff to Two Statutory Damage Awards under the Digital Millennium Copyright Act* by ASSOCIATED PRESS (Document No. 49) is **GRANTED**.

4. Motion Regarding iPhotoArt (# 51)

AP seeks to exclude Plaintiff's Exhibits PTX 126 and 127, which are famous photographs, respectively, of Marines raising an American flag on Iwo-Jima and of the Twin Towers burning on September 11, 2001. These photos are offered for sale by AP through a third-party licensee called iPhotoArt.

AP contends that these famous photographs are irrelevant because the End of Serenity photograph was never made available through iPhotoArt. AP further argues that the price paid for limited edition prints through iPhotoArt has no bearing on the revenues Plaintiff may have obtained from sales of End of Serenity. Finally, AP contends that any relevance would be outweighed by the danger of unfair prejudice and misleading of the jury as to the market value of other photographs.

In response, McClatchey argues that the famous photographs are important barometers of the potential value of End of Serenity, as each captures a historical moment. Among the factors that may be considered is the value of the copyright. McClatchey contends that the famous photographs are helpful in deciding where, within the permissible range of statutory damages

available under the Copyright Act, to fix the amount of actual damages. Plaintiff points out that AP is free to argue at trial that End of Serenity is less valuable than the famous photographs portrayed at PTX 126 and 127.

The Court agrees with McClatchey. While the value of End of Serenity may be less than that of the more famous photographs, it is of a similar genre, as explained in the Puskar Deposition. The famous photographs provide some type of an upper bound of market value that may be helpful in determining a damages amount. AP is free to introduce other evidence regarding value, including the $20 price per photograph that McClatchey charged. Accordingly, the MOTION in Limine *to Exclude Certain Documents and Testimony Regarding iPhotoArt* by ASSOCIATED PRESS (Document No. 51) is **DENIED.**

5. Plaintiff's Motion to Preclude Lieberman Testimony (#52)

McClatchey asks the Court to exclude Eric Lieberman from testifying on the ground that AP never identified him as a witness prior to the close of discovery. Lieberman is an attorney for The Washington Post, and he wrote a letter to Plaintiff's counsel on December 15, 2005. The letter explains that The Washington Post signed a freelance agreement with McClatchey on March 11, 2002 and then used the End of Serenity photograph in May 2002, and that the newspaper did not publish End of Serenity again, but did download the photograph from the AP to the Post's internal photograph archive in September 2002.

In response, AP makes numerous arguments. First, it asserts that all testimony regarding the Washington Post should be excluded (see Motion in Limine at Document No. 54, which is discussed below) because there is no evidence to support Plaintiff's claim. As set forth in the Agreement with Freelance Contributors, McClatchey licensed the right to use the photograph to the Post. Second, it explains that Lieberman was named as a rebuttal witness only in response to Plaintiff's pretrial statement, which unexpectedly continued to target the Post's use. Third, AP argues that any failure to name Lieberman was harmless because Plaintiff's counsel has been

aware of Lieberman since at least December 2005, and chose not to depose him. Further, AP asserts that it learned of Lieberman only through McClatchey's efforts. Thus, the AP did not have a duty to supplement pursuant to Fed. R. Civ. P. 26(e)(1) (party not under a duty to supplement if information has otherwise been made known to other party). Fourth, AP contends that exclusion of evidence is an extreme sanction that is not warranted under Third Circuit precedent, *Quinn v. Consolidated Freightways Corp. of Delaware*, 283 F.3d 572, 577 (3d Cir. 2002). AP is willing to limit Lieberman's testimony to the scope of McClatchey's subpoena and the topics discussed in the December 15, 2005 letter. Plaintiff has not rebutted any of these arguments, and in response to AP's motion in limine below, concedes that it has no evidence of infringement by the Washington Post.

The Court finds AP's responses to be persuasive. After analyzing the factors set forth in *Quinn* (importance of the testimony, prejudice or surprise in fact to opposing party, ability of that party to cure the prejudice, disruption of trial and bad faith or wilfulness), the Court will not preclude Lieberman from testifying as a rebuttal witness pursuant to the limitations agreed to by AP, should that become necessary. Accordingly, the First MOTION in Limine *To Preclude Eric N. Lieberman From Testifying At Trial* by VALENCIA M. MCCLATCHEY (Document No. 52) is **DENIED**.

6. Motion to Exclude Alleged Third-Party Infringement (#54)

AP seeks the exclusion of documents and testimony concerning alleged infringing uses of the photograph by the Washington Post, the Philadelphia Daily News, magazines and several conspiracy web sites. In response, McClatchey confirms that she does not currently possess any evidence of infringement by the Washington Post, the Philadelphia Daily News, magazines or by Killtown or other conspiracy web sites. McClatchey does intend to submit evidence of direct infringement by AOL, The Progress and Newsday, and explains that her investigation of improper uses continues. Accordingly, the MOTION in Limine *to Exclude Certain Documents*

*and Testimony Regarding Alleged Third-Party Infringements* by ASSOCIATED PRESS (Document No. 54) is **GRANTED**.

AP's reply brief (Document No. 63) seeks sanctions pursuant to 28 U.S.C. § 1927 for Plaintiff's alleged unreasonable and vexatious insistence on pursuing claims against the Washington Post and Philadelphia Daily News, which necessitated the motions in limine at Document Nos. 52 and 54 and associated briefing. Not surprisingly, Plaintiff's counsel strongly denies this contention. The Court is loath to go down this path and urges all counsel to restore the professionalism with which this case has been litigated to date. The Court finds that the proceedings have not been unreasonably and vexatiously multiplied and therefore DENIES the motion for sanctions.

AP's reply brief also seeks to exclude evidence relating to Newsday on the basis that it had not been produced during discovery. In response, McClatchey explains that the Newsday photograph is evidence of continued wrongful use, could not have been discovered earlier, and moreover, resulted from AP's failure to notify its subscribers that McClatchey is the rightful owner of End of Serenity. The Court agrees with McClatchey. Thus, to the extent that AP is making an additional motion in limine in its reply brief, it is DENIED.

SO ORDERED this 4th day of June, 2007.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Douglas M. Hall, Esquire
Email: dhall@nshn.com
John E. Hall, Esquire
Email: jhall@eckertseamans.com
Kara L. Szpondowski, Esquire
Email: szpondowski@nshn.com

Gayle C. Sproul, Esquire
Email: gsproul@lskslaw.com
Robert Penchina, Esquire
Email: rpenchina@lskslaw.com
Michael L. Berry, Esquire
Email: mberry@lskslaw.com