IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VALENCIA M. MCCLATCHEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 05-00145J |
| v. ) | The Honorable Terence F. McVerry |
| ) | |
| THE ASSOCIATED PRESS, ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendant. ) | |
| _____) | |

**PLAINTIFF'S MOTION FOR RECONSIDERATION,
OR IN THE ALTERNATIVE, MOTION FOR CERTIFICATION
OF INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

**I.  Introduction**

Valencia M. McClatchey ("Plaintiff") respectfully moves this Court, pursuant to Fed.R.Civ.P. 59(e), for reconsideration of the grant of Defendant's motion in limine to limit Plaintiff to two statutory damage awards under the Digital Millennium Copyright Act ("DMCA").  Specifically, Plaintiff submits that the Court erred in holding "that AP committed only one alleged violative act by distributing the End of Serenity photograph to its Photostream subscribers, even though there were 1,147 recipients."  Should the Court deny Plaintiff's motion for reconsideration, Plaintiff alternatively moves for certification of interlocutory appeal under 28 U.S.C § 1292(b).  Plaintiff conferred with the AP regarding 1292(b) motion, and the AP indicated it did not object to Plaintiff's filing of the motion.

**II.  Motion for Reconsideration Regarding Statutory Damages Under the DMCA**

This is an issue of first impression.  Plaintiff realizes that the Court was faced with the difficult task of deciding for the first time how to interpret the words of 17 U.S.C.

§ 1203(c)(3)(B).  Nonetheless, Plaintiff submits that the Court reached the wrong conclusion and respectfully requests reconsideration of the ruling.

The DMCA was enacted to "discourage piracy," and to protect against the large scale easy and inexpensive distribution of copyrighted materials.  See: <u>IQ Group, Ltd.</u> v. <u>Weisner Pub., LLC</u>, 409 F. Supp. 2d 587, 597 (D.N.J. 2006), *quoting*, Senate Report No. 105-190 (1998)("The purpose of CMI (copyright management information) is to facilitate licensing of copyright for use on the Internet, and to discourage piracy.");  see also, <u>The Chamberlin Group, Inc.</u> v. <u>Skylink Technologies, Inc.</u>, 381 F.3d 1178, 1197 (Fed. Cir. 2004)("Whereas large scale copying and distribution of copyrighted material used to be difficult and expensive, it is now easy and inexpensive.").  This Court's ruling limiting Plaintiff to one award despite the 1,147 wrongful distributions renders the DMCA meaningless (or at least redundant of 504(c)), and ignores the very language of the statute and the reasons upon which it was enacted.  Under the Court's ruling <u>none</u> of the goals of the DMCA are met; there is no deterrence, no discouraged piracy, and no recognition of the ease with which large scale unlawful distributions can be accomplished in the Digital Age.

The Court's ruling is presented in three sentences:  (1)  "In essence, the term 'each violation' is best understood to mean 'each violative act performed by Defendant'".  (Opinion, at p. 10).  Plaintiff agrees.  (2) "Thus, AP would violate the DMCA each time it wrongfully distributed a photograph to its subscribers."  (Opinion, at p. 10).  Plaintiff agrees - and submits that the Court should have stopped here.  By continuing, the Court either improperly took Plaintiff's damages case from the jury (by deciding the factual

question of how many violative acts were performed by the AP), or reached a legal conclusion that is at odds with the first two sentences[1].

The third sentence states, (3) "In this case, the Court concludes that AP committed only one alleged violative act by distributing the End of Serenity photograph to its Photostream subscribers, even though there were 1,147 recipients." (Opinion, at p. 10). Plaintiff disagrees. To the extent the Court is merely applying the facts of the case to its holding that "each violation" means "each violative act", Plaintiff submits that the determination of the number of "violative acts" or "wrongful distributions" is a question for the jury to decide. To the extent the Court is stating that as a matter of law only one damages award results regardless of the number of "violative acts" or "wrongful distributions", Plaintiff submits that this contradicts the goals and purpose of the DMCA, the "each violation" language of the DMCA, and even the Court's earlier holding that "AP would violate the DMCA each time it wrongfully distributed a photograph to its subscribers." (Opinion, at p. 10).

