# EXHIBIT A
# TO
# PLAINTIFF'S MOTION FOR RECONSIDERATION,
# OR IN THE ALTERNATIVE, MOTION FOR CERTIFICATION
# OF INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

LEXSTAT 3-12A NIMMER ON COPYRIGHT § 12A.13

Nimmer on Copyright
Copyright 2005, Matthew Bender & Company, Inc., a member of the LexisNexis Group.

Chapter 12A Copyright Protection Systems and Management Information

*3-12A Nimmer on Copyright § 12A.13*

### § 12A.13 Damages

A person who violates the anti-circumvention strictures of Section 1201 or the copyright management information provisions of Section 1202 is liable for either actual or statutory damages.n1  The statute sets forth a methodology for the computation of each. The statute allows the complaining party to elect between the two at any time before final judgment has been entered.n2

#### [A]-- Actual Damages

As to actual damages, the pertinent provision of the statute is as follows:

> The court shall award to the complaining party the actual damages suffered by the party as a result of the violation, and any profits of the violator that are attributable to the violation and are not taken into account in computing the actual damages, if the complaining party elects such damages at any time before final judgment is entered.n3

Given how closely that language tracks the Copyright Act's comparable provision,n4  it may be assumed that the jurisprudence generally applicable to actual damages and profits will apply as well, *mutatis mutandis*, to violations of the WIPO Treaties Act.n5

#### [B]-- Statutory Damages

As an alternative, the complaining party may elect to recover statutory damages at any time before final judgment is entered. Awards in this realm differ depending on whether the subject violation was of Section 1201 or of Section 1202.

For anti-circumvention violations,n6  the statute sets the figure from $ 200 to $ 2,500, as the court considers just.n7  But those figures do not apply per violation of a single copyrighted work, as pertains to statutory damages under the 1976 Act.n8  Instead, that amount within the statutory range can be compounded; the multiple applies "per act of circumvention, device, product, component, offer, or performance of service."n9

For violations regarding copyright management information, the statute sets the figure between $ 2,500 and $ 25,000.n10  Multiple awards lie here "for each violation of section 1202."n11  The WIPO Treaties Act does not add here the customary formulation "as the court considers just." What is the impact of that omission, which seems pointed given its inclusion in the coordinate paragraph for Section 1201 statutory damage awards?n12  Given that the Section 1202 awards lie in a range from $ 2,500 to ten times that amount, the court perforce must choose a figure within that range. Whatever figure the court alights upon for whatever reason, one can scarcely imagine a reason other than the court considered that particular number, in contradistinction to all other candidates, the just figure.n13  Therefore, albeit curious, the omission probably lacks substantive impact.

Which aspect of the "court" system is charged with the duty of computing statutory damages, the judge or jury? If anti-circumvention and CMI-violations added at the turn of the millennium trace their genealogy back to actions at common law centuries earlier, then they are triable to a jury as a matter of right.n14  If not, then a judge may make the award without violating constitutional strictures.n14.1  Even though Congress enacted this provision seven months after


EXHIBIT A

the Supreme Court had found deficient comparable language under the current Act,n14.2 it took no cognizance whatsoever of the problems it was engendering. The question accordingly remains open.

Enhanced penalties apply against repeat offenders. The triggering circumstance here is that the "person has violated section 1201 or 1202 within three years after a final judgment was entered against the person for another such violation."n15 The degree of overlap between the two offenses is unclear. Presumably, a 2001 conviction for Section 1201 does not make a party who violates Section 1202 in 2003 into a recidivist.n16 But whether a 2001 conviction for the basic provision of Section 1201 n17 can serve as a predicate offense for later violating the same section's ban on traffickingn18 remains unclear.