Under the Court's ruling, any single wrongful distribution of the photograph to any single AP subscriber would toll the damages provision of the DMCA. But, the AP didn't just wrongfully distribute the photograph to one subscriber. The AP wrongfully distributed the photograph 1,147 times to 1,147 separate entities. The timing of the distributions must be irrelevant for the statute to make sense, i.e., the damages should be the same whether the AP hit the send button once or hit the send button 1,147 times. The following example will illustrate this point:

---

[1] The Court essentially decided this issue as if it were a summary judgment motion. And, Plaintiff submits that as a summary disposition, all facts should be taken in favor of the non-moving party (Plaintiff). If there are any factual disputes, such as the *number* of wrongful distributions in violation of 1202(a) and (b), then the Court should not grant summary judgment but should allow the issue to go to the jury.

3

- Assume *person A* walks into Microsoft and under false pretenses takes the newest copy of Windows and then wrongfully distributes it via e-mail to his friend. Under the Court's ruling *person A* is liable for <u>one</u> violation of the DMCA. Now assume that one week later *person A* wrongfully distributes it via e-mail to a second friend. Under the Court's ruling *person A* is liable for a <u>second</u> violation of the DMCA.

- Next, Assume *person B* also walks into Microsoft and under false pretenses takes the newest copy of Windows. But, *person B* has loftier goals, so he wrongfully distributes it via e-mail to all 6+ billion people on Earth. Under the Court's ruling *person B* is liable for only <u>one</u> violation of the DMCA.

Putting aside any practical limitations of the above example, Plaintiff submits that this result would be supremely unjust to *person A* and Microsoft. Only *person* B, who unquestionably did the most damage in the example, would benefit if the Court's ruling was applied to the above situation. The AP is no different than *person B*, and they should not benefit because they decided to distribute the photograph to 1,147 different recipients on a single day. And, this example further serves to illustrate how the Court's ruling is at odds with the very reason for the DMCA: to prevent piracy through the wrongful large scale easy distribution of a copyrighted work. See: <u>The Chamberlin Group, Inc.</u>, 381 F.3d at 1197.

Plaintiff also takes issue with the Court's outright rejection of *Nimmer* (in footnote 4 of the opinion). *Nimmer* is the <u>only</u> cited authority of any kind to analyze the meaning of 17 U.S.C. § 1203(c)(3)(B). And *Nimmer* concludes, "**Multiple awards** lie here for '**each violation** of section 1202.'" (Exhibit A, *Nimmer on Copyright* § 12A.13 (emphasis

4

added)).  *Nimmer* clearly states that <u>multiple awards</u> are available for each violation. The Court's rationale for rejecting *Nimmer* is that *Nimmer* does not define "violation". However, *Nimmer* clearly states that no matter how "violation" is defined, <u>multiple awards</u> are available for each violation.  And, as any one of the 1,147 wrongful distributions, standing alone, is a violation of section 1202, then according to *Nimmer* multiple awards lie for each of the 1,147 wrongful distributions.  Plaintiff submits that the Court did not give *Nimmer* the weight it deserved as the only authority of any kind to specifically analyze 17 U.S.C. § 1203(c)(3)(B).  Moreover, if one were to take the Court's definition of "violation", and apply *Nimmer's* analysis that <u>multiple awards</u> lie for each violation, then the *only* reasonable conclusion would be that Plaintiff could recover for each of the 1,147 wrongful distributions.

Plaintiff understands that the Court was unpersuaded by Plaintiff's comparisons to cases under 47 U.S.C. § 605.  To be sure, the comparison is not exact because of the nature of the violations involved (wrongful distributions versus the sale or use of illegal devices to intercept transmissions).  However, Plaintiff submits that the cases it cited under § 605 bear a much closer relation to the "wrongful distribution" language of 17 U.S.C. § 1202 than the <u>Garden City</u> and <u>Community Television</u> cases relied upon by the Court.

The <u>DirecTV</u> line of cases cited by Plaintiff all had to do with the ***sale or distribution*** of numerous illegal devices to numerous recipients, which is very similar to the ***wrongful distribution*** language of 17 U.S.C. § 1202.  In every one of these cases, multiple damages were awarded per sale or use per device, which Plaintiff submits more closely mirrors the "distribution" and "each violation" language of the DMCA.  See