In any event, when "the injured party sustains the burden of proving, and the court finds,"n19 the requisite degree of overlap present, then the statute allows the court to assess a larger amount of statutory damages. Specifically, in such a case, "the court may increase the award of damages up to triple the amount that would otherwise be awarded, as the court considers just."n20 The breadth of that discretion connotes that courts may choose to punish even willful offenders with unenhancedn21 statutory damages.n22

[C]– **Remission for Innocent Infringers**

The statutory scheme embodies two types of solicitude for innocent infringers. One applies generally, the other for the benefit of certain nonprofit organizations. The legislative history characterizes these provisions as an "important feature" of the Act.n23

[1]– **In General.**

As to a violator of Section 1201 or Section 1202 who "was not aware and had no reason to believe" that her activities constituted a violation of those provisions, the minimum figure for an award of statutory damages falls away.n24 The court has discretion to either reduce or remit altogether the total award of damages in any such case.n25 Thus, an innocent violator of Section 1202 might be fined $ 100, an innocent violator of Section 1201 nothing at all. For 100 innocent violations of those provisions, the aggregate award might be $ 10,000.

But for a violator to be eligible for such lenity, she must sustain the burden of proving, and the court must find, the absence-of-knowledge ingredient just quoted.n26 From the fact that it is formulated in the conjunctive -- "was not aware *and* had no reason to believe" -- the presence of either aspect of knowledge forecloses an innocence defense. For instance, a person may in fact have no knowledge that he is violating Section 1202, but may have some affirmative reason to believe that a violation is occurring. That individual does not qualify for reduction of statutory damages.n27

What constitutes "no reason to believe" something?n28 In the criminal realm, conviction follows from proof beyond a *reasonable* doubt, not beyond *any* doubt, which is widely conceded to be an impossible standard.n29 But if there essentially can never be *no* doubt about someone's guilt, can there ever be "*no* reason to believe" that an individual's conduct violates the WIPO Treaties Act? Certainly, if the standard is that an actor should familiarize herself with the contents of Title 17 of the United States Code before logging onto the Internet, and should suspect infringement at every turn unless the contrary is affirmatively proven, then no one would be able to qualify as innocent.

Presumably, therefore, the reference to "*no* reason to believe" implies a "should have known" standard, based on reasonable expectations. Ignoring a "red flag" connoting infringement is one obvious method of falling afoul.n30 In addition, proceeding forward in the face of an amber light or warning flag also vitiates a claim that the subject actor had "*no* reason to believe" his conduct infringing. On the other hand, if the objective indications to a reasonable person would not have revealed the presence of a violation -- notwithstanding that a cynic with the persistence of Javert could have ferreted out the truth behind the wholesome exterior -- then the person adjudged in violation of Section 1201 or Section 1202 should nonetheless be considered to have acted innocently.

[2]-- **Nonprofit Entities.**

Even stronger relief from statutory damagesn31 favors enumerated nonprofit entitiesn32 that meet the same absence-of-knowledge criteria.n33 Included here are any "nonprofit library, archives, educational institution, or public broadcasting entity."n34 If the organization can sustain the burden of proving, and the court finds, its conduct to be innocentn35 under those two criteria, then it qualifies for complete release from payment of statutory damages.n36 Further, remission here is mandatory upon the court, not discretionary.n37

**FOOTNOTES:**

(n1) Footnote 1. *17 U.S.C. § 1203*(c).

(n2) Footnote 2. *17 U.S.C. § 1203*(c)(2). See § 14.04[A] *infra*. When a jury is requested, there may be less flexibility than the statute envisions. *Id.*

(n3) Footnote 3. *17 U.S.C. § 1203*(c)(2).

(n4) Footnote 4. *17 U.S.C. § 504*(b).

(n5) Footnote 5. See § § 14.02 - 14.03 *infra*.

(n6) Footnote 6. See § 12A.03 *et seq. supra*.

(n7) Footnote 7. *17 U.S.C. § 1203*(c)(3)(A).

(n8) Footnote 8. See § 14.04[E] *infra*.

(n9) Footnote 9. *17 U.S.C. § 1203*(c)(3)(A).

(n10) Footnote 10. *17 U.S.C. § 1203*(c)(3)(B).

(n11) Footnote 11. *17 U.S.C. § 1203*(c)(3)(B).

(n12) Footnote 12. Actually both the subparagraphs before and after *17 U.S.C. § 1203*(c)(3)(B) incorporate the prepositional phrase that is lacking from it.