5

Exhibit B: DirecTV, Inc. v. Hendrix, 2005 U.S. Dist. LEXIS 17348, 2005 WL 757562 (N.D. Cal. 2005)("Every court that has addressed damages under this section has awarded the statutory minimum of $10,000 per device."), *citing*, Cablevision of S. Conn. v. Smith, 141 F. Supp. 2d 277, 287 (D. Conn. 2001) (Defendant liable for damages per violation, i.e., per device sold or distributed.); DirecTV, Inc. v. McDougall, 2004 U.S. Dist. LEXIS 23013, at *14 (W.D. Tex. 2004) (eight awards for eight violations). DirecTV, Inc. v. Adkins, 320 F. Supp. 2d 474, 477 (W.D. Va. 2004) (granting DirecTV an award of $10,000 per device for a total award of $2,050,000); DirecTV, Inc. v. Naegle, SACV 03-818-JVS (C.D.Cal Oct. 27, 2003) (default judgment in the amount of $450,000 resulting from defendants forty-five violations); DirecTV, Inc. v. McGreevey, SACV 03-1103-JVS (C.D.Cal. Oct. 28, 2003) (default judgment in the amount of $220,000 resulting from defendant's twenty-two violations). In addition, the Community Television case relied upon by the Court actually supports these cases by awarding damages based on the number of devices sold (3 devices, 3 awards).

In sharp contrast, the Garden City case relied upon by the Court does *not* deal with a violation that stemmed from the sale or distribution of numerous devices to numerous recipients. Instead, the Garden City case deals with a violation that stemmed from a single illegal *interception* of a satellite transmission via a single device. The Court cites Garden City Boxing Club, Inc. v. Perez, 2006 WL 2265039, at *5 (E.D.N.Y., Aug. 8, 2006)(attached hereto as Exhibit C) for the proposition that "most cases applying this statute in a commercial context have interpreted the showing of an event on a single night as one violation." This might make sense in the context of § 605(a) where the violation is a single illegal interception of a transmission by a single device.

6

However, it does not apply to the present case where there were 1,147 illegal transmissions. For Garden City to apply to our case there would have had to be 1,147 intercepted transmissions.

The AP did not just distribute one photograph - it distributed 1,147 separate copies of the photograph. And even today, there are still 1,147 separate copies of the photograph on the computers of the AP's subscribers because the AP has taken no action to remove them. (Similarly, if Apple were to sell 1,147 downloads of a single song to 1,147 of its customers, all of whom happen to be simultaneously using Apple's Itunes service, then Apple has made 1,147 sales of that song. Contending that Apple has only made one sale merely because it simultaneously sold the same download of a song 1,147 times defies logic.)

In sum, Plaintiff cited the DirecTV line of cases to support its proposition that under the DMCA "each violation" meant that Plaintiff could recover separate statutory damages for each wrongful distribution of the photograph by the AP. And, the Court appeared to agree. However, the ultimate decision, which groups the 1,147 wrongful distributions into one, is clearly at odds with this proposition.

The Court's ruling in this case makes violations under the DMCA the same as violations under 17 U.S.C § 504(c) - one infringing work, one recovery - despite the fact that the Court concluded there is "materially different statutory language at work" between 504(c) and 1203(c)(3)(B). (Opinion, at p. 8). Such a result strips the DMCA of any real meaning, and is at odds with the "each violation" language, the anti-piracy goals of the statute, and *Nimmer's* analysis that "multiple violations" are available. Thus, Plaintiff respectfully requests that the Court reconsider its ruling and allow Plaintiff

7

to recover damages at trial for each "wrongful distribution" of the photograph that it is able to prove at trial. Plaintiff submits that the determination of the number of distributions made in violation of 17 U.S.C. § 1202(a) and (b) is a question of fact for the fact finders, namely the jury.

### III. Motion for Certification of Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b)

Should the Court deny Plaintiff's motion for reconsideration, Plaintiff respectfully moves this Court for certification of interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Pursuant to 28 U.S.C. § 1292(b), a party moving for certification of an interlocutory appeal must demonstrate the following: "(1) the order from which the appeal is sought involves a controlling question of law, (2) there is substantial ground for difference of opinion with respect to that question, and (3) an immediate appeal may materially advance the ultimate termination of the litigation."  Premrick v. Dick's Sporting Goods, Inc., 2007 U.S. Dist. Lexis 11813, at *2 (W.D. Pa. 2007) (McVerry, J.), *citing*, 28 U.S.C. § 1292(b); Katz v. Carte Blanche Corp., 496 F.2d 747, 754 (3d Cir. 1974) (attached hereto as Exhibit D). All three of these factors are present in this case.

#### a. The Order from which the Appeal is Sought Involves a Controlling Question of Law

The controlling question Plaintiff would like to present on appeal is as follows: "whether the 'each violation' language of 17 U.S.C. § 1203(c) (3) (B) means that a Plaintiff can recover statutory damages for each separate recipient of a 'distribution' in violation of 17 U.S.C. § 1202(a) and (b)?" This is a controlling question because the answer determines whether the AP's 1,147 wrongful distributions allows for a single statutory award or 1,147 statutory awards. There is no established legal standard in

8

this area, and in fact, there is no legal standard in this area at all.  As the Court stated, this appears to be an issue of first impression.