(n13) Footnote 13. It should hardly be based on the defendant's hair color or plaintiff's clothing. See Marcus & Nimmer, *Forum on Attorney's Fees in Copyright Cases: Are We Running Through the Jungle Now or Is the Old Man Still Stuck Down the Road?*, 39 Wm. & Mary L. Rev. 65, 86 (1997).

(n14) Footnote 14. See § 14.04[C] *infra*.

(n15) Footnote 14.1. *Id.*

(n16) Footnote 14.2. *Feltner v. Columbia Pictures Television, Inc., 118 S. Ct. 1279 (1998)*. Note that the Court handed down that decision on March 31, 1998.

(n17) Footnote 15. *17 U.S.C. § 1203*(c)(4).

(n18) Footnote 16. In other words, "another such violation" in the language of the statute is presumably not a violation under a different provision.

(n19) Footnote 17. See § 12A.01[A][1] *supra*.

(n20) Footnote 18. See § 12A.01[B] *supra*.

(n21) Footnote 19. *17 U.S.C. § 1203*(c)(4).

(n22) Footnote 20. *17 U.S.C. § 1203*(c)(4).

(n23) Footnote 21. The court could even choose a figure from the low end of the spectrum, such as $ 200 for a Section 1201 violation or $ 2,500 for a Section 1202 violation.

(n24) Footnote 22. Some courts have chosen to punish willful infringers under the 1976 Act with statutory damages in an amount that does not take advantage of the heightened ceiling for willful offenses. See § 14.04[B][3] *infra*.

(n25) Footnote 23. S. Rep. (DMCA), p.17.

(n26) Footnote 24. *17 U.S.C. § 1203*(c)(5)(A).

(n27) Footnote 25. *17 U.S.C. § 1203*(c)(5)(A).

(n28) Footnote 26. *17 U.S.C. § 1203*(c)(5)(A).

(n29) Footnote 27. These provisions could work special hardships on, for instance, a film distributor who receives notification on the eve of release that the celluloid prints of a motion picture allegedly lack appropriate attribution. See § 12A.10[B][1][a] *supra*.

(n30) Footnote 28. The discussion herein derives from David Nimmer, *Puzzles of the Digital Millennium Copyright Act,* 46 J. Copyright Soc'y 401, 448-49 (1999).

(n31) Footnote 29. See § 15.01[A] *infra.*

(n32) Footnote 30. See § 12B.04[A][1] *infra.*

(n33) Footnote 31. Note also the special treatment of those same entities for criminal purposes. See § 12A.14 *infra.*

(n34) Footnote 32. *17 U.S.C. § 1203*(c)(5)(B). See § 12A.04[A][2] *supra.*

(n35) Footnote 33. See § 12A.12[C][1] *supra.*

(n36) Footnote 34. *17 U.S.C. § 1203*(c)(5)(B)(ii). Public broadcasting entities, missing at enactment of the Digital Millennium Copyright Act, were later added to the enumeration. Act of Nov. 29, 1999, Pub. L. 106-113, Sec. 5004(a), 113 Stat. 1501, App. I. At that juncture, Congress gave that term the same "meaning given such term under section 118(g)." *17 U.S.C. § 1203*(c)(5)(B)(i). See § 8.06[C] *supra.* In 2004, Congress redesignated *17 U.S.C. § 118*(g) as 118(f).

(n37) Footnote 35. Again, the statutory language here is that the subject entity "was not aware and had no reason to believe that its acts constituted a violation." *17 U.S.C. § 1203*(c)(5)(B)(ii). See § 12A.12[C][1] *supra.*

(n38) Footnote 36. *17 U.S.C. § 1203*(c)(5)(B)(ii). Of course, the organization equally qualifies for relief under the general provision just noted. See § 12A.13[C][1] *supra.* But inasmuch as the instant provision furnishes greater relief from damages, there is no reason for a qualifying school, library, *etc.*, to prefer the previous provision over the instant one.

(n39) Footnote 37. *17 U.S.C. § 1203*(c)(5)(B)(ii) ("the court shall remit damages"). See H. Rep. (DMCA), p.23.