The Court specifically rejected the AP's contention that the "limitation in the Copyright Act to a single award should be imported into the DMCA." (Opinion, at p. 8). However, the Court's ultimate ruling that Plaintiff was entitled to only a single award despite the fact that the AP has admitted it distributed the photograph to 1,147 separate entities appears to contradict this rejection.  Under Plaintiff's reading of the Court's order, either (1) the limitation in the Copyright Act to a single award *was* imported into the DMCA, or (2) there is a giant loophole in the DMCA whereby a Defendant can avoid the "each violation" language, and thereby benefit, by simply performing multiple wrongful distributions at the same time.  Plaintiff submits that either reading is wrong as a matter of law.

Plaintiff recognizes that there is a high standard that must be met for certification. As this Court stated, "even if all three criteria under *Section 1292(b)* are met, a district court may still deny certification, as the decision is entirely within the district court's discretion." Id., *citing*, Swint v. Chambers County Comm'n, 514 U.S. 35, 47, 115 S. Ct. 1203, 131 L. Ed. 2d 60 (1995); Bachowski v. Usery, 545 F.2d 363, 368 (3d Cir. 1976). "The party seeking interlocutory review has the burden of persuading the district court that exceptional circumstances exist that justify a departure from the basic policy of postponing appellate review until after the entry of final judgment." Id. at *3, *citing*, Caterpillar, Inc. v. Lewis, 519 U.S. 61, 74, 117 S. Ct. 467, 136 L. Ed. 2d 437 (1996). "Certification of an interlocutory appeal is granted sparingly and only in exceptional

9

circumstances."  Id., *citing*, Hulmes v. Honda Motor Co., 936 F. Supp. 195, 208 (D.N.J. 1996), aff'd, 141 F.3d 1154 (3rd Cir. 1998).

Plaintiff submits that this issue meets criteria for interlocutory appeal. Specifically, as an issue of first impression, and as the first judicial interpretation of 17 U.S.C. § 1203(c)(3)(B), this issue will have ramifications not only for the instant parties, but also for all the cases that follow.  And, while not determinative, an issue of first impression has been permitted by the Third Circuit to justify an interlocutory appeal.  In Green, et al v. Fund Asset Management, L.P., et al, 245 F.3d 214, 220 (3rd Cir. 2001) (emphasis added), the court stated:

> The District Court did acknowledge, however, that **the question presented**, i.e., whether § 36(b) of the ICA preempts the plaintiffs' state law claims for breach of fiduciary duty and deceit, **was a close one and a question of first impression in the courts of appeals. For that reason, the District Court permitted the plaintiffs to file an interlocutory appeal pursuant to *28 U.S.C. § 1292(b)*.**  *Green v. Fund Asset Management, 53 F. Supp. 2d 723, 731-32 (D.N.J. 1999).*

See also, Metro Transportation Co. v. Underwriters at Lloyd's of London, 1990 U.S. Dist. Lexis 6471 *4-*5 (E.D. Pa. 1990)(wherein the Court granted 1292(b) certification, and stated, "[f]irstly, this is a matter of first impression involving complex state statutory issues that have not been addressed by the Supreme Court of the Commonwealth of Pennsylvania.  The issues regarding statutory interpretation represent the core of the action.")(attached hereto as Exhibit E).

Therefore, because of the overwhelming importance of this issue to the case at hand, and because it is a genuine issue of first impression of statutory interpretation, Plaintiff submits that the issue presented is a sufficient controlling question of law for interlocutory appeal.

### b. There is Substantial Ground for Difference of Opinion

Plaintiff's grounds for difference of opinion on the issue presented do not rest with the Court's "application of facts of the case to established legal standards," which has been rejected by this Court. Premrick, 2007 U.S. Dist. Lexis at *4. As an issue of first impression there are no established legal standards. Plaintiff disagrees with the Court's conclusions of law regarding the interpretation of statutory damages under 17 U.S.C. § 1203(c)(3)(B). Specifically, Plaintiff disagrees with the Court's legal conclusion that only one statutory award is available despite multiple wrongful distributions of the photograph. As cited in Plaintiff's response brief and the motion for reconsideration, Plaintiff submits that the Court incorrectly interpreted the "each violation" language of 17 U.S.C. § 1203(c)(3)(B), and ignored the underlying purpose of the DMCA.

The Court initially held that "each violation" meant "each violative act performed by Defendant". (Opinion, at p. 10). The Court further held that the AP would violate the DMCA "each time it wrongfully distributed a photograph to its subscribers." (Opinion, at p. 10). In other words, each "wrongful distribution" is a "violative act". Plaintiff submits that the AP wrongfully distributed the photograph to its subscribers 1,147 times as it was admittedly distributed to 1,147 separate entities. Nonetheless, the Court ultimately held that only one violative act occurred - meaning that according to the Court it does not matter how many "wrongful distributions" of a photograph are made as they all still constitute a single violative act. Plaintiff disagrees, and feels the proper interpretation should be that the AP violated the DMCA each of the 1,147 times it wrongfully distributed the photograph. Any other reading would render the language "each violation" superfluous, and would be tantamount to importing into the DMCA the single

11

recovery limitation of the traditional Copyright Act - something this Court allegedly rejected. (Opinion, at p. 8).

Plaintiff also takes issue with the Court's outright rejection of *Nimmer* (in footnote 4). *Nimmer* is the <u>only</u> authority of any kind to analyze the meaning of 17 U.S.C. § 1203(c)(3)(B). And *Nimmer* concludes, "**Multiple awards** lie here for '**each violation** of section 1202.'" (Exhibit A, *Nimmer on Copyright* § 12A.13 (emphasis added)). *Nimmer* clearly states that <u>multiple awards</u> are available for each violation. The Court's rationale for rejecting *Nimmer* is that *Nimmer* does not define "violation". However, *Nimmer* clearly states that no matter how "violation" is defined, <u>multiple awards</u> are available for each violation. And, as any one of the 1,147 wrongful distributions, standing alone, is a violation of section 1202, then according to *Nimmer* multiple awards lie for each of the 1,147 wrongful distributions. Plaintiff submits that the Court did not give *Nimmer* the weight it deserved as the only authority of any kind to specifically analyze 17 U.S.C. § 1203(c)(3)(B). Moreover, if one were to take the Court's definition of "violation", and apply *Nimmer's* analysis that <u>multiple awards</u> lie for each violation, then the *only* reasonable conclusion would be that Plaintiff could recover for each of the 1,147 wrongful distributions.

Therefore, because of the substantial ground for difference of opinion, Plaintiff submits that the issue presented is a sufficient for interlocutory appeal.

  **c. An Immediate Appeal will Materially Advance the Ultimate Termination of the Litigation**

Because of the vast difference in the potential damages regarding the issue presented, this case cannot be finally resolved until this issue is heard on appeal. It makes no sense to have the parties and the Court expend substantial time and

resources on a trial before this issue is heard on appeal. This is especially so with Plaintiff, who quite frankly does not have the financial resources to have a trial, then an appeal, and then perhaps a second trial. If the issue is decided now on appeal, then at best, the parties will be in a better position to settle the case, and at worst, there will only be the need for one trial.

Therefore, Plaintiff submits that resolution of the issue presented through interlocutory appeal will materially advance the ultimate termination of this litigation.

### III.     Conclusion

For the reasons set forth above, Plaintiff respectfully requests reconsideration of the grant of Defendant's motion in limine to limit Plaintiff to two statutory damage awards under the Digital Millennium Copyright Act. Should the Court deny Plaintiff's motion for reconsideration, Plaintiff alternatively moves for certification of interlocutory appeal under 28 U.S.C § 1292(b).

Respectfully submitted,

/s/ Douglas M. Hall
Douglas M. Hall
Paul K. Vickrey
Kara L. Szpondowski
Niro, Scavone, Haller & Niro
181 West Madison, Suite 4600
Chicago, Illinois  60602-4515
Phone: 312-236-0733
Fax: 312-236-3137
*Attorneys for Valencia M. McClatchey*

        John E. Hall
        Eckert Seamans Cherin & Mellott, LLC
        USX Tower
        600 Grant Street, 44th Floor
        Pittsburgh, Pennsylvania 15219
        Phone:  (412) 566-6000
        Fax: (412) 566-6099

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing **PLAINTIFF'S MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVE, MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)** was served upon the below listed parties on this 7th day of June 2007.

**By ECF:**         Gayle C. Sproul
              Levine Sullivan Koch & Schultz, LLP
              2112 Walnut St., 3rd Floor
              Philadelphia, PA 19013
              Phone:  (215) 988-9778


**By ECF:**         Robert Penchina
              Levine Sullivan Koch & Schultz, LLP
              230 Park Avenue
              Suite 1160
              New York, NY 10169
              Phone:  (212) 850-6100
              Fax:  (212) 850-6299


                              /s/ Douglas M. Hall_____